**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Alcon Laboratories, Inc., | Case No. 18cv407 |
| Plaintiff, | |
| v. | |
| Lens.com, Inc., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## COMPLAINT

Plaintiff Alcon Laboratories, Inc. ("Alcon") brings this action against Defendant

Lens.com, Inc. ("Defendant" or "Lens.com") and alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C.

§ 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question jurisdiction);

28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); and 28 U.S.C. § 1367

(supplemental jurisdiction).

2.      Lens.com is subject to personal jurisdiction in this State, because Lens.com

conducts business within this State, including shipments to individuals within this State of the

products at issue in this case, and such conduct has caused injury to Alcon in this State.  Because

Lens.com is subject to personal jurisdiction in this State, it is subject to personal jurisdiction in

this District.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) in that a

substantial part of the events giving rise to the claims occurred in this District and Lens.com is

subject to personal jurisdiction in this District.

**PARTIES**

4.      Plaintiff Alcon, a division of Novartis AG, is a corporation organized and existing under the laws of the State of Delaware, having its corporate offices and principal place of business at 6201 South Freeway, Fort Worth, Texas  76134.

5.      On information and belief, Lens.com, Inc. is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business in Las Vegas, Nevada.

**STATEMENT OF FACTS**

**A.      Alcon's Business**

6.      Alcon was founded in 1947 in Fort Worth, Texas as a small pharmacy focused on sterile ophthalmic products.  It has developed into a world-renowned developer and manufacturer of contact lenses, prescription eye care products, surgical devices for eye care practitioners, and over-the-counter eye care products.  Its mission is to provide innovative products that enhance quality of life by helping people see better.  Alcon's focus is on patients, as seen in its advanced research and development process, as well as its high standards for manufacturing that exceed basic compliance needs.

7.      Alcon is also a strong advocate for eye health.  In 2017 alone, Alcon supported 554 charitable medical missions through Alcon Cares, Inc., a U.S. foundation, serving more than 392,000 patients around the world and facilitating approximately 34,000 surgeries.  Alcon also offers grants through the Alcon Foundation, Inc. to advance and improve the quality of eye health, education, and access to care, and it has partnered for over 30 years with Orbis, an international charity that fights blindness, to enhance access to eye care services in the developing world through hands-on training and capacity building.  Alcon also operates www.myeyes.com,

2

an online resource for vision care for patients that allows them to explore how the eye works and actively manage their ocular health.

8.     Alcon is a leading producer of soft contact lenses in the U.S.  It sells contact lenses under several different brands, including DAILIES®, which are its daily disposable soft contact lenses.  U.S. consumers of Alcon products have come to expect a high level of quality from Alcon, due in large part to the regimented and precise manner in which the products are manufactured, packaged, distributed, and marketed.

9.     Alcon has invested significant resources into conducting clinical trials of and obtaining FDA approval for each of its contact lens products.  It has also spent over 70 years and millions of dollars in advertising creating consumer recognition and confidence in its brands, which relies in large part on recognition of, and confidence in, products bearing Alcon brand names.  These substantial expenditures of time, money, and effort have resulted in a reputation for exceptionally high quality products, including contact lenses.  For example, Alcon's DAILIES TOTAL1® won the "Contact Lens Product of the Year" award at the U.K.'s 2014 Optician Awards.  Its CLEAR CARE® PLUS with HYDRAGLYDE® contact lens solution was awarded Product of the Year in the Eye Care category of the 2016 Consumer Survey of Product Innovation.

10.     Alcon vigorously protects its reputation and goodwill by maintaining the highest standards in products, appearance, and customer service.

**B.     Background on Contact Lenses**

11.     Today, nearly 40 million Americans wear contact lenses to correct refractive vision defects.  Contact lenses are medical devices regulated by the U.S. Food and Drug Administration to ensure their safety and efficacy.  According to their labeling, contact lenses require professional care, and thus patients can only obtain them with a valid prescription.

3

12.     In the United States, about 90 percent of contact lens wearers wear soft contact lenses, which are generally made of soft, flexible, water absorbing plastics or silicone hydrogel material that allow higher amounts of oxygen to pass through to the cornea. Most soft contact lenses are replaced daily, weekly, or monthly.

13.     Each contact lens manufacturer uses unique manufacturing processes and most often unique materials to produce its contact lenses. The manufacturing process and material affect how contact lenses fit, how they correct vision, and the level of comfort they provide. Moreover, different contact lens brands vary on such features as base curve (the back curvature of the contact lens, measured in millimeters), diameter (the distance across a lens between one edge of the contact lens to the other edge), material (chemical make-up of the plastic), lens shape (type of curvatures on the front and back surfaces of the lens), flexure (flexibility of the lens on the eye), oxygen transmissibility (amount of oxygen that passes through the lens), water content (percentage of water/solution absorbed by the lens material), surface wettability (ease with which the tears adhere to the lens surface), center thickness (thickness at the center of the lens), edge thickness (thickness at edge of the lens), edge design (shape of the lens edge), surface characteristics/treatments, UV blocking, and interaction with lens care solutions.

14.     Different combinations of these features affect the fit, efficacy, and safety of patients' contact lenses. Thus, the professional judgment of an eye care practitioner, such as an optometrist or ophthalmologist, is required to select the appropriate pair of contact lens for each patient. In particular, soft contact lenses should cover the cornea adequately and center properly, while also being able to move enough to flush cellular and tear debris from behind the lenses; remain stable on the eye; transmit oxygen; and optically correct vision.

4

**C.    Alcon's DAILIES AQUACOMFORT PLUS®, and O2 OPTIX® Contact Lenses**

15.    Beginning in May 2017, Alcon introduced new product packaging for its

DAILIES AQUACOMFORT PLUS® sphere contact lenses distributed in the United States, a

product that is often prescribed to patients who have not previously worn soft contact lenses.

**Front of Packaging**                    **Back of Packaging**




16.     The new product packaging includes several new patient-friendly educational elements, including (i) readily accessible detailed insertion and removal instructions, (ii) a toll-free patient helpline and email address to permit patients to contact Alcon directly with questions, and (iii) a dedicated DAILIES® website address for more at-home and online support.



ny-1311463

17.    To enhance its ability to communicate with eye care practitioners and patients regarding issues that might affect the safety or efficacy of its products, Alcon also added U.S.-specific lot numbers to this packaging.  These lot numbers can be used by Alcon to track its products through its supply chain in the event that Alcon needs to notify eye care practitioners or patients regarding any issues related to the safety or efficacy of the lenses, including, for example, any inaccuracies in the corrective power of the lenses.



18.   Alcon also updated the design of the front panel of the packaging, including the addition of its LIGHTSTREAM® technology trademark.



19.   Finally, so that U.S. patients and eye care practitioners can readily confirm that they are receiving the benefits of the new product packaging, Alcon added an American flag to the packaging.



8

20.     Alcon first announced the new packaging to the eye care industry in a media alert issued on November 12, 2016, and sent additional follow-up communications regarding the packaging change to customers, authorized distributors, retailers, and eye care practitioners starting in spring 2017.  Alcon did not limit these communications to entities with whom it had a direct relationship because it wanted everyone who sold DAILIES AQUACOMFORT PLUS® lenses to have advance notice of the packaging change so that they would have adequate time to update their inventory with the new products.

21.     Beginning in May 2017, Alcon began to provide DAILIES AQUACOMFORT PLUS® lenses with the updated packaging directly to larger customers, such as Walmart and Costco, to authorized distributors, and to retailers with whom it has reseller agreements.  To prevent confusion that could result if two different versions of the DAILIES AQUACOMFORT PLUS® lens packaging were available in the marketplace at the same time, and to make sure that all patients would receive the benefits of the additional information on the new packaging, Alcon required all customers, authorized distributors, retailers with whom it had contracts, and eye care practitioners to stop selling any DAILIES AQUACOMFORT PLUS® products in the prior packaging by June 16, 2017.  They could then exchange with Alcon any of those products remaining in their inventory for products with the updated DAILIES AQUACOMFORT PLUS® packaging.  Alcon's sales representatives worked directly with eye care practitioners to assist in exchanging any older product in their inventories for products with the updated packaging.

22.     Alcon also provided customers, authorized distributors, retailers with whom it had contracts, and eye care practitioners with photographs (i.e., box shots) and other marketing materials featuring the new packaging for the DAILIES AQUACOMFORT PLUS® products and asked that they update their marketing materials.  These marketing materials were made available to Alcon's partners through its marketing portal website at www.alconODmarketing.com.

9

23.     During July 2017, Alcon also sent letters to retailers with whom it did not have a relationship reminding them of the packaging change and informing them the older DAILIES AQUACOMFORT PLUS® product packaging was not authorized for sale in the United States after June 16, 2017.

24.     To assure compliance with its requirement that the products in the prior packaging be exchanged for products in the new packaging, Alcon carefully monitored the return process for DAILIES AQUACOMFORT PLUS® products, and, during July 2017, sent letters to customers, authorized distributors, retailers with whom it had contracts, and some eye care practitioners whom it believed had not returned their inventory of DAILIES AQUACOMFORT PLUS® products in the prior packaging.  On information and belief, substantially all of the prior DAILIES AQUACOMFORT PLUS® products were exchanged by Alcon's customers, authorized distributors, retailers under contract, and eye care practitioners by July 31, 2017, but not quite all. Accordingly, Alcon sent a further communication to all customers, retailers under contract, and eye care practitioners reminding them of the importance of exchanging products in the prior packaging in their inventory for products with the updated packaging.  Alcon also informed them that continued sales of DAILIES AQUACOMFORT PLUS® products with the older packaging would likely confuse patients and would be considered trademark infringement in the United States.

25.     Further, Alcon regularly reviewed the websites of its customers, authorized distributors, retailers under contract, and eye care practitioners to assure that they had removed any depictions of the older DAILIES AQUACOMFORT PLUS® products.  To the extent that they had not, Alcon contacted them during the summer of 2017 to remind them of the packaging change and to reiterate that the marketing materials and websites needed to be updated to show only the updated DAILIES AQUACOMFORT PLUS® products.

26.     Another contact lens product that Alcon manufactures is the O2 OPTIX® product. In an effort to streamline its product line, Alcon discontinued providing complimentary "fit sets" for the O2 OPTIX® lenses to eye care practitioners in the United States for use in fitting patients with O2 OPTIX® contact lenses in 2011.  Because eye care practitioners do not normally prescribe contact lenses without first doing a fitting with a complimentary fit set, Alcon stopped distributing the O2 OPTIX® products in the United States about two years later, in 2013.  Alcon distributes the O2 OPTIX® products only in certain markets outside of the United States.

**D.     Alcon's Intellectual Property Rights**

27.     Alcon has taken all appropriate steps to protect its rights in the trademarks and trade dress used for its DAILIES AQUACOMFORT PLUS® products and O2 OPTIX® products. Specifically, Alcon owns the registrations and applications set forth below for its ALCON® mark (collectively, the "ALCON Marks").

28.     Alcon owns U.S. Trademark Registration No. 1,055,870 for the mark ALCON® for "cleaning, wetting, and soaking solutions for contact lenses," which issued on January 11, 1977.  Alcon filed an affidavit under Section 15 of the Lanham Act on July 30, 1982, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the ALCON® trademark for the registered goods.

29.     Alcon owns U.S. Trademark Registration No. 3,964,835 for the stylized ALCON® mark shown below for "cleaning, wetting, and soaking solutions for contact lenses," which issued on May 24, 2011.  Alcon filed an affidavit under Section 15 of the Lanham Act on October 26, 2016, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the

11

mark and registration, and of Alcon's exclusive right to use the stylized ALCON® trademark for the registered goods.



30.     Alcon owns U.S. Trademark Registration No. 4,560,685 for the mark ALCON® for "contact lenses," which issued on July 1, 2014.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the ALCON® trademark for the registered goods.

31.     Alcon also owns U.S. Application Serial No. 87/543,031 for the stylized ALCON mark shown below for "contact lenses."  This application was filed on July 26, 2017, and claims a first use anywhere and first use in commerce date of December 31, 2013.  The mark was published for opposition on December 12, 2017.  Alcon expects that the registration for the mark will issue by approximately March 2018.



32.     Alcon also owns four copyrights in the DAILIES AQUACOMFORT PLUS® packaging visual artwork, for which applications are pending.  These include Copyright Case Nos. 1-5682214719, 1-5682214531, 1-5496799089, and 1-5496798601.

33.     Alcon's parent, Novartis AG, owns the registrations and application below for marks that are used on Alcon's DAILIES AQUACOMFORT PLUS® products (collectively, the "ALCON DACP Marks").

34.     Novartis owns U.S. Trademark Registration No. 5,137,710, for the mark AQUACOMFORT PLUS® for "contact lenses," which issued on February 7, 2017.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the AQUACOMFORT PLUS® trademark for the registered goods.

35.     Novartis also owns U.S. Registration No. 4,556,224, for the Teardrop Logo shown below for "contact lenses," which issued on June 24, 2014.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the Teardrop Logo for the registered goods.



36.     Novartis also owns U.S. Trademark Registration No. 3,687,534, for the mark AQUACOMFORT® for "contact lenses," which issued on September 22, 2009.  Novartis filed an affidavit under Section 15 of the Lanham Act on September 9, 2015, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the AQUACOMFORT® trademark for the registered goods.

37.     Novartis also owns U.S. Trademark Registration No. 2,924,933, for the mark LIGHTSTREAM® for "contact lenses and optical lenses," which issued on February 8, 2005. Novartis filed an affidavit under Section 15 of the Lanham Act on December 27, 2014, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is

13

incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the LIGHTSTREAM® trademark for the registered goods.

38.     Novartis also owns U.S. Registration No. 3,555,421 for the mark DAILIES AQUACOMFORT PLUS® for "contact lenses," which issued on December 30, 2008.  Novartis filed an affidavit under Section 15 of the Lanham Act on October 24, 2014, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the DAILIES AQUACOMFORT PLUS® trademark for the registered goods.

39.     Novartis also owns U.S. Application Serial No. 87/586,440 for the trade dress for the front panel of the DAILIES AQUACOMFORT PLUS® products shown below for "contact lenses."  This application was filed on August 28, 2017, and claims a first use anywhere and first use in commerce date of May 31, 2017.  This application has been examined and the only issue that was raised is a requirement for a slight modification to the description of the trade dress.  Once Alcon responds to that office action, the mark will be approved for publication.



40.     Novartis also owns the registrations below for marks that are used on Alcon's O2 OPTIX® products (collectively, the "O2 OPTIX Marks").

41.     Novartis owns U.S. Registration No. 2,946,628 for the mark O2® for "contact lenses," which was issued on May 3, 2005.  Novartis filed an affidavit under Section 15 of the Lanham Act on February 19, 2001, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the O2® trademark for the registered goods.

42.     Novartis owns U.S. Registration No. 3,308,130 for the mark O2 OPTIX® for "contact lenses," which issued on October 9, 2007.  Novartis filed an affidavit under Section 15 of the Lanham Act on December 31, 2016, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the O2 OPTIX® trademark for the registered goods.

43.     Novartis owns U.S. Registration No. 3,308,131 for the stylized O2 OPTIX® mark shown below for "contact lenses," which issued on October 9, 2007.  Novartis filed an affidavit under Section 15 of the Lanham Act on December 31, 2016, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the stylized O2 OPTIX® trademark for the registered goods.



44.     Novartis also owns U.S. Registration No. 3,429,280 for the CIBA VISION® mark for "contact lenses," which issued on May 20, 2008.  Novartis filed an affidavit under Section 15 of the Lanham Act on November 7, 2017, which was acknowledged by the United States Patent

ny-1311463

and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the CIBA VISION® trademark for the registered goods.  The CIBA VISION® mark is used on the packaging for the O2 OPTIX® lenses.

45.     Novartis also owns U.S. Registration No. 4,425,860 for the stylized CIBA VISION® mark shown below for "contact lenses," which issued on October 29, 2013.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the stylized CIBA VISION® trademark for the registered goods.  The stylized CIBA VISION® mark is also used on the packaging for the O2 OPTIX® lenses.



46.     As a result of Alcon's expenditures and efforts, the ALCON Marks, the ALCON DACP Marks, the O2 OPTIX Marks, the CIBA VISION mark, and the stylized CIBA VISION mark (collectively, "the ALCON Contact Lens Marks") have come to signify the high quality of Alcon's contact lens products.  They have incalculable reputation and goodwill, belonging exclusively to Alcon and its parent, Novartis AG.

**E.     Lens.com's Business and Wrongful Conduct**

47.     Beginning on August 1, 2017, Alcon conducted test buys to assure that only products in updated DAILIES AQUACOMFORT PLUS® packaging were being sold in the United States.  It bought products from a variety of online sources, including retailers who had contracts with Alcon and retailers who were not under contract with Alcon.  While the majority of

16

the retailers shipped DAILIES AQUACOMFORT PLUS® products in the updated and authorized

packaging, a handful of them did not, including Lens.com, which was selling and shipping

DAILIES AQUACOMFORT PLUS® products in packaging that is not authorized for sale in the

United States.  In some cases, Lens.com shipped one box of DAILIES AQUACOMFORT PLUS®

lenses with the new packaging and one box of DAILIES AQUACOMFORT PLUS® with the

prior packaging in the same order.

48.     Lens.com advertises DAILIES AQUACOMFORT PLUS® with the prior

packaging on its lens.com website, as well as on its affiliated websites, including justlenses.com,

contactsamerica.com, opticalshoppe.com, and eurolens.com, but then ships DAILIES

AQUACOMFORT PLUS® products with both the prior packaging and the new packaging.  By

advertising the outdated DAILIES AQUACOMFORT PLUS® packaging on its website,

Lens.com infringes Alcon's trademark rights in its ALCON Contact Lens Marks.  Additionally,

Lens.com misleads consumers into thinking those products are approved for sale in the U.S.

Finally, by advertising the outdated packaging, yet shipping products in both the new and

outdated packaging, Lens.com falsely advertises its available inventory.



49.     Based upon Alcon's test buys, Alcon has determined that Lens.com has sold and shipped multiple contact lens orders to purchasers in New York, including shipments of DAILIES AQUACOMFORT PLUS® products in the prior packaging, and continues to ship such products to New York.  For example, Lens.com filled a New York order placed as recently as December 27, 2017 with DAILIES AQUACOMFORT PLUS® products in the prior packaging.

50.     The DAILIES AQUACOMFORT PLUS® products that Lens.com is shipping to patients in the United States is materially different from the DAILIES AQUACOMFORT PLUS® products that Alcon has authorized for sale in the United States and that are being sold by distributors and resellers who exchanged their older product inventory for products with the updated packaging in 2017.  Specifically, they lack (i) U.S.-specific lot numbers, (ii) readily accessible detailed insertion and removal instructions, (iii) a toll-free patient helpline and email address to permit patients to more easily contact Alcon directly with questions, (iv) a dedicated DAILIES® website address for more at-home and online support, and (v) the American flag. Additionally, the packaging for the DAILIES AQUACOMFORT PLUS® products sold by Defendants retains content that Alcon no longer features on its U.S.-specific DAILIES AQUACOMFORT PLUS® sphere product, including text in languages other than English and Spanish, as well as Japanese regulatory text and a registration number.  Both the front and the back of the packaging differ from the authorized DAILIES AQUACOMFORT PLUS® packaging, as shown below.

| Alcon Packaging | Packaging used by Lens.com |
|---|---|
|  |  |
|  |  |

51.     Lens.com's sale of products in packaging that is materially different from the

DAILIES AQUACOMFORT PLUS® packaging that Alcon distributes in the United States causes

consumers to be confused, or to believe that the packaging sold by Lens.com is the same as the

DAILIES AQUACOMFORT PLUS® products sold by Alcon in the United States, when they are

not.  Consumers who receive a single order with DAILIES AQUACOMFORT PLUS® products

in the new packaging together with DAILIES AQUACOMFORT PLUS® in the prior packaging

will be particularly confused as they will receive products that are materially different from each

other in a single order.  As such, Lens.com's sales of DAILIES AQUACOMFORT PLUS®

products in prior packaging violate Sections 32 and 43(a) of the Lanham Act.

19

52.     Lens.com's sale of DAILIES AQUACOMFORT PLUS® products in the prior packaging also deprives contact lens patients in the United States of important safety and usage information that Alcon includes on the packaging that it uses for DAILIES AQUACOMFORT PLUS® products that are distributed in the United States.  It also deprives Alcon of the ability to rely on its U.S.-specific lot number system to notify U.S. eye care practitioners and patients in the event that there is an issue with any of its DAILIES AQUACOMFORT PLUS® products.  Each of these consequences, among others, negatively impacts the safety and well-being of contact lens consumers, and harms Alcon's reputation and goodwill.

53.     In addition to selling DAILIES AQUACOMFORT PLUS® products with the older packaging, Lens.com is selling another product that Alcon does not distribute in the United States.  According to the test buys that Alcon has done, Lens.com is selling O2 OPTIX® lenses even though Alcon stopped selling those products in the United States in 2013 and no longer supports those products in the United States.

54.     Lens.com's sales of unsupported O2 OPTIX® products in the United States will cause consumers to be confused, or to believe that the products sold by Lens.com continue to be supported by Alcon in the U.S. market when they are not.  As such, Lens.com's sales of O2 OPTIX® products in the United States violate Sections 32 and 43(a) of the Lanham Act.

55.     By selling O2 OPTIX® lenses in the United States, a market in which Alcon does not offer this product, Lens.com has removed the necessary transparency of the market.  If a recall or other notification to retailers, eye care practitioners, or patients were required, it would be more difficult for Alcon to effectively communicate the recall to all necessary parties.  Accordingly, Defendants' misconduct puts consumers at risk and jeopardizes Alcon's reputation and goodwill.

56.     If Lens.com continues its wrongful conduct, Alcon is and will continue to be irreparably harmed, including through loss of goodwill, reputation, and the ability to monitor the supply chain for Alcon products being sold in the United States, which could interfere with Alcon's ability to communicate with eye care practitioners or patients regarding their Alcon lenses, or for Alcon to keep counterfeit products out of the United States.  Such irreparable harm will continue unless Lens.com is restrained from its continuing violation of the Lanham Act. Alcon has no adequate remedy at law.

### FIRST CLAIM FOR RELIEF
### Trademark Infringement Under 15 U.S.C. § 1114

57.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

58.     The acts of Lens.com described above constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59.     Alcon and its parent Novartis have valid and protectable rights in each of the registered ALCON Contact Lens Marks.  These rights predate Lens.com's sale of DAILIES AQUACOMFORT PLUS® products that are materially different from the DAILIES AQUACOMFORT PLUS® products that Alcon has distributed in the United States since at least as early as May 2017, as well as Lens.com's sales of the discontinued O2 OPTIX® products.

60.     On information and belief, Lens.com had actual knowledge of Alcon's ownership and use of the ALCON Marks prior to May 2017, and of the change to the DAILIES AQUACOMFORT PLUS® packaging that would take place in May 2017.

61.     Alcon has not authorized Lens.com to use any of the ALCON Contact Lens Marks in connection with the sale of any Alcon contact lens products.

62.     Lens.com's unauthorized use of the registered ALCON Contact Lens Marks as alleged above is likely to cause confusion, mistake, or deception on the part of consumers as to

the source, nature, and quality of the goods Lens.com is offering under the registered ALCON

Contact Lens Marks, constituting trademark infringement in violation of 15 U.S.C. § 1114.

63.     As a direct and proximate result of Lens.com's wrongful conduct, Alcon has been,

is now, and will continue to be irreparably injured and damaged by Lens.com's aforementioned

acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further harm to its name,

reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate

remedy at law.

64.     On information and belief, Lens.com has acted willfully to usurp Alcon's rights,

and Lens.com should be held liable to Alcon for treble damages and attorneys' fees pursuant to

15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF
### False Designation of Origin Under 15 U.S.C. § 1125(a)

65.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 64

above as if fully set forth herein.

66.     The acts of Lens.com described above constitute unfair competition and false

designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.     Alcon has valid and protectable rights in the ALCON Contact Lens Marks.  These

rights predate Lens.com's sale of DAILIES AQUACOMFORT PLUS® products that are

materially different from the DAILIES AQUACOMFORT PLUS® products that Alcon has

distributed in the United States since at least as early as May 2017, as well as Lens.com's sales of

the discontinued O2 OPTIX® products in the United States.

68.     On information and belief, Lens.com had actual knowledge of Alcon's and

Novartis's ownership and use of the ALCON Marks and the ALCON DACP Marks prior to May

2017, and of the change to the DAILIES AQUACOMFORT PLUS® packaging that would take

place in May 2017.

22

69.     On information and belief, Lens.com also had actual knowledge of Alcon's and Novartis's ownership and use of the O2 OPTIX® Marks, the CIBA VISION® mark, and the stylized CIBA VISION® mark prior to when Alcon discontinued selling those products in the United States, in approximately 2013.

70.     Lens.com's unauthorized use of the ALCON Contact Lens Marks as alleged above is likely to cause consumers to believe that there is a relationship between Lens.com and Alcon and/or that Lens.com's products come from Alcon.  Such association constitutes false designation of origin, in violation of 15 U.S.C. § 1125(a).

71.     As a direct and proximate result of Lens.com's wrongful conduct, Alcon has been, is now, and will continue to be irreparably injured and damaged by Lens.com's aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Lens.com has no adequate remedy at law.

72.     On information and belief, Lens.com has acted willfully to usurp Alcon's rights, with full knowledge of and intent to cause harm to Alcon, and Lens.com should be held liable to Alcon for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**THIRD CLAIM FOR RELIEF**
**Deceptive Trade Practices Under New York General Business Law § 349**

73.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 72 above as if fully set forth herein.

74.     The acts of Lens.com described above constitute consumer-oriented deceptive trade practices under New York General Business Law § 349.

75.     Lens.com's sale of DAILIES AQUACOMFORT PLUS® products in packaging that is materially different from the DAILIES AQUACOMFORT PLUS® products that Alcon has distributed in the United States since at least as early as May 2017 has caused and will cause

23

specific and direct harm to consumers in New York and to the public interest. The sale or distribution of DAILIES AQUACOMFORT PLUS® lenses in the prior packaging without U.S.-specific lot numbers, readily accessible detailed use instructions, a toll-free patient helpline and email address, a dedicated DAILIES® support website address, and the identifying American flag, harms consumers and impacts public safety by, among other things, reducing consumers' ability to access important safety and use information and impairing Alcon's quality control, consumer communication, and supply chain monitoring measures.

76.     Lens.com's sale of O2 OPTIX® products that Alcon no longer distributes or supports in the United States has caused and will cause specific and direct harm to consumers in New York and to the public interest. Because Lens.com is improperly selling or distributing O2 OPTIX® lenses in the United States, outside of Alcon's transparent distribution market, Lens.com is harming consumers by impeding Alcon's ability to effectively communicate with consumers, eye care practitioners, and retailers in the event of a recall or other notification.

77.     As a direct and proximate result of Lens.com's wrongful conduct, Alcon has been, is now, and will continue to be irreparably injured and damaged by Lens.com's aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Lens.com has no adequate remedy at law.

78.     On information and belief, Lens.com has acted willfully to usurp Alcon's rights, with full knowledge of and intent to cause harm to Alcon.

## FOURTH CLAIM FOR RELIEF
### False Advertising Under New York General Business Law § 350

79.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 78 above as if fully set forth herein.

80.     The acts of Lens.com described above constitute false advertising under New York General Business Law § 350.

81.     Lens.com's unauthorized use of the ALCON Contact Lens Marks as alleged above is likely to cause consumers to believe that there is a relationship between Lens.com and Alcon and/or that Lens.com's products come from Alcon.  Such association constitutes false advertising under New York General Business Law § 350.

82.     Lens.com's advertisement of O2 OPTIX® products on its websites deceives customers into believing that such lenses are approved for sale in the United States.  Such materially misleading advertising is harmful to consumers as it leads them to believe the products they are purchasing are genuine, when instead Lens.com is impairing Alcon's quality control, consumer communication, and supply chain monitoring measures.

83.     Additionally, Lens.com's advertisement of prior Alcon product packaging is materially misleading to consumers for several reasons.  First, the use of the prior packaging on Lens.com's website infringes Alcon's trademark rights in its ALCON Contact Lens Marks.  Second, the advertisement of the prior packaging misleads consumers into thinking such product is approved for sale in the U.S.  Third, the advertisement of the prior product packaging and the later shipment of both new and outdated packaging deceives customers into believing they will receive products that are approved for sale in the United States.  Such materially misleading advertising is harmful to consumers who receive products for which Alcon's quality control, consumer communication, and supply chain monitoring is impaired.

84.     As a direct and proximate result of Lens.com's wrongful conduct, Alcon has been, is now, and will continue to be irreparably injured and damaged by Lens.com's aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further harm to its name,

reputation, and goodwill.  This harm constitutes an injury for which Lens.com has no adequate remedy at law.

85.     On information and belief, Lens.com has acted willfully to usurp Alcon's rights, with full knowledge of and intent to cause harm to Alcon.

**FIFTH CLAIM FOR RELIEF**
**Trademark Infringement Under New York Common Law**

86.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 85 above as if fully set forth herein.

87.     The acts of Lens.com described above constitute trademark infringement under the common law of the State of New York.

88.     As a direct and proximate result of Lens.com's wrongful conduct, Alcon has been, is now, and will continue to be irreparably injured and damaged by Lens.com's aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**
**Unfair Competition Under New York Common Law**

89.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 88 above as if fully set forth herein.

90.     The acts of Lens.com described above constitute unfair competition under the common law of the State of New York.

91.     As a direct and proximate result of Lens.com's wrongful conduct, Alcon has been, is now, and will continue to be irreparably injured and damaged by Lens.com's aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further harm to its name,

reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Alcon prays for judgment as follows:

1.      That judgment be entered in favor of Alcon and against Lens.com on each and every Claim of this Complaint;

2.      For entry of an order and judgment requiring that Lens.com and its officers, agents, servants, employees, owners, and representatives, and all other persons, firms, or corporations in active concert or participation with it, be enjoined during the pendency of this action and permanently thereafter from (a) using in any manner the ALCON Contact Lens Marks in connection with the sale of any product that is materially different from products that Alcon distributes in the United States; (b) doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public or prospective customers as to the source of the products offered or distributed by Lens.com, or likely to confuse members of the public, or prospective customers, into believing that there is some connection between Alcon and Lens.com or any other entity owned by or associated with Lens.com; (c) otherwise competing unfairly with Alcon in any manner; or (d) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in parts (a) through (c) of this paragraph 2;

3.      For entry of an order and judgment directing Lens.com, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Alcon within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Lens.com has complied with the injunction and ceased selling Alcon products that are materially different from products that Alcon distributes in the United States, including but not

limited to O2 OPTIX® products, and DAILIES AQUACOMFORT PLUS® products that are

materially different from the DAILIES AQUACOMFORT PLUS® products that Alcon distributes

in the United States;

4.      For entry of an order and judgment directing Lens.com to disclose to Alcon all of

Lens.com's suppliers of Alcon products;

5.      For a judgment in the aggregate amount of (a) Lens.com's profits, (b) Alcon's

actual damages, (c) the costs of this action pursuant to 15 U.S.C. § 1117, and (d) restitution

and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have

been obtained by Lens.com as a result of its unlawful, unfair, and/or fraudulent business acts or

practices;

6.      That the Court award enhanced damages pursuant to 15 U.S.C. § 1117(a);

7.      That the Court award prejudgment interest on all amounts awarded;

8.      That the Court award Alcon reasonable attorneys' fees; and

9.      That the Court award such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Alcon hereby demands

trial by jury on all issues raised by the Complaint.

Dated: New York, New York
January 19, 2018

MORRISON & FOERSTER LLP

By: /s/ Jamie S. Levitt
    Jamie A. Levitt
    250 West 55th Street
    New York, New York  10019
    Telephone: (212) 468-8000
    Facsimile: (212) 468-7900
    Email:  JLevitt@mofo.com

    Jennifer Lee Taylor (*Pro Hac Vice*
    application forthcoming)
    Joyce Liou (*Pro Hac Vice* application
    forthcoming)
    425 Market Street
    San Francisco, California  94105
    Telephone:  (415) 268-7000
    Facsimile:  (415) 268-7522
    Email:  JTaylor@mofo.com
        JLiou@mofo.com

Attorneys for Plaintiff
ALCON LABORATORIES, INC.

29