**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALCON LABORATORIES, INC., | Case No.: 18-cv-00407-NG-RLM |
| Plaintiff, | |
| v. | Judge Nina Gershon |
| LENS.COM, INC. | **(ORAL ARGUMENT REQUESTED)** |
| Defendant. | |

## DEFENDANT LENS.COM'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR TO TRANSFER VENUE

THORPE NORTH & WESTERN, LLP
Mark Bettilyon (admitted *pro hac vice*)
Peter M. de Jonge (admitted *pro hac vice*)
Catherine M. Maness (admitted *pro hac vice*)
175 S. Main St., Suite 900
Salt Lake City, UT 84111
Telephone: (801) 566-6633
Facsimile: (801) 566-0750
Email: mark.bettilyon@tnw.com
        dejonge@tnw.com
        catherine.maness@tnw.com

CADWALADER, WICKERSHAM & TAFT LLP
William J. Natbony (WJN 5507)
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: bill.natbony@cwt.com

## TABLE OF CONTENTS

**Pages**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

   I.   Lens.com ...................................................................................................................... 2

      A.   Lens.com's Contacts with Nevada ....................................................................... 2

      B.   Lens.com's Contacts with New York .................................................................. 3

   II.   Alcon ........................................................................................................................... 4

      A.   Alcon's Anti-Competitive Conduct .................................................................... 4

      B.   Alcon's Contacts with Nevada ........................................................................... 5

          1.   Alcon's Negotiations with Lens.com ........................................................... 5

          2.   Alcon's Attendance at Tradeshows in Nevada ............................................ 6

      C.   Alcon's Connections with New York .................................................................. 6

      D.   Alcon's Connections with Other States ............................................................... 7

   III.   Allegations of the Complaint ...................................................................................... 7

      A.   The Vast Majority of Lens.com's Sales to New York are Not Relevant to Jurisdiction 7

      B.   The Relevant Facts do not Concern New York .................................................. 8

      C.   Only a Small Portion of Lens.com Sales of Dailies, O2, Colors, and HydraGlyde are Relevant ......................................................................................................... 8

          1.   Dailies Products ........................................................................................... 8

          2.   Colors Products ........................................................................................... 9

          3.   O2 Products ................................................................................................. 9

          4.   HydraGlyde Products ................................................................................. 10

ARGUMENT ...................................................................................................................... 10

   I.   The Motion to Dismiss Standard ............................................................................... 10

   II.   Lens.com is Not Subject to Specific Jurisdiction in New York ....................................... 11

      A.   Alcon has not Shown that Lens.com Transacts Business in New York .................... 11

          1.   Most of Lens.com Sales in New York are not Relevant to Jurisdiction ................ 11

          2.   None of the Operative Facts Giving Rise to Liability Occurred in New York ....... 12

          3.   Alcon's Single Test Buy in New York Does Not Establish Jurisdiction .............. 12

      B.   Alcon has not shown that Lens.com Committed a Tortious Act in New York .......... 13

      C.   Alcon Has Not Met the Requirements of N.Y. C.P.L.R. § 302 (a)(3) ...................... 13

i

D.    Lens.com Does Not Own, Use, or Possess Real Property in New York .................... 13

III.    Exercise of Jurisdiction in this Case Does Not Comport with the Due Process Clause  14

    A.    The Burden on Lens.com is Great ......................................................................... 14

    B.    The Interests of New York are Low ..................................................................... 15

    C.    Lens.com has not had Fair Warning ..................................................................... 17

IV.    Motion to Transfer Pursuant to 28 U.S.C. § 1404 to the District of Nevada ................. 18

    A.    Convenience of Witnesses ................................................................................... 19

    B.    Convenience of Parties ........................................................................................ 20

    C.    Locus of Operative Facts .................................................................................... 21

    D.    Location of Relevant Documents and Ease of Access to Sources of Proof ............. 23

    E.    Forums' Familiarity with the Governing Law ........................................................ 23

    F.    Plaintiff's Choice of Forum ................................................................................. 24

    G.    Availability of Process to Compel Attendance of Unwilling Witnesses ................... 24

    H.    Relative Means of the Parties ............................................................................... 24

    I.    Trial Efficiency and the Interest of Justice ........................................................... 25

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Alcon Laboratories, Inc. v. Allied Vision Group, Inc. and National Lens LLC*,
  No. 1:18-cv-02486, Dkt. No. 1 (E.D.N.Y. Apr. 27, 2018) ........................................................ 6

*Aristocrat Techs., Inc. v. High Impact Design & Entm't*,
  2009 U.S. Dist. LEXIS 53306 (D. Nev. June 22, 2009)............................................................ 17

*Bristol-Myers Squibb v. Superior Court*,
  137 S.Ct. 1773 (2017)........................................................................................................... 15, 16

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).................................................................................................................. 18

*Conopco, Inc. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996).................................................... 17

*CYI, Inc. v. Ja-Ru, Inc.*,
  913 F.Supp.2d 16 (S.D.N.Y. Dec. 21, 2012) ........................................................................... 22

*Dealtime.com Ltd. v. McNulty*,
  123 F.Supp.2d 750 (S.D.N.Y. Dec. 13, 2000) ......................................................................... 20

*Emmpresa Cubana Del Tabaco v. Culbro Corp.*,
  213 F.Supp.2d 247 (S.D.N.Y. 2002)......................................................................................... 16

*EnviroCare Techs., LLC v. Simanovsky*,
  2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) ................................................... 10, 14

*ESPN, Inc. v. Quiksilver*,
  581 F.Supp.2d 542 (S.D.N.Y. 2008)......................................................................................... 23

*Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*,
  2009 U.S. Dist. LEXIS 13369 (E.D.N.Y. Feb. 17, 2009)................................ 11, 12, 15, 18-20

*Fine Foods Int'l, L.P. v. North America Fine Foods Inc.*,
  1999 U.S. Dist. LEXIS 2007 (E.D.N.Y. Nov. 8, 1999)............................................................ 25

*Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*,
  2004 U.S. Dist. LEXIS 16373 (E.D.N.Y. July 22, 2004 ...................................... 21, 23, 24, 25

*In re: Disposable Contact Lens Antitrust Litigation*,
  Case No. 3:94-mdl-1030-J-20HTS, Dkt. No. 23 (M.D. Fla. Jan. 25, 1995).............................. 4

*In Re: Disposable Contact Lens Antitrust Litigation*,
  No. 1:15-md-2626-HES, Dkt. No. 243 (M.D. Fla. Mar. 1, 2017) ............................................. 5

*Intria Corp. v. Intria Corp.*,
  2000 U.S. Dist. LEXIS 17039 (S.D.N.Y. Nov. 27, 2000)........................................................ 23

*ISI Brands, Inc. v. KCC Int'l, Inc.*,
  458 F.Supp.2d 81 (E.D.N.Y. 2006) ..................................................................................... 12, 13

*Mary Kay, Inc. v. Weber*,
  601 F.Supp.2d 839 (N.D. Tex. 2009) ....................................................................................... 17

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
  425 F.Supp.2d 325 (E.D.N.Y. 2006) ........................................................................................ 23

*Philpot v. Kos Media LLC*,
  2017 U.S. Dist. LEXIS 62135 (S.D.N.Y. Apr. 21, 2017)......................................................... 11

*Purcell Graham, Inc. v. National Bank*,
  1994 U.S. Dist. LEXIS 15196 (S.D.N.Y. Oct. 21 1994) ...................................................... 23

*Saratoga Vichy Spring Co. v. Lehman*,
  625 F.2d 1037 (2d Cir. 1980)............................................................................................ 16

*Starr v. Michael Stars, Inc.*,
  No. 5:12-cv-860, Dkt. No. 19 (N.D.N.Y. Mar. 21, 2013) ................................................ 21, 22

*Sterlink Nat'l Bank & Trust Co. v. Fidelity Mortg. Inv'rs*,
  510 F.2d 870, (2d Cir. 1975).............................................................................................. 11

*Unique Indus. V. Sui & Sons Int'l Trading Corp.*,
  2007 U.S. Dist. LEXIS 83725, (S.D.N.Y. Nov. 9, 2007) .................................................... 12

*Visual Sciences, Inc. v. Integrated Communications, Inc.*,
  660 F.2d 56, 59 (2d Cir. 1981)........................................................................................... 10

**Statutes**

28 U.S.C. § 1391(b)(1) ........................................................................................................... 19
28 U.S.C. § 1404 ..................................................................................................................... 18

**Rules**

Fed. R. Civ. P. 12(b)(2)........................................................................................................... 10
N.Y. C.P.L.R. § 302.................................................................................................10-11, 13-14

This lawsuit, filed by Plaintiff Alcon Laboratories, Inc. ("Alcon") should be dismissed because this Court does not have personal jurisdiction over Defendant Lens.com. In the alternative, Lens.com seeks to transfer venue to Nevada, where Lens.com resides.

## INTRODUCTION

The instant lawsuit is between a resident of Texas and a resident of Nevada and should not be litigated in the State of New York. Lens.com's documents, key witnesses and decision-maker reside in Nevada. All of the witnesses who provided testimony on behalf of Alcon in the preliminary injunction motion Alcon filed along with its Complaint, reside outside the State of New York. Lens.com's contacts with New York are also extremely limited and do not form the basis for jurisdiction in New York under applicable law.

Beyond the fact that New York's long-arm statute does not provide jurisdiction over Lens.com, it is also clear that the Due Process Clause of the United States Constitution will be violated if this case is allowed to proceed in New York. The only reason this lawsuit has been filed in New York is so Alcon can take advantage of laws favorable to it in New York and the Second Circuit. That, however, is insufficient justification to allow this lawsuit to go forward in New York. Additionally, the burden on Lens.com litigating in New York will be great. Other states, including Nevada, have a far greater interest in the outcome of this dispute. Nothing in the First Amended Complaint suggests that New York or this Court should expend its resources to resolve a dispute between non-residents, especially when that lawsuit has had little, if any, impact on the citizens of New York. In accordance with clear Due Process case law, the shared interests of the several states demand that this lawsuit be resolved in Nevada – not New York – because Nevada has a far greater interest in the outcome of this dispute.

Finally, even if the Court determines that jurisdiction is proper, venue should be moved

to Nevada based on the convenience of the parties, the convenience of witnesses and in the interests of justice.

## FACTUAL BACKGROUND

I.      **Lens.com**

    A.      **Lens.com's Contacts with Nevada**

For more than twenty years, Lens.com has provided discounted pricing on contact lenses to consumers in the United States.  *See* Declaration of Cary Samourkachian ¶ 7. Lens.com is a Nevada based entity and all of its business decisions, documents, and primary witnesses are located in Nevada.  *Id.* ¶¶ 3-5, 8, 14.  Mr. Samourkachian, Lens.com's owner and its only employee, is responsible for the accounts payable, purchasing genuine Alcon contact lenses in the United States and abroad, coordination of all FDA and customs requirements on products purchased overseas, and oversight of the Lens.com website, including, but not limited to, sales to consumers.  *Id.* ¶¶ 2-3, 8.  Mr. Samourkachian also enters into contracts on behalf of Lens.com in Nevada and generally manages all other aspects of Lens.com's business in Nevada.  *Id.* ¶ 8.

At least one other witness, who works as an independent contractor for Lens.com, is also located in Las Vegas, Nevada.  *Id.* ¶ 14.  Ian Morrison is responsible for managing advertising and marketing for Lens.com.  *Id.*  All evidence relevant to this dispute, including Lens.com's financial data relating to the products-at-issue, Mr. Samourkachian's contact and discussions with Alcon, Lens.com's compliance with FDA and customs requirements, and other relevant documents are located in Nevada.  *Id.* ¶¶ 8, 10.

None of Lens.com's other activities occur in New York. Historically, Lens.com's products have been shipped from a warehouse and shipping center in Louisiana, Missouri.  *Id.* ¶¶ 16-17.  This business also stores Lens.com's contact lenses and coordinates shipment to and

2

returns from consumers. *Id.* This company also handles customer service phone calls and emails in Missouri. *Id.* ¶ 17. This company is **not** involved in the purchase of Alcon contact lenses. *Id.* Mr. Samourkachian recently purchased this company, which is a registered **Nevada** corporation. *Id.* Lens.com can produce, if desired, all witnesses relevant to this dispute in Nevada. *Id.* ¶ 18.

B.      **Lens.com's Contacts with New York**

Lens.com has no employees in New York, owns no real estate in New York and has no bank accounts in New York. *Id.* ¶¶ 19-20. Lens.com has no advertising that is directed to New York residents and only sells products via its website controlled in Nevada. *Id.* at ¶¶ 8, 22. Mr. Samourkachian, Lens.com's only employee, does not regularly travel to New York for Lens.com business purposes. *Id.* ¶¶ 3, 23. To Lens.com's knowledge, none of the events of relevance to this dispute occurred in New York or caused damage in the State of New York. *Id.* ¶ 32.

Lens.com does have one contract with a company in New York called LivePerson, Inc. ("LivePerson"), which provides a live chat software platform used by Lens.com. *Id.* ¶ 24. Because LivePerson is the dominant supplier, the vast majority of companies in the United States providing a live chat software platform to consumers have a license agreement with LivePerson. *Id.* ¶ 25. Mr. Samourkachian did not know, prior to receiving Alcon's Amended Complaint, that LivePerson was headquartered in New York. *Id.* ¶ 26. LivePerson's features are ubiquitous to online businesses in the United States, and having a contract with LivePerson would be similar to arguing that a business having a license agreement with Microsoft, for use of Word, creates jurisdictional contacts with the State of Washington. *Id.* ¶ 25.

II.     **Alcon**

    A.     **Alcon's Anti-Competitive Conduct**

Courts and commentators[1] have frequently noted that the contact lens industry is ripe for antitrust violations primarily because eye doctors both prescribe and sell a specific brand of contact lenses to their customers. This means that Alcon and the other manufacturers of contact lenses are incentivized to provide eye doctors with the highest profit margins possible on the products sold, in the hope that the eye doctor will prescribe its products over that of a competitor. Over the years, Alcon has determined that the best way to ensure high profit margins for eye doctors is to limit the sales of its products to discounters like Lens.com, who have traditionally undercut the prices charged by eye doctors.

At least two antitrust class action lawsuits have directly addressed Alcon's prior efforts to suppress discounters like Lens.com. The first, brought in the late 1990s, was filed by consumers and 32 Attorneys General against Alcon's predecessor, CIBA Vision, and the other three main suppliers of contact lenses.  *See In re: Disposable Contact Lens Antitrust Litigation*, Case No. 3:94-mdl-1030-J-20HTS, Dkt. No. 23, ¶¶ 1-2 (M.D. Fla. Jan. 25, 1995), Exhibit C.  This class action alleged that Alcon's predecessor conspired with eye doctors and distributors in an effort to limit the sales of contact lenses by alternative channel distributors like Lens.com. *Id.*  ¶¶ 31-35. The settlement of that action states that "Defendant CIBA Vision is enjoined…from changing its existing sales and distribution policy to the extent that such policy allows the sale of its contact lenses, and permits its authorized distributors to resell its contact lenses, directly to alternative channels of distribution," including to Lens.com. *See* Exhibit D at 12.

The second class action relates to pricing policies instituted by Alcon in June of 2013. *In*

---

[1] The corrected consolidated complaint in a class action lawsuit filed against Alcon, discussed in greater detail below, contains a detailed overview of Alcon's anti-competitive history. *See* Exhibit B.

*Re: Disposable Contact Lens Antitrust Litigation*, No. 1:15-md-2626-HES, Dkt. No. 243, at *37 (M.D. Fla. Mar. 1, 2017), Exhibit E. Alcon calls this pricing policy a "universal pricing policy." In testimony provided before Congress, Alcon admitted that under this pricing policy Alcon would not supply products to discounters like Lens.com "who resold [Alcon products] for less than the price announced by Alcon." *Id.* at *11.  This litigation is ongoing.  However, Alcon ended the pricing policies in question on December 23, 2016, after losing yet another lawsuit involving the sales of its products in Utah.  *See* Letter from Eric Bruno, Exhibit F.

**B.**     **Alcon's Contacts with Nevada**

**1.**     **Alcon's Negotiations with Lens.com**

The First Amended Complaint ("FAC") acknowledges that "Alcon has had business discussions with Lens.com's CEO and founder, Cary Samourkachian, regarding opportunities for Lens.com to become an authorized retailer of Alcon products or to buy Alcon products directly from Alcon." Dkt. No. 20 ¶ 72.  For the past six years, many of these communications have been face to face with Mr. Samourkachian, in Nevada. Ex. A ¶¶ 10-11. Alcon also sent Lens.com emails, to the State of Nevada, which make clear that only the execution of a contract with Alcon requiring Lens.com to purchase all of its products directly from Alcon – and not from any other source, including other Alcon authorized distributors – would prevent the instant litigation. *Id.* ¶ 12 and Ex. 1. Alcon also sent, to the State of Nevada, a pricing list which notes Lens.com would be required to make "100% of all purchases direct from Alcon".  *Id.*  Execution of this agreement was the only option offered to Lens.com to avoid litigation in New York.

2.      **Alcon's Attendance at Tradeshows in Nevada**

Alcon has filed a second lawsuit in New York against a company called Allied Vision Group, Inc. *See Alcon Laboratories, Inc. v. Allied Vision Group, Inc. and National Lens LLC*, No. 1:18-cv-02486, Dkt. No. 1 ¶ 18 (E.D.N.Y. Apr. 27, 2018). This lawsuit contains similar allegations to those made against Lens.com. In the *Allied* lawsuit, Alcon has admitted that the "leading vision care conference in the United States" is a conference called "Vision Expo." *Id.* ¶ 18. The *Allied* Complaint further acknowledges that Vision Expo holds two annual conferences each year in New York City and in Las Vegas, Nevada. *Id.* Alcon further admits that "Alcon has attended and had booths at both conferences every year to promote its contact lens products and, until this year, its ophthalmic pharmaceutical products." *Id.*  Alcon further alleges that the Vision Expo conferences allow it to "continue deepening its relationships with ECPs, customers, and other members of the vision care industry."[2] *Id.* ¶ 19.

C.      **Alcon's Connections with New York**

Despite Alcon's efforts to claim otherwise, Alcon's connections to New York and this lawsuit's connections to New York are tenuous. According to the FAC, Alcon claims that it has "extensive connections with New York" because one of its employees, Richard Fabio, lives on Long Island. FAC ¶ 13. Alcon also claims to have other employees in the State of New York, but fails to explain how such employees are relevant to this dispute. *Id.* ¶¶ 14-15. Finally, Alcon mentions the Vision Expo conference held in New York, while failing to note, as it did in the *Allied* Complaint, that the exact same conference is held in Nevada and that all statements regarding that conference mentioned in the *Allied* Complaint would clearly apply with equal force to the Vision Expo conference held every year in Las Vegas. *Id.* ¶¶ 16-17.

---

[2] Alcon's statement is made only with respect to the Vision Expo conference held in New York. In context, however, this statement also clearly applies to the Vision Expo conference held in Las Vegas.

D.      **Alcon's Connections with Other States**

Alcon has over 23,000 employees and over $6 billion in annual sales.  *See* Exhibit G,
Novartis' Form 20-F and Alcon Employment Statistics.   Alcon admits in the FAC that it is a
Delaware corporation with a principal place of business in Fort Worth, Texas.  *See* Dkt. No. 20 ¶
4.  Alcon has also served Lens.com with a motion seeking preliminary injunction. *See* Exhibit O.
The employee declarations served with Alcon's Motion for Preliminary Injunction were signed
by employees located in Fort Worth, or Atlanta, Georgia.  *See* Exhibit H, Wangsness Declaration
at *8; Exhibit I, Dowd Declaration at *25.  The Alcon employees who most recently traveled to
Nevada to meet with Mr. Samourkachian and offer Lens.com a direct distribution contract, are
residents of Texas and Georgia.  *See* Exhibits J, K.

The FAC and Alcon's Motion for Preliminary Injunction both reference "test buys" made
by Alcon. It appears that all of these test purchases were placed and/or coordinated by Alcon's
private investigator Richard Bergner, a resident of Florida.  *See* Exhibit L, Bergner Declaration
at *1, 24.

III.    **Allegations of the Complaint**

A.      **The Vast Majority of Lens.com's Sales to New York are Not Relevant to
         Jurisdiction**

For more than twenty years Alcon has placed its product in packaging which could be
sold anywhere in the world. Approximately six months after Alcon was forced to cease use of its
"universal pricing policies," Alcon decided to create packaging with an American flag which it
claimed was for use and sold only in the United States. To date, however, Alcon has only placed
the American flag on two products and has raised issues in the FAC concerning only four
products. However, Alcon sells, and Lens.com distributes, approximately twenty different
products. Ex. A ¶ 8.  The vast majority of these sales are not mentioned in the FAC and do not

support a finding of jurisdiction. Only a tiny portion of the Alcon products sold by Lens.com are at issue in this dispute. These products, according to the FAC, include Alcon's Dailies AquaComfort Plus ("Dailies"), O2 Optix ("O2"), Air Optix Colors ("Colors"), and Air Optix plus HydraGlyde ("HydraGlyde"). Dkt. No. 20 ¶¶ 32, 34, 36, and 37-40.

**B.      The Relevant Facts do not Concern New York**

The gist of Alcon's FAC against Lens.com is that Lens.com purchased Dailies, O2, Colors, and HydraGlyde products abroad for re-sale into the United States, in violation of Alcon's rights. The FAC alleges that Lens.com has "sold and shipped" products in "outdated" and "discontinued" packaging in violation of Alcon's rights and that Lens.com "advertises" products in the outdated packaging on its website. *See* Dkt. 20 ¶¶ 81-87, 95-98. Alcon further contends that Lens.com purchased Alcon products "from batches that were not intended for distribution or sale in the United States" and that Lens.com sells products Alcon "no longer supports" in the United States.  *Id.* at ¶¶ 88-94. As noted above, none of these events occurred in New York. Lens.com's website is controlled from Nevada. Lens.com has made all of its purchasing decisions in Nevada. Any allegedly "outdated" packaging was shipped to a warehouse in Missouri used by Lens.com.

**C.      Only a Small Portion of Lens.com Sales of Dailies, O2, Colors, and HydraGlyde are Relevant**

Beyond the fact that most of Lens.com's sales are not relevant to this dispute, only a small portion of the Dailies, O2, Colors and HydraGlyde products sold are in dispute. In fact, the allegations of the FAC make clear that Lens.com sales of these products are limited at best and may involve only a single test buy in the State of New York.

**1.      Dailies Products**

The FAC alleges that as of approximately May 2017, Alcon commenced a process of

trading out old Dailies packaging for new packaging containing an American flag. Dkt. No. 20 ¶¶ 22-33. The FAC thereafter alleges that at some unspecified time in 2017 Alcon apparently no longer allowed the sale or distribution of Dailies products in old packaging. The precise date on which this occurred is not identified in the FAC. Alcon does admit, however, that after that date Alcon's test buys demonstrated that Lens.com shipped "products with both the prior packaging and the new U.S.-specific packaging." Dkt. No. 20 ¶ 82. Thus, Alcon admits that at least some portion of Lens.com sales in the United States, after introduction of the new Dailies packaging in 2017, is not at issue in this dispute. What the allegations of the FAC fail to point out, however, are which portion of Lens.com sales in New York, after introduction of the new Dailies packaging in 2017, fall into the unauthorized category.  In fact, the FAC alleges only one such sale noting "Lens.com filled a New York order placed as recently as December 27, 2017 with DAILIES AQUACOMFORT PLUS® products in the prior packaging." *Id.* ¶ 84.

### 2.    Colors Products

With respect to Colors shipments, Alcon alleges only that "in late spring of 2017, Alcon conducted numerous test buys to ensure that only authorized AIR OPTIX® Colors contact lenses were being sold **in the United States.**" Dkt. No. 20 ¶ 88 (emphasis added). Alcon does not allege that even one non-conforming sale of Air Optix Colors lenses was made in New York.

### 3.    O2 Products

With respect to O2 sales, Alcon also alleges only sales in the United States, noting that when "it was conducting test buys for DAILIES AQUACOMFORT PLUS® lenses in 2017, Alcon discovered that Lens.com was selling Alcon O2 OPTIX® lenses **in the United States."** Dkt. No. 20 ¶ 90 (emphasis added). There are no allegations alleging test buys or sales in New York.

4.      **HydraGlyde Products**

Finally, with respect to HydraGlyde shipments, Alcon acknowledges that it commenced

shipping new packaging in January of 2018. Dkt. No. 20 at 37. Alcon also only alleges test buys

in the United States noting "in March 2018, Alcon conducted test buys to ensure that only

products in U.S.-specific AIR OPTIX® plus HYDRAGLYDE® packaging were being **sold in**

**the United States.**" *Id* (emphasis added).

## ARGUMENT

I.      **The Motion to Dismiss Standard**

In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the "plaintiff bears the burden

of demonstrating personal jurisdiction over the persons or entities sued." *EnviroCare Techs.,*

*LLC v. Simanovsky*, 2012 U.S. Dist. LEXIS 78088, at *3-4 (E.D.N.Y. June 4, 2012).  Before this

Court can entertain Alcon's preliminary injunction motion, Alcon must show "that there is at

least a reasonable probability of ultimate success upon the question of jurisdiction when the

action is tried on the merits." *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d

56, 59 (2d Cir. 1981). Alcon cannot meet this burden.[3]

Alcon does not specifically identify in its FAC if Lens.com is subject to general or

specific jurisdiction.  However, in its responsive letter to Lens.com's letter requesting a pre-

motion conference, Alcon solely discussed N.Y. C.P.L.R. § 302 (a)(1) as the basis for

jurisdiction. *See* Dkt. No. 18 at *2.  Accordingly, Lens.com will only address § 302, as it is clear

Alcon concedes that Lens.com is not subject to general jurisdiction in New York.

---

[3] During the last hearing, the Court inquired as to whether Lens.com would require an evidentiary hearing. Lens.com agrees that the Court may resolve this motion on the basis of the pleadings and declarations filed, but would like to present an oral argument.

II.      **Lens.com is Not Subject to Specific Jurisdiction in New York**

This Court may exercise personal jurisdiction over Lens.com only if Alcon meets one of the four requirements of N.Y. C.P.L.R. § 302 and the Due Process Clause of the Constitution. Alcon cannot meet the criteria established under New York law or the Due Process Clause.

A.      **Alcon has not Shown that Lens.com Transacts Business in New York**

A finding of jurisdiction under Section 302(1)(a) "requires a showing that defendant: (1) transacts any business in New York and, (2) that the cause of action arises from such transaction." *Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*, 2009 U.S. Dist. LEXIS 13369, at *27-28 (E.D.N.Y. Feb. 17, 2009).  Case law notes that a "claim arises from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon or when there is a substantial relationship between the transaction and the claim asserted." *Philpot v. Kos Media LLC*, 2017 U.S. Dist. LEXIS 62135, at *20 (S.D.N.Y. Apr. 21, 2017).  The Court looks at the totality of the circumstances to make these determinations.  *Sterlink Nat'l Bank & Trust Co. v. Fidelity Mortg. Inv'rs*, 510 F.2d 870, 873 (2d Cir. 1975).

1.      **Most of Lens.com Sales in New York are not Relevant to Jurisdiction**

As noted above, the vast majority of Lens.com sales in New York are not relevant to this dispute because there is no "articulable nexus" between those sales and the causes of action raised in the FAC. Alcon acknowledges that the issues in dispute involve only four of the approximately twenty products Lens.com sells in New York.  Alcon also acknowledges that this litigation only concerns the portion of these four products sold in allegedly "outdated" or "unsupported" packaging. Accordingly, the vast majority of sales that Lens.com has made in New York are not relevant to jurisdiction.

### 2.      None of the Operative Facts Giving Rise to Liability Occurred in New York

Alcon's FAC also makes clear that none of the operative facts relevant to this dispute occurred in New York. To the contrary, the gist of Alcon's FAC is that Lens.com has purchased products overseas in "outdated" and "unsupported" packaging and promoted these products on its website. Alcon has not alleged that any of these events occurred in New York and none of the witnesses pertaining to these issues reside in New York. Lens.com made all purchasing decisions in Nevada and all products were shipped from Missouri. Lens.com's website is controlled in Nevada. There is no evidence that any promotional activities concerning these four non-conforming products were made specifically for New Yorkers and New York law makes clear that advertisements placed in national publications are not sufficient to establish jurisdiction under § 302(1)(a).  *Fifth Ave.*, 2009 U.S. Dist. LEXIS 13369 at *28.

### 3.      Alcon's Single Test Buy in New York Does Not Establish Jurisdiction

Alcon's FAC also only alleges a single test buy in New York in support of its jurisdictional arguments. This test buy does not support jurisdiction, however, because test buys made solely for the purpose of litigation are "nothing more than an attempt by plaintiff to manufacture a contact with this forum."  *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F.Supp.2d 81, at *88-89 (E.D.N.Y. 2006).  *See also Unique Indus. V. Sui & Sons Int'l Trading Corp.*, 2007 U.S. Dist. LEXIS 83725, at *19 (S.D.N.Y. Nov. 9, 2007) (a "straw poll" of courts in the Second Circuit shows "judicial hostility" toward jurisdiction based on sales made by a plaintiff's agent.)

Moreover, even if the Court determines that additional sales likely support jurisdiction, such sales are limited to Lens.com's sales of Dailies, O2, Colors, and HydraGlyde products sold in allegedly non-conforming packaging.

12

**B.      Alcon has not shown that Lens.com Committed a Tortious Act in New York**

N.Y. C.P.L.R. § 302 authorizes jurisdiction over an entity which "commits a tortious act within the state . . . ."  Section 302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *ISI Brands*, 458 F.Supp.2d at 89.  Courts have held that, "when websites display infringing marks, the tort is committed where the website is created and/or maintained." *Id.* It is undisputed that Lens.com did not create its website in New York nor is its website maintained in New York. Ex. A ¶ 8, 15. It is also undisputed that Lens.com is not a resident of New York. *Id.* ¶ 5. Thus, Lens.com has not performed any tortious acts in the State of New York. Accordingly, Alcon's FAC also fails to meet the requirements of § 302(a)(2).

**C.      Alcon Has Not Met the Requirements of N.Y. C.P.L.R. § 302 (a)(3)**

N.Y. C.P.L.R. § 302 (a)(3) authorizes jurisdiction over an entity which "commits a tortious act without the state causing injury to person or property within the state . . . if he [either] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."  Alcon fails to allege any facts supporting jurisdiction under Section 302. Nothing in the FAC alleges that Lens.com regularly solicited business in New York for the four allegedly infringing products, nor does the FAC allege that Lens.com has engaged in a persistent course of conduct relating to these four products.

**D.      Lens.com Does Not Own, Use, or Possess Real Property in New York**

N.Y. C.P.L.R. § 302 provides that a court may exercise personal jurisdiction over a

foreign corporation which "owns, uses, or possesses any real property situated within the state." Alcon does not allege, and Lens.com admits that it does not own, use, or possess any real property located in the State of New York. *See* Ex. A ¶ 20.

**III.    Exercise of Jurisdiction in this Case Does Not Comport with the Due Process Clause**

This Court may exercise personal jurisdiction over Lens.com only if Alcon meets the requirements of N.Y. C.P.L.R. § 302 and the Due Process Clause of the Constitution. Alcon fails to establish jurisdiction under the Due Process Clause.  The guarantees of the Due Process Clause "are satisfied when a defendant has certain minimum contacts with the forum state such that maintenance of the suit would not offend traditional notions of fair play and substantial justice." *EnviroCare*, 2012 U.S. Dist. LEXIS 78088, at *14 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "The analysis involves two related inquiries: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Id.*

"To establish that Defendants have the requisite minimum contacts with the forum, Plaintiff must show that Defendants purposely availed themselves of the privilege of doing business in New York." *Id.*  Courts evaluating due process "consider five factors in determining whether the exercise of jurisdiction is reasonable: (1) the burden on Defendants, (2) the interests of the forum state, (3) Plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *EnviroCare*, 2012 U.S. Dist. LEXIS 78088, at *15-16 (citing other cases).  None of the criteria required for due process are present here.

**A.    The Burden on Lens.com is Great**

The U.S. Supreme Court's most recent due process case notes that the "primary concern" of its due process analysis is "the burden on the defendant." *Bristol-Myers Squibb v. Superior*

*Court*, 137 S.Ct. 1773, 1780 (2017). Here, the burden on the defendant, Lens.com, will be great. Lens.com is a Nevada based company with one employee.  Ex. A ¶¶ 3-4. It has been sued by one of the largest corporate entities in America, in a court thousands of miles from its home. These factors raise substantial "practical problems resulting from litigating in the forum," including the burden of traveling across the country to litigate in a faraway court.  *Bristol-Myers Squibb*, 137 S.Ct. at 1780.

The burden on Lens.com, according to *Bristol-Myers Squibb*, also "encompasses the more abstract matter of submitting to the coercive power of the state that may have little legitimate interest in the claims in question." *Id*. Here, New York has little legitimate interest in this lawsuit because the claims in question involve corporate entities who do not reside in New York and involve products imported into the United States via actions which did not occur in New York. Further, the negotiations and discussions critical to issues of importance to this lawsuit occurred in either Nevada or Texas not New York. Indeed, apart from an interactive website offering products for sale in New York, there are no activities in this case of any consequence which occurred in New York.

**B.**     **The Interests of New York are Low**

These facts also impact the second, fourth and fifth prongs of the Due Process analysis, which require the Court to analyze "the interest of the forum state," "the interstate judicial systems interest in obtaining the most efficient resolution of controversies" and "the shared interests of the several states in furthering fundamental substantive social policies." None of these factors favor New York. To the contrary, both Texas and Nevada have a far greater interest in the outcome of this dispute. Clearly the shared policies of the several states dictate that this dispute should be resolved in a state having a greater interest in the outcome. The U.S. Supreme

15

Court has made clear the "restrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or distant litigation, they are a consequence of territorial limitations on the power of the respective States.'" *Bristol-Myers Squibb,* 137 S.Ct. at 1780. The Court also notes that "sovereignty of each state … implies a limitation on the sovereignty of all of its sister states." *Id.* Clearly, New York should limit its sovereignty and allow the dispute to move forward in a state having a greater interest in this dispute and these litigants.

Indeed, the only reason this litigation was filed in New York is because the laws of New York and the laws of the Second Circuit are more favorable to the Plaintiff than are the laws in Alcon's home State of Texas or Lens.com's home State of Nevada.  By way of example, two key defenses for Lens.com are the legal doctrines of laches and acquiescence. To prove a claim of laches in the Second Circuit, Lens.com must prove that (1) Alcon knew of Lens.com's use of Alcon's trademarks in its sales, (2) Alcon inexcusably delayed commencing this action, and (3) Lens.com is prejudiced if Alcon is permitted to assert its rights at this time.  *See Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980).  To prove a claim of acquiescence Lens.com must prove that Alcon, by affirmative word or deed, conveyed consent for Lens.com to engage in the activities now forming the basis of Alcon's causes of action. *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.Supp.2d 247, 276 (S.D.N.Y. 2002).

The laches and acquiescence defenses are critical to this case. In its original Complaint, Alcon admits that it discontinued "fitting patients" with O2 lenses in 2011 and stopped distributing O2 products "in the United States about 2 years later, in 2013." Dkt No. 1 at ¶ 26. From 2013 to the filing of the original Complaint in this action, Alcon never complained, nor did it inform Lens.com that its sale of the O2 product violated Alcon's rights.

Both of these defenses rely on statutory bar dates that differ in each state because the

Lanham Act does not contain a statutory time-bar date. As a consequence, courts look to state law and apply the analogous limitation period for laches defenses, and the burden of proof shifts depending on whether the claim is brought before or after the limitations period. *Conopco, Inc. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996). In New York, the analogous statute is the 6-year statute of limitations for fraud. *Id.* However, in Texas and Nevada, the states which actually have a substantial interest in this dispute, the analogous statutes of limitations are 4-years. *See Aristocrat Techs., Inc. v. High Impact Design & Entm't*, 2009 U.S. Dist. LEXIS 53306, at *7-10 (D. Nev. June 22, 2009); *Mary Kay, Inc. v. Weber*, 601 F.Supp.2d 839, 859-860 (N.D. Tex. 2009). As a consequence, if this case were filed in Nevada or Texas, all of the claims alleged regarding the O2 products would likely not survive a motion for summary judgment.

It should be noted that after Lens.com informed this Court of the importance of laches and acquiescence during the scheduling conference held on April 25, 2018, Alcon has attempted to remedy the issue by altering the facts alleged in its Complaint. Even though the original Complaint unequivocally states that Alcon stopped selling O2 products in 2013, the FAC now claims Alcon "stopped distributing the O2 optics lenses in the U.S. in early 2014." Dkt. No. 20 at ¶ 34. While such gamesmanship will likely require resolution at a future date, this change to the "facts" only serves to point out the importance of laches and acquiescence and re-enforces why Alcon wants a claim that should be resolved in Texas or Nevada to instead be resolved in New York.

## C.    Lens.com has not had Fair Warning

Finally, due process case law makes clear that a litigant like Lens.com is entitled to "fair warning" that a claim against it may be brought in a faraway jurisdiction. "By requiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a

foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system . . .

." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472 (1985) (STEVENS, J., concurring in

judgment).  Thus, "[w]here a forum seeks to assert specific jurisdiction over an out-of-state

defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the

defendant has 'purposefully directed' his activities at the residents of the forum and the litigation

results from alleged injuries that 'arise out of or relate to' those activities." *Id.* at 472.

      No such fair warning exists here.  For 20 years Lens.com has peacefully purchased Alcon

products and sold them to consumers.  Ex. A ¶ 7.  For 20 years Alcon has not complained of

these activities.  During this 20 year period, Mr. Samourkachian never believed Lens.com would

be sued in or subject to suit in New York over issues raised in the FAC.  *Id.* ¶ 31-32.  Suddenly,

Alcon now demands that Lens.com purchase all products only from Alcon – without regard to

whether Lens.com has preexisting rights or continued rights to lawfully purchase products from

others and re-sell them.  *Id.* ¶ 12. None of these facts implicate the State of New York. Nothing

in Lens.com's 20 year history with Alcon provided "fair warning" that Alcon would bring suit

against Lens.com in New York. Thus, due process precludes the State of New York from

exercising jurisdiction over Lens.com.

## IV.   Motion to Transfer Pursuant to 28 U.S.C. § 1404 to the District of Nevada

      "For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  "In order to obtain a transfer of venue, the moving party bears the burden

of establishing (1) that the action is one that might have been brought in the district to which the

movant seeks to have it transferred, and (2) that transfer is appropriate based on the convenience

of the parties, the convenience of witnesses, and the interests of justice."  *Fifth Ave.*, 2009 U.S.

Dist. LEXIS 13369, at *41 (internal quotations removed).  The court considers a variety of factors, including, but not limited to:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof (6) the relative means of the parties, (7) the forums' familiarity with the governing law, (8) the weight accorded the plaintiffs choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Id.* at *42.  Because Lens.com is the only defendant and resides in the State of Nevada where it is incorporated and has its principal place of business, this action could have been brought in the District of Nevada. *See* 28 U.S.C. § 1391(b)(1); Ex. A ¶ 4. The other factors also favor transfer.

### A.      Convenience of Witnesses

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted . . ." *Fifth Ave.*, 2009 U.S. Dist. LEXIS 13369, at *43 (internal quotations removed).  The court will qualitatively evaluate the materiality of each witnesses' testimony rather than simply counting the total number of witnesses.  *Id.*

"In a[] [trademark] infringement action, the most critical witnesses may be those officers and employees who were involved in the design, production, and sale of the allegedly infringing products." *Id.* at *43-44 (internal quotations and punctuation removed).  Mr. Samourkachian is the only employee of Lens.com and resides in Nevada.  Ex. A ¶¶ 3, 5.  He participated in the negotiations for a direct contract with Alcon, orders the Alcon contact lenses, coordinates the purchase of the lenses, handles all customs and FDA compliance for imported products, and oversees maintenance of the Lens.com website, including sales to consumers, and will testify regarding the same.  *Id.* ¶ 8.  Mr. Samourkachian does *not* regularly, or even occasionally, travel

to New York for Lens.com business purposes. *Id.* ¶ 23.  As the only employee of Lens.com, Mr.

Samourkachian will be greatly inconvenienced if he is forced to abandon running Lens.com to

travel to New York for this litigation. *Id.* ¶¶ 27-29.

Lens.com does contract with a variety of independent contractors who aid Mr.

Samourkachian in the day-to-day operation of Lens.com. *Id.* ¶ 14.  One such Nevada-based

contractor, Ian Morrison, is responsible for overseeing the marketing and advertising of

Lens.com's products. *Id.*  He will testify regarding Lens.com's use of the Alcon trademarks and

Lens.com's advertisements using the same. *Id.*

Mr. Samourkachian also owns a warehouse and shipping center in Missouri. *Id.* ¶ 16.

However, no one in Missouri is involved with the import of Alcon contact lenses. *Id.* ¶ 17.  The

warehouse verifies a consumer's prescription, ships the purchased contact lenses, handles any

returns, and answers any customer service questions regarding Lens.com. *Id.*

In contrast, Alcon claims in the FAC that a "key witness" resides in New York. Dkt. No.

20 ¶ 13. Alcon fails, however, to identify the testimony this key witness will provide and instead,

in its pending preliminary injunction motion, provides testimony from witnesses who reside in

Texas, Georgia, and Florida. *See* Exs. H, I, and L. Alcon also acknowledges in the FAC that its

employees, who visited Lens.com in Nevada, are also relevant to this dispute.  Dkt. No. 20 ¶ 72.

None of these witnesses reside in New York.  *See* Exs. J and K.

**B.**    **Convenience of Parties**

"The purpose of § 1404(a) is not to shift the inconvenience from one party to the other."

*Fifth Ave.*, 2009 U.S. Dist. LEXIS 13369, at \*44-45.  "[W]here neither party resides in the

chosen forum, it is only logical that a transfer to the residence of one of them would be more

convenient." *Dealtime.com Ltd. v. McNulty*, 123 F.Supp.2d 750, 756 (S.D.N.Y. Dec. 13, 2000).

Here, Lens.com has no presence in New York and is a resident of Nevada.  Ex. A ¶¶ 4,

19-23.  Alcon is a Delaware corporation which has its principal place of business in Texas.  *See*

Dkt. No. 20 ¶ 4.  Its corporate representatives will have to travel for the litigation regardless of

whether it is held in this District or in Nevada.

Alcon attempts to invoke the connection of its parent corporation's, Novartis, New York

office.  *See* Dkt. No. 18 at *3.  However, Novartis is not listed as a party in this action, nor has

Alcon identified any Novartis witnesses residing in New York.

Strangely enough, Alcon appears to prioritize the convenience and location of its chosen

trial counsel which it states are located in New York.  *See* Dkt. No. 18 at *3.  However, the

PACER entries for this action show that two of Alcon's four registered counsel live in California

and two live in New York.  *See* Exhibit M.  Further, counsel with the relevant experience

litigating trademark disputes are located in California.  *See* Exhibit N.  Accordingly, if Alcon is

so concerned with the convenience of its trial counsel, the trip to Nevada is much shorter for its

California counsel than the cross-country flight to New York.

### C.    Locus of Operative Facts

All of Lens.com's decisions regarding purchase, import, and sales of the allegedly

infringing contact lenses were made in Lens.com's corporate headquarters in Nevada.  Ex. A ¶ 8.

*Accord Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, 2004 U.S. Dist. LEXIS 16373, at

*18 (E.D.N.Y. July 22, 2004.  Additionally, Lens.com also makes sales of the accused products

in Nevada and other states.  Ex. A ¶ 8.  In similar cases, where the parties engaged in nationwide

sales, courts have determined that the nexus of operative facts lies either where the parties reside

or where the defendant designed and sold the infringing product.  *See Starr v. Michael Stars,*

*Inc.*, No. 5:12-cv-860, Dkt. No. 19, at *13 (N.D.N.Y. Mar. 21, 2013) ("The locus of operative

facts favors defendant" because defendant's products were sold across the country and "defendant's business is located in the Central District of California, and plaintiff resides there."); *Accord Hilti*, 2004 U.S. Dist. LEXIS 16373, at \*18-19 ("[T]he key decisions regarding the design, advertising and marketing of each brand were made in neither this district nor the proposed transferee district[.] Where the plaintiff has selected venue that bears at best a <u>de minimis</u> relation to the subject of the suit, it should not be heard to complain that another district with a similarly minimal connection on the same grounds is inappropriate."); *CYI, Inc. v. Ja-Ru, Inc.*, 913 F.Supp.2d 16, 21 (S.D.N.Y. Dec. 21, 2012) (finding cases holding that the initially chosen forum is the locus of operative facts because of sales made in that district "are not persuasive.").

Just like in *Starr*, Lens.com sells Alcon contact lenses throughout the country and New York bears only a de minimis relationship to this litigation. Ex. A ¶ 8. Nevada bears a much higher degree of relationship to this litigation since it is where Lens.com resides and is the home of Lens.com's primary witnesses and is where all business decisions are made. *Id.* ¶¶ 4, 8.

Similarly, Alcon sells its contact lenses throughout the country, including both New York and Nevada. Alcon likely has a sales team for each state, including Nevada. Further, Alcon admitted in a different proceeding that it attends the VisonExpo West conference each year, located in Las Vegas, Nevada. *See supra* at \*5-6. This conference allows Alcon to deepen its connections to Nevada consumers, distributors, and ECPs. *Id.* Alcon is a resident of Texas, with employees throughout the country. Dkt. No. 20 ¶ 4. Presumably, most business decisions are made at its headquarters in Texas, including the decision to consent to and/or ignore Lens.com's purchase of genuine Alcon contact lenses overseas for the last twenty years. Thus, the locus of operative facts resides in Nevada and this factor favors transfer.

22

**D.**      **Location of Relevant Documents and Ease of Access to Sources of Proof**

"[I]n infringement cases, it makes sense that the bulk of the relevant evidence usually comes from the accused infringer." *ESPN, Inc. v. Quiksilver*, 581 F.Supp.2d 542, 548-49 (S.D.N.Y. 2008).  All of Lens.com's relevant documents and evidence are located in Nevada. Ex. A ¶ 8.  Alcon is located in Fort Worth, Texas and, assumedly, so are its documents, servers, and computers.  Dkt. No. 20 ¶ 4.  To the extent Novartis is even relevant and involved in this action, it is a Swiss corporation with its headquarters in Switzerland.  Dkt. No. 18 at *3. Regardless of whether this action is transferred to Nevada or remains in New York, both Novartis and Alcon will be transporting documents and other information to another district. This factor also favors transfer to the District of Nevada.

**E.**      **Forums' Familiarity with the Governing Law**

Alcon's FAC "raises issues of federal law, with which this court and the [District of Nevada] are equally familiar." *Hilti*, 2004 U.S. Dist. LEXIS 16373, at *22.  Alcon also raises similar causes of action under New York state law and common law, which involve the same operative facts.  "If federal law remains the gravamen of [the] plaintiff's case, this [factor] is moot." *Purcell Graham, Inc. v. National Bank*, 1994 U.S. Dist. LEXIS 15196, at *20 (S.D.N.Y. Oct. 21 1994) (citing other cases).  Here, Alcon focuses its claims and analysis, including in its Motion for Preliminary Injunction, on its federal claims.  *See* Exhibit O.

Further, "the 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states." *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 333 (E.D.N.Y. 2006).  *See also Intria Corp. v. Intria Corp.*, 2000 U.S. Dist. LEXIS 17039, at *27-28 (S.D.N.Y. Nov. 27, 2000) ("[T]he connection between this district and the case at hand is so tenuous and the balance of

applicable factors weighs so heavily in favor of transfer, that is would defy logic to permit defendant's transfer motion to be defeated by plaintiff's tacking on state law claims that essentially mirror the federal infringement claims in this case.  Moreover, plaintiff's New York claims are brought pursuant to the NYGBL, and the statutory basis for plaintiff's claims is neither complex nor unsettled.").  Thus, this factor is, at worst, neutral.

F.     **Plaintiff's Choice of Forum**

"The plaintiff's choice of forum is ordinarily given significant weight and is disturbed only if the balance of convenience, and justice weigh heavily in favor of defendant's proposed forum." *Hilti*, 2004 U.S. Dist. LEXIS 16373 at *21.  However, "[t]he weight given to a plaintiff's choice is greatly diminished . . . where the plaintiff does not reside in the chosen forum and/or where significant operative events did not occur there." *Id.*

Alcon does not reside in New York and all decisions regarding sale, import, and production of the Alcon contact lenses occurred either in Texas at Alcon's headquarters or in Nevada at Lens.com's headquarters.  Ex. A ¶ 4; Dkt. No. 20 ¶ 4.  Alcon did not even manufacture the test buys it relies upon in New York. Instead, the test buys were orchestrated in Florida and shipped to addresses in New York.  *See* Ex. L at *2-6, 8-11, 13-14, 16-19, 21-24. Thus, Alcon's decision to file in New York should be given no weight.

G.     **Availability of Process to Compel Attendance of Unwilling Witnesses**

Lens.com is not aware of any unwilling witnesses located in New York that either Alcon or Lens.com will need to compel.  Thus, this factor is neutral.

H.     **Relative Means of the Parties**

Alcon has annual sales exceeding $6 billion and over 23,000 employees. Ex. G.  In contrast, Lens.com is a one-employee operation based in Nevada.  Ex. A ¶¶ 3-4.  Clearly, it is much more convenient and economical for Alcon to send its employees (who will have to travel

regardless) to Nevada rather than force Mr. Samourkachian to abandon his business for discovery and other trial matters.  Cost is obviously not a concern for Alcon as it has already filed this lawsuit far away from its home venue of the Northern District of Texas.  Accordingly, this factor weights in favor of transfer to the District of Nevada.

      **I.**      **Trial Efficiency and the Interest of Justice**

The December, 2017 caseload management statistics show that time to trial and overall caseload are virtually neutral as between the districts.  *See* Exhibit P. *See also Hilti*, 2004 U.S. Dist. LEXIS 16373 at *23 ("Courts in this circuit typically accord this factor relatively little weight.").  Further, "this case is at its first stages, and therefore this Court has not expended considerable time and resources such that an otherwise appropriate transfer would not be warranted."  *Fine Foods Int'l, L.P. v. North America Fine Foods Inc.*, 1999 U.S. Dist. LEXIS 2007, at *21 (E.D.N.Y. Nov. 8, 1999).  Thus, this factor is slightly in favor of transfer to the District of Nevada or, at worst, neutral.

## CONCLUSION

For all of the above reasons, Lens.com respectfully requests that the Court dismiss Alcon's lawsuit due to lack of personal jurisdiction or, alternatively, transfer this lawsuit to the District of Nevada.

Dated: June 7, 2018
        Salt Lake City, Utah

THORPE NORTH & WESTERN, LLP

By:  /s/ Mark Bettilyon
        Mark Bettilyon (admitted *pro hac vice*)
        Peter M. de Jonge (admitted *pro hac vice*)
        Catherine M. Maness (admitted *pro hac vice*)
        175 S. Main St., Suite 900
        Salt Lake City, UT 84111
        Telephone: (801) 566-6633
        Facsimile: (801) 566-0750
        Email: mark.bettilyon@tnw.com
               dejonge@tnw.com
               catherine.maness@tnw.com

CADWALADER, WICKERSHAM &
TAFT LLP
William J. Natbony (WJN 5507)
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: bill.natbony@cwt.com

26