# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALCON LABORATORIES, INC., | Case No.   1:18-cv-00407-NG-RLM |
| Plaintiff, | |
| v. | |
| LENS.COM, INC., | |
| Defendant. | |

**PLAINTIFF ALCON LABORATORIES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR TO TRANSFER VENUE**

MORRISON & FOERSTER LLP

Jamie A. Levitt
Sarah L. Prutzman
250 West 55th Street
New York, New York  10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email:  JLevitt@mofo.com
            SPrutzman@mofo.com

Jennifer Lee Taylor (Admitted *Pro Hac Vice*)
425 Market Street
San Francisco, California  94105
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
Email:  JTaylor@mofo.com

Attorneys for Plaintiff
ALCON LABORATORIES, INC.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

ALCON'S BUSINESS .......................................................................................... 3

LENS.COM'S BUSINESS ..................................................................................... 3

LEGAL STANDARD ............................................................................................ 4

ARGUMENT ....................................................................................................... 5

I.    LENS.COM'S CONTACTS WITH NEW YORK SUBJECT IT TO PERSONAL JURISDICTION IN NEW YORK .................................................................... 5

    A.    Lens.com's Transaction of Business in New York Meets the Requirements for New York's Long-Arm Statute, N.Y. C.P.L.R. § 302(a)(1) ........................... 8

        1.    Lens.com's Shipments of Products into New York Strongly Support Personal Jurisdiction ............................................................ 8

        2.    Lens.com's "Larger Business Plan" Strongly Supports Personal Jurisdiction ........................................................................ 9

        3.    Lens.com's Additional New York Business Further Supports Personal Jurisdiction ........................................................................ 12

        4.    Alcon's Claims Arise from Lens.com's Business Activity in New York, Satisfying the Second Prong of Section 302(a)(1) ...................... 13

    B.    Lens.com's Substantial New York Contacts Satisfy Due Process ..................... 14

        1.    Lens.com Has More than Minimum Contacts with New York ............... 14

        2.    Jurisdiction over Lens.com in New York Is Reasonable ....................... 14

            a.    Lens.com Has Not Made a Compelling Showing of Unreasonable Burden .................................................... 16

            b.    New York's Interests in this Case Are High ........................... 16

            c.    Alcon's Interests in Obtaining Relief Are High ....................... 18

II.   THIS CASE SHOULD NOT BE TRANSFERRED TO THE DISTRICT OF NEVADA ................................................................................................. 19

    A.    Plaintiff's Choice of Forum Warrants Substantial Deference ........................... 19

    B.    Convenience to the Parties and Witnesses Favors Venue in New York ............. 21

    C.    Location of Relevant Documents Is Neutral ............................................... 22

    D.    The Locus of Operative Facts Is in New York ........................................... 22

    E.    Relative Means of the Parties Is Neutral .................................................. 23

ny-1332985

# TABLE OF CONTENTS

(continued)

**Page**

F.     New York Is Most Familiar With the Governing Law for the New York State Law Claims .................................................................................................. 24

CONCLUSION ...................................................................................................................... 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Bank of New York v. Meridien Biao Bank Tanz.*,
 171 F.R.D. 135 (S.D.N.Y. 1997) ...........................................................16

*Bristol-Myers Squibb Co. v. Superior Court*,
 137 S. Ct. 1773 (2017).................................................................15, 16

*Bryant v. Potbelly Sandwich Works, LLC*,
 2018 U.S. Dist. LEXIS 20726 (S.D.N.Y. Feb. 5, 2018)........................................19

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985).....................................................................15

*Chloe v. Queen Bee of Beverly Hills, LLC*,
 616 F.3d 158 (2d Cir. 2010)............................................................ *passim*

*Confectionary Arts Int'l, LLC v. CK Prods. LLC*,
 2018 U.S. Dist. LEXIS 34735 (D. Conn. Mar. 1, 2018)....................................7, 24

*Cosa Xentaur Corp. v. Bow*,
 2014 U.S. Dist. LEXIS 46307 (E.D.N.Y. Mar. 31, 2014) ....................................19

*CYI, Inc. v. Ja-Ru, Inc.*,
 913 F. Supp. 2d 16 (S.D.N.Y. 2012).......................................................23

*DealTime Ltd. v. McNulty*,
 123 F. Supp. 2d 750 (S.D.N.Y. 2000).....................................................20

*Elliott v. City of Hartford*,
 649 F. App'x 31 (2d Cir. 2016) .........................................................17

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
 844 F.3d 79 (2d Cir. 2016)..............................................................12

*EnviroCare Techs., LLC v. Simanovsky*,
 2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. Jun. 4, 2012) ....................................5, 9

*Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*,
 2009 U.S. Dist. LEXIS 13369 (E.D.N.Y. Feb. 2, 2009)...................................11, 24

*Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*,
 906 F. Supp. 2d 96 (E.D.N.Y. 2012) .....................................................17

*Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*,
    2004 U.S. Dist. LEXIS 16373 (E.D.N.Y. July 22, 2004) .......................................................22

*Hypnotic Hats, Ltd. v. Wintermantel Enters.*,
    LLC, 2016 U.S. Dist. LEXIS 178796 (S.D.N.Y. Dec. 27, 2016) .............................7, 8, 10, 12

*Ingenito v. Riri USA, Inc.*,
    89 F. Supp. 3d 462 (E.D.N.Y. 2015) .............................................................................4, 5, 15

*ISI Brands, Inc. v. KCC Int'l, Inc.*,
    458 F. Supp. 2d 81 (E.D.N.Y. 2006) .......................................................................................9

*Jarrow Formulations, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) .................................................................................................17

*Jaso v. Coca Cola Co.*,
    No. 10-20786, 435 F. App'x 346 (5th Cir. Aug. 1, 2011) ................................................17, 18

*Johnson & Johnson v. Guilin Chung Fai Biotech Co.*,
    2018 U.S. Dist. LEXIS 8399 (E.D.N.Y. Jan 16, 2018) ..........................................................12

*Mattel, Inc. v. Adventure Apparel*,
    2001 U.S. Dist. LEXIS 3179 (S.D.N.Y. Mar. 15, 2001) ...............................................9, 20, 22

*McGraw-Hill v. Mathrani*,
    295 F. Supp. 3d 404 (S.D.N.Y. 2017) ........................................................................13, 14, 22

*Peeq Media, LLC v. Buccheri*,
    2016 U.S. Dist. LEXIS 142240 (S.D.N.Y. Oct. 13, 2016) ...............................................14, 16

*Purcell Graham, Inc. v. National Bank*,
    93 Civ. 8786 (MBM), 1994 U.S. Dist. LEXIS 15196 (S.D.N.Y. Oct. 21, 1994) ...................24

*Putkowski v. Warwick Valley Cent. Sch. Dist.*,
    363 F. Supp. 2d 649 (S.D.N.Y. 2005) ......................................................................................4

*Rovio Entm't, Ltd. v. Allstar Vending, Inc.*,
    97 F. Supp. 3d 536 (S.D.N.Y. 2015) ........................................................................................9

*Starr v. Michael Stars, Inc.*,
    No. 5:12-cv-860, Dkt. No. 19 (N.D.N.Y. Mar. 21, 2013) .....................................................22

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sep. 22, 2015) ...........................................5, 19, 22

*Toy Biz v. Centuri Corp.*,
    990 F. Supp. 328 (S.D.N.Y. 1998) ........................................................................................23

*Unique Indus. v. Sui & Sons Int'l Trading Corp.*,
    2007 U.S. Dist. LEXIS 83725 (S.D.N.Y. Nov. 9, 2007) ..........................................................9

*Verragio, Ltd. v. SK Diamonds*,
    2017 U.S. Dist. LEXIS 68422 (S.D.N.Y. May 4, 2017)....................................................15, 23

*Williams v. Frank Martz Coach Co.*,
    2014 U.S. Dist. LEXIS 66411 (E.D.N.Y. May 14, 2014) ............................................. *passim*

*YLD Ltd. v. Node Firm, LLC*,
    2016 U.S. Dist. LEXIS 4826 (S.D.N.Y. Jan. 14, 2016)........................................................19

**Statutes**

15 U.S.C. § 7603................................................................................................................................13

N.Y. C.P.L.R. § 302 ...........................................................................................................................4

## **PRELIMINARY STATEMENT**

This case is about consumer safety and Alcon's hard-earned reputation for excellence—both of which are at risk due to Lens.com's conduct.  Lens.com is importing and selling Alcon lenses that are *not* intended to be sold in the United States, may not comply with U.S. Food and Drug Administration ("FDA") requirements, and lack Alcon's safety and usage information (including U.S.-specific lot numbers).  Such actions place consumers' health and safety at risk, deceive them into believing that they are buying genuine FDA-compliant Alcon lenses, and jeopardize Alcon's reputation.

Having no response to these serious issues, Lens.com attempts to change the focus from *its* conduct to *Alcon's* conduct by implying that this case is an "effort[] to suppress discounters like Lens.com."  (Defendant Lens.com's Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue, served on June 7, 2018 ("Mot.") at 4.)  Not so.  Alcon welcomes competitive sales of compliant Alcon lenses because they can serve consumers well.  Lens.com is free to purchase authentic, non-infringing Alcon lenses from any source and sell them as it deems appropriate.  What it cannot do is continue to sell non-compliant Alcon lenses that are materially different from authentic Alcon lenses and that are likely to deceive and confuse consumers.

This motion is simply a tactic by Lens.com to divert attention from its infringing and illegal conduct.  But the controlling Second Circuit case, *Chloe v. Queen Bee of Beverly Hills, LLC*—which Lens.com *does not even acknowledge*—makes it clear that Lens.com's connections with the Eastern District of New York are more than sufficient for this Court to exercise jurisdiction over it.  Lens.com is a direct to consumer marketer of contact lenses. Lens.com (i) advertises and sells Alcon and other lenses via multiple highly interactive

-1-

nationwide websites, including www.lens.com, www.justlenses.com, www.contactsamerica.com, and www.eurolens.com; (ii) ships Alcon lenses ordered through its websites to New York consumers; (iii) annually imports hundreds of thousands of dollars' worth of Alcon and other lenses through New York airports; and (iv) contracts with New York-based entities to provide customer support to its customers.  These actions are more than sufficient to establish jurisdiction under the Second Circuit's holding in *Chloe*.  Indeed, New York consumers have a strong interest in the outcome of this litigation, as they are purchasing contact lenses sold and shipped to them by Lens.com that lack important safety and usage information and may not comply with FDA regulations.

Lens.com's allegation that Alcon filed this case in New York solely to take advantage of New York and Second Circuit laches law that Lens.com contends is more favorable to Alcon than the law in other potential forums is a red herring.  (Mot. at 1.)  As set forth below (*see infra* pages 17-18), the outcome on laches is the same for Alcon here as it is in Lens.com's preferred forum.

Lens.com's alternative request to transfer this case to the District of Nevada is equally meritless because this forum *is* convenient for Lens.com, as shown by the fact that Lens.com conducts significant business in New York, as described above.  Alcon also conducts significant business in New York and has numerous employees in New York, including a key witness who will testify about Alcon's policies, practices, and relationships with respect to online contact lens resellers such as Lens.com.

Lens.com's motion should be denied so this Court can reach the merits of this important case.

ny-1332985

## STATEMENT OF FACTS

### Alcon's Business

Alcon is a global company with business partners and customers all around the world. As discussed further below, Alcon conducts significant business throughout the state of New York.  (Declaration of Richard Fabio ("Fabio Decl.") ¶ 7.)  For example, in 2017 alone, Alcon sold nearly $15 million of contact lenses directly to ECPs located in New York.  (Alcon's First Amended Complaint, ECF No. 20 ("Compl.") ¶ 14; Fabio Decl. ¶ 7.)  Three of Alcon's largest online authorized resellers are located in New York.  (Fabio Decl. ¶ 7.)  Further, Alcon has many employees living in New York, including at least one key witness in this case—Richard Fabio— and regularly attends conferences, business meetings, and industry events in New York.  (Compl. ¶¶ 12-17.)

### Lens.com's Business

Lens.com markets and sells contact lenses directly to consumers nationwide through its operation of multiple highly interactive websites including www.lens.com, www.justlenses.com, www.contactsamerica.com, and www.eurolens.com.  When a customer places an order through one of Lens.com's websites, Lens.com ships the ordered lenses directly to the customer, including customers in New York.  Through its websites, Lens.com has sold and shipped multiple orders of infringing Alcon lenses to New York.  (Compl. ¶¶ 73, 84; Declaration of Richard Bergner ("Bergner Decl.") ¶¶ 4-36.)  Further, Lens.com regularly imports goods, including Alcon lenses, into New York.  (Compl. ¶ 79; Declaration of Sarah L. Prutzman ("Prutzman Decl.") ¶¶ 2-9.)  Through these business activities, Lens.com has become one of the largest internet retailers of soft contact lenses in the country, with nearly $115 million in sales between February 2017 and February 2018.  (Compl. ¶ 71.)

Lens.com's significant business in and through New York is sufficient to establish personal jurisdiction here.  And as for convenience, Lens.com's shipments of infringing goods into New York and its highly interactive nationwide website show that it has no problem taking advantage of the lucrative New York market.

## LEGAL STANDARD

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff's factual allegations need only "constitute a *prima facie* showing of jurisdiction."  *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 471-72 (E.D.N.Y. 2015) (internal quotation marks and alterations omitted).  Once the plaintiff has made a *prima facie* showing of jurisdiction, which Alcon has done here, the burden shifts to the defendant to show that personal jurisdiction is otherwise unreasonable in the forum state.  *Putkowski v. Warwick Valley Cent. Sch. Dist.*, 363 F. Supp. 2d 649, 653 (S.D.N.Y. 2005).  Lens.com cannot make that showing.

New York courts perform a two-step inquiry to determine whether personal jurisdiction exists.  First, a court considers whether the exercise of jurisdiction is appropriate pursuant to New York's long-arm statute.  *Ingenito*, 89 F. Supp. 3d at 473.  Section 302(a)(1) of New York's long-arm statute (N.Y. C.P.L.R. § 302) governs in a case such as this where a defendant infringes a plaintiff's trademark in the course of transacting business or contracting to supply goods or services in New York.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010).  Section 302(a)(1) "has two prongs: (1) the defendant must transact business within the state . . . and (2) the cause of action must arise from that business activity."  *Ingenito*, 89 F. Supp. 3d at 476 (internal citations omitted).

Second, the court determines whether the exercise of personal jurisdiction over the defendant is reasonable, in other words, whether it "comport[s] with the Due Process Clause of

the United States Constitution." *Id*. A plaintiff satisfies due process when it shows that "the defendant ha[s] certain minimum contacts [with New York] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. at 478 (internal quotation marks omitted). "When a claim 'arises out of or relates to a defendant's contacts with the forum state,' then the 'minimum contacts' showing is met if the plaintiff can show that the defendant 'purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" *Id*. at 478-79 (citation omitted).

As for the motion to transfer, Lens.com "carries the burden of making out a strong case for transfer, and the plaintiff's choice of forum is always given great weight." *EnviroCare Techs., LLC v. Simanovsky*, 2012 U.S. Dist. LEXIS 78088, at *19-20 (E.D.N.Y. Jun. 4, 2012) (internal citations omitted). In addition to plaintiff's choice of forum, courts consider (i) convenience of witnesses, (ii) location of documents and evidence, (iii) convenience of parties, (iv) locus of operative facts, (v) availability of process to compel attendance of unwilling witnesses, (vi) relative means of the parties, and (vii) the forum court's familiarity with governing law. *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880, at *14 (E.D.N.Y. Sep. 22, 2015). Lens.com has not met its burden of showing that this action should be transferred to Nevada because it cannot show by "clear and convincing evidence" that venue is not proper in plaintiff's preferred forum. *Williams v. Frank Martz Coach Co.*, 2014 U.S. Dist. LEXIS 66411, *6 (E.D.N.Y. May 14, 2014).

## <u>ARGUMENT</u>

### I.   LENS.COM'S CONTACTS WITH NEW YORK SUBJECT IT TO PERSONAL JURISDICTION IN NEW YORK

The Second Circuit's *Chloe* decision is instructive here because the facts are closely analogous. There, a legal assistant at the plaintiff's law firm ordered *one* counterfeit Chloe

handbag on defendants' website.  Defendants, California- and Alabama-based counterfeiters, shipped the faux Chloe handbag to the legal assistant in New York.  Based on this *single* shipment into New York, and the defendants' other business activities targeting New York— primarily selling merchandise not at issue in the case into New York and operating a national website—the Second Circuit held that there was personal jurisdiction in New York, explaining that Section 302(a)(1) of New York's long-arm statute is

> a "single act statute" and proof of one transaction in New York is
> sufficient to invoke jurisdiction, even though defendant never
> enters New York, so long as the defendant's activities . . . were
> purposeful and there is a substantial relationship between the
> transaction and the claim asserted.

*Chloe*, 616 F.3d at 170 (internal quotation marks omitted).  Accordingly, "the 'single act' of selling counterfeit goods into New York satisfies the long-arm statute under section 302(a)(1)." *Id.* (citing cases).

The Second Circuit further held that assertion of personal jurisdiction "comports with due process for the same reasons that it satisfied New York's long-arm statute." *Id.*  The defendants had sufficient minimum contacts because, "[i]n actually sending items to New York, there can be no doubt that [defendants'] conduct was *purposefully directed toward the forum State*.'" *Id.* (emphasis in the original).  The Second Circuit acknowledged that litigation in New York would place "some burden" on the defendants, but held that the defendants' "generalized complaints of inconvenience" did not "add up to a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Id.* at 173 (internal quotation marks omitted).

Lens.com's significant, purposeful, and lucrative contacts with New York satisfy both New York's long-arm statute and due process.  Indeed, Lens.com's contacts with New York are even more extensive than in *Chloe*:

- Lens.com operates *multiple* highly interactive internet sales websites through which it targets consumers across the country, including in New York. (Compl. ¶¶ 2, 5, 71, 74.) Anyone—*including consumers in New York*—can order contact lenses directly through Lens.com's websites to be shipped anywhere in the United States, including to New York. (*Id.*)

- In response to orders placed through any of its websites, Lens.com ships products, including infringing Alcon lenses, to customers in New York. (*Id.* ¶¶ 71, 73, 74, 77, 84.) In response to Alcon's test orders, Lens.com has shipped not one but multiple orders of infringing Alcon products to customers in New York. (*Id.* ¶¶ 73, 81, 84; Bergner Decl. ¶¶ 4-36.)

- Lens.com annually imports hundreds of thousands of dollars' worth of contact lenses into the United States through New York airports. (Compl. ¶ 79; Prutzman Decl. ¶¶ 2-9.)

- Because Lens.com is required to verify prescriptions before it fulfills contact lens orders, Lens.com routinely contacts New York eye care practitioners to verify prescriptions for New York-based customers who do not submit copies of their prescriptions with their orders, or whose prescriptions have expired. (Compl. ¶ 80; Prutzman Decl. ¶ 11.)

- Lens.com features reviews from hundreds of customers in New York on its website and touts the number of orders each such New York customer has placed, with one New York customer having placed as many as 42 orders. (Compl. ¶ 77.)

- Lens.com also promotes its social media presence, including its Facebook and Twitter accounts, which have 15,070 "fans" and 9,797 "followers," respectively. Lens.com regularly engages with these "fans" and "followers, many of whom are New York residents. (*Id.* ¶ 78.)

- Lens.com contracts with New York-based LivePerson, Inc. to provide customer service "live chat" software on Lens.com's websites. (*Id.* ¶ 75; Mot. at 3; Prutzman Decl. ¶ 10.)

Lens.com's conduct is more than sufficient to establish personal jurisdiction. *Chloe*, 616 F.3d at 170-171; *Hypnotic Hats, Ltd. v. Wintermantel Enters.*, LLC, 2016 U.S. Dist. LEXIS 178796 (S.D.N.Y. Dec. 27, 2016) (nationally-targeted interactive website, email solicitations to New York entities, and sales into forum state confer jurisdiction); *Confectionary Arts Int'l, LLC v. CK Prods. LLC*, 2018 U.S. Dist. LEXIS 34735 (D. Conn. Mar. 1, 2018) (interactive, retailer-targeted website plus sales to retailers in forum state confer jurisdiction).

      **A.**    **Lens.com's Transaction of Business in New York Meets the Requirements for New York's Long-Arm Statute, N.Y. C.P.L.R. § 302(a)(1)**

Lens.com's contacts, described below, "viewed in their totality . . . sufficiently demonstrate [Lens.com's] purposeful availment of the benefits of transacting business in New York." *Chloe*, 616 F.3d at 170-171.

      **1.**    **Lens.com's Shipments of Products into New York Strongly Support Personal Jurisdiction**

Lens.com concedes that it sells infringing Alcon lenses in New York but attempts to minimize its actions by arguing that its sales of such products are "limited at best and may involve only a single test buy." (Mot. at 7-10.)  This is simply not true.  Lens.com regularly ships boxes of infringing Alcon products to New York.  For example, on October 23, 2017, November 2, 2017, and December 27, 2017, Richard Bergner ordered DAILIES AQUACOMFORT PLUS® lenses from www.lens.com to be shipped to Flushing, New York. (Bergner Decl. ¶¶ 4-17, 30-36.)  In response to each order, Lens.com shipped at least one infringing box of DAILIES AQUACOMFORT PLUS® lenses to Flushing.  (*Id.*)  On November 7, 2017, Michael DiFilippo ordered DAILIES AQUACOMFORT PLUS® lenses from www.lens.com to be shipped to him in Staten Island, New York.  (*Id.* ¶¶ 18-22.)  Lens.com fulfilled this order by shipping two infringing boxes of DAILIES AQUACOMFORT PLUS® lenses to Staten Island.  (*Id.*)  On November 14, 2017, Mr. Bergner ordered O2 OPTIX® lenses from www.lens.com to be shipped to Flushing.  (*Id.* ¶¶ 23-29.)  In response, Lens.com sent two infringing boxes of O2 OPTIX® lenses to Flushing.  (*Id.*)

      Jurisdiction over Lens.com is proper based on these multiple shipments because New York's long-arm statute is "a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction." *Chloe*, 616 F.3d at 170; *see also Hypnotic Hats*, 2016 U.S. Dist. LEXIS 178796, at *8 ("A single act of shipping a product into the state is sufficient to

support jurisdiction."); *EnviroCare*, 2012 U.S. Dist. LEXIS 78088, at *7 ("[C]ourts in this circuit have concluded that the single act of selling counterfeit goods in New York is sufficient to invoke jurisdiction.").

Lens.com *does not dispute* that it has shipped Alcon contact lenses to New York; instead, it claims that Alcon improperly "manufactur[ed]" jurisdiction in New York by having a private investigator conduct test purchases.  (Mot. at 12.)  This claim is misplaced, because the practice of conducting test purchases in trademark infringement cases is accepted by the Second Circuit, including in *Chloe* where plaintiff's counsel's purchase of a single infringing handbag formed the basis for the court's finding of personal jurisdiction.  *Chloe*, 616 F.3d at 172; *see also Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536 (S.D.N.Y. 2015) (highly interactive website and the shipment of test purchases to New York are sufficient to establish personal jurisdiction); *Mattel, Inc. v. Adventure Apparel*, 2001 U.S. Dist. LEXIS 3179, at *10 (S.D.N.Y. Mar. 15, 2001) ("The fact that the sale was made to an agent of [plaintiff] is irrelevant.").

Significantly, Lens.com does not mention *Chloe*, and instead cites primarily to cases that were superseded by *Chloe* and are readily distinguishable.  *See ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 89 (E.D.N.Y. 2006) (defendant had *no* "direct contact" with the forum state beyond a website and *mid-litigation* test purchases); *Unique Indus. v. Sui & Sons Int'l Trading Corp.*, 2007 U.S. Dist. LEXIS 83725, at *2-3, *23-24 (S.D.N.Y. Nov. 9, 2007) (defendant had a single customer in New York through which plaintiff made a single test purchase and the court *declined to decide* whether that was a sufficient basis for jurisdiction).

## 2. Lens.com's "Larger Business Plan" Strongly Supports Personal Jurisdiction

Lens.com's operation of multiple highly interactive websites offering merchandise for sale to New York consumers also strongly supports a finding that Lens.com transacts business in

-9-

New York, as it indicates that Lens.com's shipments of Alcon products into New York were not "'one-off transaction[s],' but rather a part of a larger business plan purposefully directed at New York consumers." *Chloe* at 170-171 (internal citations omitted).  A "highly interactive website" is a website "that does more than provide information about a product and allows customers to purchase goods online."  *Hypnotic Hats*, 2016 U.S. Dist. LEXIS 178796, at *6.

Lens.com does not dispute that it operates four highly interactive national websites— www.lens.com, www.justlenses.com, www.contactsamerica.com, and www.eurolens.com—that advertise and sell contact lenses directly to consumers, including in New York.  (Mot. at 15; Compl. ¶¶ 5, 74.)  Any consumer can use any one of Lens.com's websites to order contact lenses to be shipped anywhere in the U.S., including to New York.  (Compl. ¶¶ 5, 71, 73, 74, 77.)  Nor does Lens.com dispute that it sells approximately *twenty* Alcon products, including the products at issue in this lawsuit, in New York through its websites.  In fact, it admits it.  (Mot. at 7, 11.)  Then it argues, oddly, that its sales to New York customers of the four products at issue in this case are not sufficient to establish jurisdiction because "*most* of Lens.com sales in New York are not relevant to jurisdiction."  (Mot. at 11 (emphasis added).)  The fact that Lens.com had significant New York sales of at least sixteen additional Alcon products, however, does not weigh *against* a finding of personal jurisdiction.  Rather, it establishes that Lens.com has "a larger business plan purposefully directed at New York consumers," which is part of what led the Second Circuit to hold that there was personal jurisdiction in New York in *Chloe*.  *Chloe*, 616 F.3d at 167.

Further evidence of this larger business plan are the hundreds of reviews from New York customers on www.lens.com, where Lens.com notes the number of orders each New York-based reviewer has placed through www.lens.com—in one case as many as 42.  The www.lens.com

website also operates a blog that features lifestyle, technology, health, and other advice relating

to contact lenses.  (Compl. ¶¶ 78.)  Lens.com promotes its website and its blogs through its

various social media accounts, including its Facebook page, which has 15,070 "fans" and its

Twitter account, which has 9,797 "followers."  (*Id*.)  Many of these fans and followers also

reside in New York.  (*Id*.)

Moreover, in addition to purposefully directing its services *to* New York consumers,

Lens.com permits those same consumers, as well as other consumers throughout the country, to

ask Lens.com questions about products offered on its websites via a "live chat" feature that

Lens.com concedes it contracts with New-York-based LivePerson, Inc. to provide.  (Compl. ¶

75; Mot. at 3.)  Lens.com's claim that its president did not know that LivePerson is

headquartered in New York rings hollow given that, as the purported *only* employee of

Lens.com, he consented to the exclusive jurisdiction of the New York courts when Lens.com

entered into an agreement with LivePerson for those services.  (Prutzman Decl. ¶ 10.)  Further,

potential customers, including consumers in New York, can also contact Lens.com through

nationwide toll-free phone numbers provided on its websites.[1]

Lens.com's argument that its advertising and sales through its national websites cannot

support jurisdiction (Mot. at 12) is baseless.  Lens.com cites to *Fifth Ave. of Long Island Realty*

*Assocs. v. Caruso Mgmt. Co.*, 2009 U.S. Dist. LEXIS 13369 (E.D.N.Y. Feb. 2, 2009), but that

case is inapposite, merely noting that advertisements in national *publications* are *alone* not

sufficient to confer jurisdiction.  *Fifth Ave.* does not address the effect of operating four highly

interactive nationwide websites.  In fact, more recent case law, which Lens.com completely

ignores, holds that the operation of a single highly interactive national website that is available to

---

[1] *See* https://www.lens.com/ ("1-800-LENS.COM"); http://www.justlenses.com/contacts/faq/contactinfo.asp ("1-800-516 LENS"); https://www.contactsamerica.com/ ("1-800-570-LENS").  (Prutzman Decl. ¶¶ 13-15.)

a nationwide audience, such as any one of the four operated by Lens.com, strongly supports a finding of jurisdiction. *See, e.g., Hypnotic Hats*, 2016 U.S. Dist. LEXIS 178796, at *8 (internal quotation marks omitted) (even where a website is "not directed specifically toward New York, [defendants] used [their] websites to expand their market literally to the world and availed themselves of the benefits of this greatly expanded marketplace…[s]ellers like Defendants may not exploit and profit from this expanded market without accepting the concomitant legal responsibilities that such an expanded market may bring with it."); *see also Chloe*, 616 F.3d at 171 (defendants' attempt "to serve a nationwide market does not diminish any purposeful contacts with [defendant's] New York consumers"); *accord EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 98 (2d Cir. 2016) (that defendant's websites "served a national market, as opposed to a New York-specific market, has little bearing on our inquiry, as attempts to serve a nationwide market constitute 'evidence of the defendant's attempt to serve the New York market, albeit indirectly'").

### 3. Lens.com's Additional New York Business Further Supports Personal Jurisdiction

Importation of goods though New York also supports a finding of personal jurisdiction. *See, e.g., Johnson & Johnson v. Guilin Chung Fai Biotech Co.*, 2018 U.S. Dist. LEXIS 8399 at *18 (E.D.N.Y. Jan 16, 2018). Lens.com has imported hundreds of thousands of dollars' worth of contact lenses—including Alcon lenses—into the United States through New York airports each year since at least 2016. (Compl. ¶ 79; Prutzman Decl. ¶¶ 2-9.)

Further, because Lens.com must verify prescriptions before it fulfills contact lens orders, Lens.com routinely contacts eye care practitioners practicing in New York to verify prescriptions for New York-based customers that do not submit copies of their prescriptions with their orders. (Compl. ¶ 80; Prutzman Decl. ¶ 11, Ex. 7 ("[Y]ou can provide us with the name and phone

-12-

number of the issuing authority and allow us to contact them and verify the validity and accuracy

of your prescription information.").)  It is required to do this as part of its larger business plan to

direct its products and services to New York consumers because it cannot legally fulfill contact

lens orders without verifying prescriptions.  *See* 15 U.S.C. § 7603 ("A seller may sell contact

lenses only in accordance with a contact lens prescription for the patient that is (1) presented to

the seller by the patient or prescriber directly or by facsimile; or (2) verified by direct

communication.").

Alcon has established that jurisdiction exists under the first prong of Section 302(a)(1) of

New York's long-arm statute.

### 4.     Alcon's Claims Arise from Lens.com's Business Activity in New York, Satisfying the Second Prong of Section 302(a)(1)

"The 'arising from' element does not require 'a causal link between the defendant's New

York business activity and a plaintiff's injury,' but rather a 'relatedness between the transaction

and the legal claim such that the latter is not completely unmoored from the former.'"  *McGraw-*

*Hill v. Mathrani*, 295 F. Supp. 3d 404, 411 (S.D.N.Y. 2017).  At issue in this lawsuit are

Lens.com's repeated trademark infringement, false designations of origin, deceptive trade

practices, false advertising, and unfair competition practices, arising from Lens.com's (i) direct

sales and shipments of infringing and non-compliant Alcon products (Compl. ¶¶ 81, 84, 85, 90),

(ii) operation of four highly interactive websites that advertise infringing Alcon products (*id.* ¶¶

82, 90, 96), and (iii) importation of infringing and non-complaint Alcon products (*id.* ¶ 79).

Alcon's causes of action clearly "arise from" Lens.com's contacts with New York.  *See*

*McGraw-Hill*, 295 F. Supp. 3d at 411 (test purchases from third-party online resellers fulfilled by

defendant sufficiently established "arising from" connection).

-13-

**B.     Lens.com's Substantial New York Contacts Satisfy Due Process**

It is "rare" to find cases in which personal jurisdiction is permitted under Section

302(a)(1) but prohibited under due process.  *McGraw-Hill*, 295 F. Supp. 3d at 413 (citing *Licci*

*ex rel. Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013)).  This case is no

exception.

### 1.     Lens.com Has More than Minimum Contacts with New York

Lens.com's repeated sales and shipments of infringing Alcon lenses to consumers in New

York, operation of four nationwide highly interactive websites, and imports through New York

airports are more than adequate to meet the minimum contacts requirement.  *Chloe*, 616 F.3d

at 171 (a party that offers merchandise for sale to New York consumers on its website and sells

merchandise, including accused infringing products, to New York consumers has sufficient

contacts with New York to satisfy due process); *McGraw-Hill*, 295 F. Supp. 3d at 411

(defendant's sales of counterfeit textbooks through websites operated by third parties satisfy due

process).

### 2.     Jurisdiction over Lens.com in New York Is Reasonable

"When a plaintiff has made a threshold showing of minimum contacts, the exercise of

jurisdiction is favored" and can only be defeated if a defendant "presents a compelling case that

the presence of some other considerations would render jurisdiction unreasonable." *McGraw-*

*Hill*, 295 F. Supp. 3d, 414 (internal citations omitted).  As a result, "dismissals resulting from the

reasonableness test should be few and far between."  *Peeq Media, LLC v. Buccheri*, 2016 U.S.

Dist. LEXIS 142240, *13-14 (S.D.N.Y. Oct. 13, 2016) (citing *Metro. Life Ins. Co. v. Robertson-*

*Ceco Corp.*, 84 F.3d 560, 575 (2d Cir. 1996)).  In determining whether the exercise of personal

jurisdiction is reasonable, "[a] court must consider (1) the burden on the defendant, (2) the

interests of the forum State, and (3) the plaintiff's interest in obtaining relief.  It must also weigh

-14-

in its determination (4) the interstate judicial system's interest in obtaining the most efficient

resolution of controversies; and (5) the shared interest of the several States in furthering

fundamental substantive social policies."[2]  *Ingenito*, 89 F. Supp. 3d at 479.

Here, Lens.com has not alleged any specific "unreasonableness" beyond "the burden of

traveling across the country to litigate in a faraway court."  (Mot. at 15.)  But Lens.com's

argument that it is not subject to jurisdiction because it "is a Nevada based company with one

employee" and has been sued "in a court thousands of miles from home" (*id.*) means that

Lens.com could *never* be subject to jurisdiction in any state other than Nevada.

> Taking [Lens.com's] argument to its conclusion, [Lens.com] could
> attend trade shows nationwide, marketing its goods and making
> sales to residents of every state, sending invoices to and
> completing sales orders in every state, and shipping its goods to
> every state—yet be subject to personal jurisdiction only in
> [Nevada] . . . .  That is not the law.

*Verragio, Ltd. v. SK Diamonds*, 2017 U.S. Dist. LEXIS 68422, at *15  (S.D.N.Y. May 4, 2017).

Contrary to Lens.com's view, it is *not unreasonable* to exercise personal jurisdiction when

Lens.com takes advantage of the New York market for its business.

Lens.com attempts to rely on the Supreme Court's recent decision in *Bristol-Myers*

*Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), to argue that this Court's exercise of

specific jurisdiction does not comport with due process.  (Mot. at 14-16.)  But *Bristol-Myers*

*Squibb* is inapposite, finding only that jurisdiction is improper where no adequate link exists

between the forum state and claims of *plaintiffs* who "were not injured by [the defendant] in [the

---

[2] Lens.com objects that it did not receive "fair warning" that it would be sued in New York, as if that is a separate
consideration for Due Process.  (Mot. at 17-18.)  It is not.  The *Burger King* case that Lens.com cites to claim that it
was deprived of "fair warning" (*id.*) established the controlling reasonableness test to which both parties cite.  As for
the concept of "fairness," Justice Brennan noted that "where individuals 'purposefully derive benefit' from their
interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences
that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield
to avoid interstate obligations that have been voluntarily assumed."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,
473-74 (1985).  To the extent that Lens.com is relying on Justice Stevens' opinion, as cited in its motion (Mot. at
17), Alcon notes that Justice Stevens dissented from the majority opinion.  He did not concur.

forum state]."  137 S. Ct. at 1781.  This holding has no application here, as Alcon *was* injured by Lens.com in New York.

### a.      Lens.com Has Not Made a Compelling Showing of Unreasonable Burden

The burden on Lens.com to litigate in New York is minor as, absent compelling circumstances, defendant depositions normally take place where the defendant is located, not where the case is pending.  *Bank of New York v. Meridien Biao Bank Tanz.*, 171 F.R.D. 135, 155 (S.D.N.Y. 1997) ("There is a general presumption that a non-resident defendant's deposition will be held where he or she resides or works.")  And, in any event, inconvenience to Lens.com "provide[s] defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago."  *Chloe*, 616 F.3d at 173.  Accordingly, inconvenience to Lens.com is not sufficient to find that the exercise of personal jurisdiction is unreasonable.  *Id.*; *Peeq*, 2016 U.S. Dist. LEXIS 142240, at *13-14 (finding no unreasonableness where defendants presented only "generalized complaint[s] of inconvenience," rather than a "specific and 'compelling'" showing).

### b.      New York's Interests in this Case Are High

New York has an interest in the outcome of a case that affects the safety and consumer rights of its residents and the trademark rights of companies doing business in its markets.  Lens.com purchases contact lenses abroad and imports them into the United States through New York.  These products, which Alcon did not intend for sale in the U.S., may not have been tested for FDA compliance and may not be compliant, do not contain important safety and usage information that Alcon provides to its consumers in the U.S., and infringe Alcon's trademarks.  (Compl. ¶¶ 81-87, 90-93.)  Defendant then sells those lenses and ships them directly to

consumers throughout New York.  New York has a strong interest in adjudicating a case that involves such critical issues affecting commerce and consumer safety in this state.

Lens.com's contention that Alcon filed its complaint in New York to take advantage of New York and Second Circuit laws that Lens.com contends "are more favorable" than the laws of Nevada or Texas for exactly *one* of the products at issue (Mot. at 16) is mistaken because Alcon's infringement allegations regarding that O2 OPTIX® product are no more susceptible to the defenses of laches and acquiescence in Nevada and Texas than in New York.  As Lens.com concedes, the Lanham Act does not contain a statutory time bar for asserting trademark infringement.  (*Id.* at 17.)  Nevertheless, some courts, including the Second Circuit and the Ninth Circuit, have imposed a *rebuttable* presumption that laches applies after the time period identified in the most analogous state statute of limitations has expired (six years in New York, and four years in Nevada).  *See, e.g., Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96, 135 (E.D.N.Y. 2012) (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996)); *Jarrow Formulations, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).  Here, there would be no presumption of laches in either New York or Nevada because Alcon filed this case *within four years*[3] of when it stopped distributing O2 OPTIX® lenses in the U.S.  (Compl. ¶ 34).

As for Texas, although the analogous statute of limitations is four years, as in Nevada, the Fifth Circuit *does not apply* a rebuttable presumption of laches.  In *Jaso v. Coca Cola Co.*, No.

---

[3] As for Lens.com's claim that Alcon engaged in "gamesmanship" by "altering the facts alleged in its Complaint" regarding the discontinuation of the O2 OPTIX® product (Mot. at 17), Lens.com is wrong.  Alcon merely clarified the facts: while Alcon discontinued O2 OPTIX® as a product for the U.S. market in late 2013, it continued to *distribute* the lenses to authorized U.S. distributors and resellers into early 2014.  (Compl. ¶ 34.)  Those authorized distributors and resellers subsequently sold those products to consumers, facts which will be corroborated in discovery.  Regardless, Alcon's First Amended Complaint is controlling.  *Elliott v. City of Hartford*, 649 F. App'x 31, 32 (2d Cir. 2016) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.").

10-20786, 435 F. App'x 346, 356 n.10 (5th Cir. Aug. 1, 2011), the court explained that while "[o]ther circuits that have addressed laches in the context of a Lanham Act claim have determined that a delay beyond the limitations period creates the presumption that laches applies, which the purported owner of the mark must rebut, " the Fifth Circuit does not apply that presumption. (Citations omitted.) Thus, the burden of proving laches always remains on the defendant, which must show (1) plaintiff's delay in asserting trademark rights, (2) the delay was unexcused, *and* (3) undue prejudice to defendant by the delay. *Id.* at 356.

Thus, Lens.com is simply wrong when it claims that "if this case were filed in Nevada or Texas, all of the claims alleged regarding the O2 products would likely not survive a motion for summary judgment." (Mot. at 17.)

### c. Alcon's Interests in Obtaining Relief Are High

Lens.com's sales and shipments of contact lenses that infringe Alcon's trademarks threaten immediate and irreparable harm to Alcon's reputation and goodwill. Alcon thus has a strong interest in fast, convenient, and effective relief. This Court provides Alcon with an opportunity for an efficient resolution of this dispute, as Alcon has witnesses and evidence in New York and Alcon's trial counsel resides here.[4] (Compl. ¶¶ 13, 15.) New York also shares an interest in protecting the trademark rights of businesses that operate in New York, as Alcon does.

Defendants have failed to make a compelling show that litigating in New York would obstruct the interstate judicial system's interest in obtaining the most efficient resolution of the controversy. Indeed, for the reasons set forth above and below, New York *is* a convenient and efficient forum for this case and Lens.com's motion to dismiss should be denied.

---

[4] Lens.com notes that certain of Alcon's counsel of record reside in California (Mot. at 21), but the majority of the work on this case is being performed by counsel in New York. And no Alcon counsel lives or practices in Nevada.

## II.     THIS CASE SHOULD NOT BE TRANSFERRED TO THE DISTRICT OF NEVADA

Lens.com's motion to transfer should fail here upon the Court's consideration of: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Stoltz*, 2015 U.S. Dist. LEXIS 126880, at *14 (internal quotation marks omitted).  Courts also look to the forum court's familiarity with governing law.  *See YLD Ltd. v. Node Firm, LLC*, 2016 U.S. Dist. LEXIS 4826, at *5 (S.D.N.Y. Jan. 14, 2016).  In deciding a motion to transfer, "the issue is not whether the district at issue is the 'best venue.'"  *Cosa Xentaur Corp. v. Bow*, 2014 U.S. Dist. LEXIS 46307, *18-19 (E.D.N.Y. Mar. 31, 2014) (internal citations and quotation marks omitted).  "The Court must determine only whether a 'substantial part of the events . . . giving rise to the claim' occurred in the district at issue."  *Id.*  Thus, "venue may be appropriate even if a greater portion of events occurred elsewhere."  *Id.*  Alcon filed this case here because a significant portion of the events giving rise to Alcon's claims occurred in this District and because New York *is* a convenient forum, as discussed below.  The Court should decline to transfer venue.

### A.     Plaintiff's Choice of Forum Warrants Substantial Deference

First and foremost, Alcon has chosen the Eastern District of New York as the forum for this litigation, and "a plaintiff's choice of forum warrants substantial deference."  *Stoltz*, 2015 U.S. Dist. LEXIS 126880, at *17.[5]  Lens.com attempts to undercut this "substantial deference" by falsely claiming that "significant operative events did not occur" in New York.  (Mot. at 24.)

---

[5] Because "[t]he Court is not tasked with determining the best venue, only a suitable one," a plaintiff's "choice of forum is given great weight in the Court's analysis, and should not be disturbed unless the factors clearly tip in favor of transfer."  *Bryant v. Potbelly Sandwich Works, LLC*, 2018 U.S. Dist. LEXIS 20726, at *8 (S.D.N.Y. Feb. 5, 2018).

ny-1332985

But the operative facts *did* occur in New York—Lens.com imports, advertises, and sells infringing Alcon lenses in New York.  (Compl. ¶¶ 71, 73-79; Bergner Decl. ¶¶ 4-36; Prutzman Decl. ¶¶ 2-9.)

Alcon also contracts with thousands of retailers and ECPs in New York to sell millions of dollars of Alcon contact lenses throughout the state.  In 2017 alone, Alcon sold nearly $15 million of Alcon contact lenses directly to ECPs located in New York.  (Compl. ¶ 14; Fabio Decl. ¶ 7.)  ECPs often prescribe Alcon lenses to their patients because of Alcon's reputation for safety and high quality, which are vitally important to Alcon's New York contact lens consumers.  And, in order to deepen its relationships with New York retailers, ECPs, customers, distributors, and other members of the vision care community, Alcon regularly attends conferences, meetings, and other industry events in New York.  (Compl. ¶¶ 15-17; Fabio Decl. ¶ 9.)  For example, Alcon has attended and had booths at the VisionExpo East conference every year to promote its contact lens products and, until this year, its ophthalmic pharmaceutical products.  (Compl. ¶¶ 16-17.)  During the March 2018 VisionExpo East conference, Alcon participated in nearly 100 meetings and events in New York City.  (Compl. ¶ 17.)

The fact that Alcon does not itself reside in New York does not change the analysis.[6] *Mattel*, 2001 U.S. Dist. LEXIS 3179, at *10 (venue was proper in New York based on defendant's shipments of infringing goods into New York, notwithstanding the fact that neither plaintiff nor defendant were domiciled in New York).  Accordingly, Alcon's choice of the Eastern District of New York weighs heavily against transfer.

---

[6] Lens.com cites to *DealTime Ltd. v. McNulty*, 123 F. Supp. 2d 750 (S.D.N.Y. 2000), to argue that transfer is warranted based on the convenience of the parties when neither party resides in the initially chosen forum.  (Mot. at 20.)  But in *DealTime*, the court *declined to transfer venue*, finding that plaintiff's initially chosen forum is *still entitled to deference*, even when plaintiff does not reside in the initial forum.  *Id.* at 758.

ny-1332985

**B.      Convenience to the Parties and Witnesses Favors Venue in New York**

When a "transfer would simply shift the inconvenience from one party to another, a court should "decline[] to disturb the Plaintiff's forum choice." *Williams*, 2014 U.S. Dist. LEXIS 66411, at *23.  That is the case here.  Alcon has no witnesses, counsel, or relevant connections in Nevada.  Alcon's primary witnesses reside in New York, Texas, and Switzerland, and none are in Nevada.  (Compl. ¶¶ 4, 12, 13, 15, 50, 57, 61; Fabio Decl. ¶ 2, 8.)  Significantly, one of Alcon's key trial witnesses—Richard Fabio, Alcon's National Account Director of e-Commerce, who is responsible for online sales—lives on Long Island.  (Fabio Decl. ¶ 2.)  Mr. Fabio is responsible for developing the Alcon Vision Care Lens and Lens Care businesses and executing sales strategies within assigned internet commerce accounts.  (Compl. ¶ 13; Fabio Decl. ¶ 2.)  He also has knowledge of Alcon's policies and procedures relating to companies that sell Alcon products online, and will testify about the online contact lens marketplace and harm to authorized resellers and Alcon from Lens.com's conduct.  (Fabio Decl. ¶ 4-6.)  This Court is far more convenient than Nevada for Mr. Fabio and other Alcon witnesses in New York.  For witnesses in Texas, New York is as convenient as Nevada, and for witnesses in Switzerland, New York is a more convenient forum than Nevada.

Further, Lens.com has not shown by "clear and convincing evidence" that it will be inconvenienced by traveling to this Court.  *See Williams*, 2014 U.S. Dist. LEXIS 66411, at *23.  Lens.com makes much of the fact that its primary witnesses—Lens.com's alleged only employee and one independent contractor—live and work in Nevada, but fail to show how that will affect the day-to-day litigation of the case—particularly since their counsel is based in New York and Utah—*not* in Nevada.[7]  Moreover, given the "conveniences of modern communication and

---

[7] Lens.com also dismisses the convenience of witnesses located at its warehouse and shipping center in Missouri (Mot. at 20), but these witnesses are likely to be important because, as Lens.com com concedes, they are the people

ny-1332985

transportation," the location of Defendants' witnesses does not justify a transfer of venue, particularly where their depositions presumptively will be taken in Nevada. *McGraw-Hill*, 295 F. Supp. 3d at 414.

Because a transfer would merely shift the inconvenience from Lens.com to Alcon, Alcon's forum choice should not be disturbed. *Williams*, 2014 U.S. Dist. LEXIS 66411, at *23.

### C.    Location of Relevant Documents Is Neutral

As for documents, given that Lens.com imports products from around the world and operates an interactive website through which it sells infringing products, most of its documents are likely already in electronic format, as are Alcon's. The few that are not can be easily converted into an electronic format, and Lens.com has failed to establish that it would be unable to do so. "In an era of electronic documents, easy copying and overnight shipping, the location of relevant documents assumes much less importance than it did formerly." *Stoltz*, 2015 U.S. Dist. LEXIS 126880, at *21. Importantly, "[i]t is not sufficient for [Lens.com] to assert merely that relevant documents are located in the proposed transferee forum, rather [Lens.com] must establish that [it] would be unable to move or copy the documents easily." *Id.* Lens.com has not done so. This factor is neutral.

### D.    The Locus of Operative Facts Is in New York

"The location of the operative events is a 'primary factor' in determining a § 1404(a) motion to transfer." *Stoltz*, 2015 U.S. Dist. LEXIS 126880 at *25. "In trademark infringement claims, courts have held that venue may be proper in each jurisdiction where infringement is properly alleged to have occurred." *Mattel*, 2001 U.S. Dist. LEXIS 3179, at *12-13. A

---

with firsthand knowledge of Lens.com's supplies and shipments of infringing Alcon lenses (*Id.*). New York is likely more convenient for these Missouri witnesses than Nevada because it is closer.

jurisdiction in which a defendant "actually sold its products" is a proper venue in a trademark action. *Verragio*, 2017 U.S. Dist. LEXIS 68422, at *10.[8]

Lens.com is importing and selling infringing Alcon contact lenses in New York. Lens.com attempts to shift the locus of operative facts by providing extensive background information on its prior business negotiations with Alcon and the location of those negotiations. (Mot. at 5.)  But none of those discussions are at issue in this case.  Instead, this case is about Lens.com's continuous and ongoing national sales of infringing Alcon products that are imported, at least in part, through New York.  Such imports and sales have caused and will continue to cause confusion for New York consumers of Alcon lenses—a market that is critical to Alcon's business.  (Fabio Decl. ¶ 7.)

Thus, the location of operative facts is in New York and this factor weighs in favor of denying Lens.com's motion to transfer.  *See Toy Biz v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998) (where infringing products are sold in New York, "New York has a significant connection" with the operative facts in the dispute).

### E.     Relative Means of the Parties Is Neutral

Lens.com has not claimed that it lacks the means to litigate in New York, because it cannot.  Indeed, it has hired sophisticated New York-based counsel and has aggressively litigated

---

[8] Lens.com claims that in cases where the parties engage in nationwide sales, the locus of operative facts is "either where the parties reside or where the defendant designed and sold the infringing product."  (Mot. at 21.)  But this case does not have a potential transferee district where both parties reside, as was the case in the unpublished order in *Starr v. Michael Stars, Inc*., No. 5:12-cv-860, Dkt. No. 19, at *13 (N.D.N.Y. Mar. 21, 2013) ("[D]efendant's business is located in the Central District of California, and plaintiff resides there."), cited by Lens.com.  Here, only Lens.com resides in Nevada.  And, unlike *Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp*., 2004 U.S. Dist. LEXIS 16373 at *18 (E.D.N.Y. July 22, 2004), Lens.com does not design a competing product—it merely sources Alcon products overseas and fulfills online orders with them; accordingly, it makes no "key decisions regarding the design, advertising and marketing of" the Alcon products that it sells.  *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012), the final case cited by Lens.com, is similarly irrelevant because it involved a trade dress claim for a competing product which required consideration of "facts regarding the design and development of the accused products and packaging and the knowledge of the employees involved in that process.  Likewise, the inquiry into functionality may also relate to the design of the accused product and packaging."

this case so far.  Lens.com attempts to portray itself as a "one-employee operation," but conspicuously fails to mention that it is a large-scale, national operation with nearly $115 million in annual national sales.[9]  (Compl. ¶ 71.)  Moreover, even if "the difference in means between the parties is ostensibly substantial," which it is not here, this factor is neutral if "neither party provides any evidence to guide the Court's assessment."  *Williams*, 2014 U.S. Dist. LEXIS 66411, at *23.

F.   **New York Is Most Familiar With the Governing Law for the New York State Law Claims**

New York "has a greater interest than [Lens.com's] proposed venues in applying both [New York's] common law of unfair competition" and its own state trademark and consumer protection claims.  *Confectionary Arts*, 2018 U.S. Dist. LEXIS 34735, *32; *see also Fifth Ave.*, 2009 U.S. Dist. LEXIS 13369 at *45 (New York courts are "undoubtedly more familiar with the law governing" state law claims for deceptive acts and business practices, and false advertising under New York GBL §§ 349-50, common law trademark infringement, and unfair competition.).[10]  Thus, this factor does not weigh in favor of transferring the case to Nevada.

The Court should decline to transfer venue because Lens.com has failed to make a strong showing in favor of transfer to the District of Nevada.

---

[9] It is improbable that Lens.com has only one employee, as it asserts.  For example, while Lens.com claims that it works with an "independent contractor," Ian Morrison, who "helps Lens.com with marketing advertising issues" (Samourkachian Decl. at ¶ 14), Mr. Morrison identifies himself as Lens.com's Chief Marketing Officer and Chief Operating Officer on LinkedIn—not an independent contractor.  (Prutzman Decl. ¶ 16.)  Additionally, the "About Us" page on the www.lens.com website states that Lens.com has a "team" of employees "dedicated to…[customer] satisfaction" and includes a photo of approximately 45 individuals wearing what appear to be Lens.com t-shirts, with a caption that states "[f]rom America's heartland, we're happy to help you save money on contact lenses and provide high quality customer service at the same time."  (*Id.* ¶ 12.)

[10] Lens.com cites *Purcell Graham, Inc. v. National Bank*, 93 Civ. 8786 (MBM), 1994 U.S. Dist. LEXIS 15196, at *20 (S.D.N.Y. Oct. 21, 1994), to argue that this factor is "moot" when federal law is the "gravamen" of plaintiff's case.  (Mot. at 23.)  But *Purcell Graham* is inapposite, as it was brought under federal securities law claims—not the mix of federal and state trademark, unfair competition, unfair business practices, and false advertising claims that Alcon brings here.  The more recent cases cited by Alcon show that the presence of state trademark, unfair competition, unfair business practices, and false advertising claims weighs against transfer.

-24-

ny-1332985

**CONCLUSION**

Lens.com operates multiple highly interactive national websites and sells and ships infringing Alcon contact lenses to New York consumers.  Lens.com also routinely imports large quantities of infringing Alcon lenses into New York.  Both parties have significant relationships with New York, and particularly the Eastern District of New York.  Because this lawsuit arises out of these significant relationships, Alcon respectfully requests that this Court deny Lens.com's motion to dismiss for lack of personal jurisdiction and deny Lens.com's motion to transfer venue.

Dated: New York, New York
   July 5, 2018

      MORRISON & FOERSTER LLP

      By: /s/ *Jamie A. Levitt*

        Jamie A. Levitt
        Sarah L. Prutzman
        250 West 55th Street
        New York, New York  10019
        Telephone: (212) 468-8000
        Facsimile: (212) 468-7900
        Email:  JLevitt@mofo.com
           SPrutzman@mofo.com

        Jennifer Lee Taylor (Admitted *Pro Hac Vice*)
        425 Market Street
        San Francisco, California  94105
        Telephone:  (415) 268-7000
        Facsimile:  (415) 268-7522
        Email:  JTaylor@mofo.com

        Attorneys for Plaintiff
        ALCON LABORATORIES, INC.

ny-1332985