**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**ALCON VISION, LLC,**

<table>
<tr><td style="text-align:center"><b>Plaintiff,</b></td><td style="text-align:right"><b>MEMORANDUM</b><br><b><u>AND ORDER</u></b></td></tr>
<tr><td style="text-align:center"><b>-against-</b></td><td style="text-align:right"><b>18-CV-0407 (NG)</b></td></tr>
</table>

**LENS.COM,**

<b>Defendant.</b>

-------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Since the commencement of this litigation, the parties have been filing under seal (and redacting publicly available copies of) a series of submissions to the Court that contain or reflect discovery materials designated as "confidential" or "highly confidential" by one of the parties, most often by plaintiff Alcon Vision, LLC ("Alcon" or "plaintiff").   Defendant Lens.com ("Lens.com" or "defendant") has now lodged objections to designations, specifically, by moving to unseal its memorandum of law and certain exhibits submitted in opposition to plaintiff's motion for a preliminary injunction, and to unseal this Court's Report and Recommendation addressing that motion.   See Letter Motion to Unseal (Dec. 13, 2019) ("12/13/19 Lens.com Ltr."), Electronic Case Filing ("ECF") Docket Entry ("DE") #158; Motion to Unseal (Mar. 13, 2020) ("3/13/20 Lens.com Ltr."), DE #205.   Lens.com's motions to unseal have prompted this Court to examine the propriety of allowing other submissions to remain redacted or under seal, specifically, Lens.com's most recent amended pleading and counterclaims and its oppositions to motions to dismiss the counterclaims filed by

Alcon, see Electronic Scheduling Order (May 29, 2020) ("5/29/20 Order"), and by counterclaim defendant Novartis AG ("Novartis"), see Motion for Leave to Electronically File Document under Seal (Sept. 6, 2019) ("9/6/19 Motion to Seal"), DE #111; see also Letter Motion for Leave to File Under Seal (Jan. 21, 2020) ("1/21/20 Motion to Seal"), DE #174; Letter Motion for Leave to Electronically File Under Seal (Mar. 17, 2020) ("3/17/20 Motion to Seal"), DE #208.   For the reasons that follow, the Court grants Lens.com's motions to unseal the Report and Recommendation (Feb. 28, 2020), DE #201, and Lens.com's memorandum of law and certain exhibits opposing Alcon's preliminary injunction motion (DE #133), and orders the unsealing of the following additional documents: Lens.com's Second Amended Answer (DE #202); Lens.com's oppositions to Alcon's and Novartis' respective pending motions to dismiss (DE #208-1, DE #111-1); and some, but not all, of the exhibits attached to the opposition to Novartis' motion (DE #111-2).

## BACKGROUND

In February 2018, Alcon brought this trademark infringement action against Lens.com, alleging that defendant sells in the United States unauthorized "grey market" contact lenses manufactured by Alcon that are materially different from those authorized for sale in the United States, and that interfere with Alcon's bona fide quality control measures.   See Complaint (Jan. 19, 2018), DE #1.   In June 2019, Alcon moved for preliminary injunctive relief to stop Lens.com from selling four such products, claiming that Lens.com was creating a risk to public safety and damaging Alcon's reputation.   See Motion for Preliminary Injunction

2

(June 14, 2019), DE #74.[1]  Lens.com has asserted antitrust counterclaims against Alcon, alleging a conspiracy between Alcon, its authorized distributors and certain non-discount retailers, pursuant to which: (1) Alcon imposed a Unilateral Pricing Policy ("UPP"), setting minimum retail prices for contact lenses and then excluded Lens.com from the market after Lens.com refused to sign an agreement to abide by the pricing policies, see Second Amended Answer, Defenses and Counterclaims (Mar. 3, 2020) ("Sec. Am. Ans.") ¶¶ 69-93, 102,[2] DE #202; (2) Alcon and its preferred distributors engaged in a group boycott of Lens.com as to all Alcon products after it continued to sell discounted Alcon lenses, id. ¶¶ 102-22, 158-66, 214-16; (3) Alcon tried to impose on Lens.com exclusive dealing arrangements and to tie the sale of products it exclusively sells in the United States to an agreement that Lens.com purchase all Alcon products at its U.S. prices, id. ¶¶ 94-102, 150, 163-68, 212-13; and (4) Alcon implemented pretextual packaging changes and brought the instant anticompetitive trademark litigation to stop Lens.com from the unauthorized sale and distribution of its contact lenses in the United States at lower prices, id. ¶¶ 132–157, 210-11, 217-19, 231.  Lens.com alleges that this antitrust conspiracy reduces competition and increases prices in the United States market for retail sales of Alcon's lenses.  See id. ¶¶ 53, 64, 66, 75, 93, 122, 202, 221-22, 233-34, 242.

Many of the documents currently at issue were filed under seal because they reference

---

[1] At the Court's direction, the motion for preliminary injunction was refiled in October 2019.  See Amended Motion for Preliminary Injunction (Oct. 3, 2019), DE #117.

[2] All citations to Lens.com's Second Amended Answer refer to the numbered paragraphs of Lens.com's Counterclaims, beginning on page 31 of the pleading.

information that Alcon, as a defendant in a multidistrict litigation pending in the Middle

District of Florida (the "MDL"), produced under a "confidential" or "highly confidential"

(attorneys'-eyes-only) designation in that action.[3]   See, e.g., Motion for Leave to

Electronically File Document under Seal (Sept. 25, 2019), DE #115.   Lens.com now moves to

unseal its opposition papers filed in connection with Alcon's motion for preliminary injunction,

36 of the sealed exhibits thereto, and this Court's resulting Report and Recommendation, on

the ground that the public has a right to access those documents, which bear upon Alcon's

alleged anticompetitive motivations for bringing this action.   See 12/13/19 Lens.com Ltr.;

3/13/20 Lens.com Ltr.   Alcon counters that these documents should not be disclosed to the

public because they contain highly sensitive, confidential trade secret information, the

disclosure of which would cause Alcon competitive harm.   See Response in Opposition (Dec.

16, 2019) ("12/16/19 Alcon Ltr."), DE #166, #167; Letter Regarding Public Availability of

Report and Recommendation (Mar. 13, 2020), DE #204.

     In accordance with the Stipulated Protective Order entered into by the parties, see Joint

Motion for Protective Order (Aug. 29, 2019) ("Stip. Prot. Order") ¶ 11.3, DE #106,

Lens.com requested permission to file under seal its Second Amended Answer, and its

oppositions to Alcon's and Novartis' motions to dismiss, as they reveal information designated

by Alcon as "confidential" or "highly confidential."   See 1/21/20 Motion to Seal; Reply in

---

[3] See In re: Disposable Contact Lens Antitrust Litig., Case No. 3:15-md-2626 (M.D. Fla.).   On June 5, 2019, the United States Judicial Panel on Multidistrict Litigation issued an order transferring to the MDL court only Lens.com's UPP counterclaims, leaving the non-UPP counterclaims pending in this action.   See JPMDL Transfer Order (June 6, 2019), DE #70.   On February 19, 2020, Judge Harvey Schlesinger denied Alcon's motion to dismiss Lens.com's UPP claims in that action.   See Order denying Alcon Motion to Dismiss (Feb. 19, 2020), DE #1151 in the MDL.

Support (June 5, 2020), DE #243; Response to Motion (June 5, 2020) ("6/5/20 Alcon Ltr."),

DE #244; 9/6/19 Motion to Seal.   This opinion also addresses the propriety of sealing those

documents.   <u>See</u> Electronic Sealing Order (May 29, 2020) ("5/29/20 Order").

## DISCUSSION

### I.      The Presumptive Right of Public Access to Judicial Documents

The courts have long recognized "two related but distinct presumptions in favor of

public access to court proceedings and records": one "rooted in the First Amendment" and the

other "based in federal common law."   <u>Newsday LLC v. County of Nassau</u>, 730 F.3d 156,

163 (2d Cir. 2013).   "The common law right of public access to judicial documents is firmly

rooted in our nation's history."   <u>Lugosch v. Pyramid Co.</u>, 435 F.3d 110, 119 (2d Cir. 2006).

The public's "right to inspect and copy . . . judicial records and documents," <u>Nixon v. Warner</u>

<u>Commc'ns, Inc.</u>, 435 U.S. 589, 597 (1978), is "founded upon the public's interest in

monitoring the judiciary's administration of justice," <u>Saint-Jean v. Emigrant Mortgage Co.</u>, 11-

CV-2122 (SJ), 2016 WL 11430775, at *3 (E.D.N.Y. May 24, 2016) (quotations and citations

omitted); <u>see</u> <u>United States v. Amodeo</u>, 71 F.3d 1044, 1048 (2d Cir. 1995) ("<u>Amodeo II</u>")

(right to access is "based on the need for federal courts . . . to have a measure of

accountability and for the public to have confidence in the administration of justice").   As the

Second Circuit explained:

> Transparency is pivotal to public perception of the judiciary's
> legitimacy and independence.   The political branches of government
> claim legitimacy by election, judges by reason.   Any step that
> withdraws an element of the judicial process from public view makes

> the ensuing decision look more like fiat and requires rigorous
> justification.

United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) (quotation and citation omitted).

Indeed, the public's presumptive right of access to court documents is "integral to our system

of government." United States v. Erie County, 763 F.3d 235, 238-39 (2d Cir. 2014).

"Sealing documents filed with a court implicates [the] common law and [] qualified

First Amendment right of access to such documents." Trump v. Deutsche Bank AG, 940

F.3d 146, 150 (2d Cir. 2019). "The Second Circuit has set forth a three-part analysis for

determining whether documents relating to a lawsuit must be made available to the public."

Saint-Jean, 2016 WL 11430775, at *3 (quotations and citations omitted).

> First, the court must determine whether the documents are indeed judicial
> documents, to which the public has a presumptive right of access. Second, if
> the documents are judicial documents, the court must determine the weight of
> the presumption, that is, whether the presumption is an especially strong one
> that can be overcome only by extraordinary circumstances or whether the
> presumption is a low one that amounts to little more than a prediction of public
> access absent a countervailing reason[,] or whether the presumption is
> somewhere in between. Third, once the weight of the presumption is
> determined, a court must balance competing considerations against it.
> Countervailing factors include, among others, the danger of impairing judicial
> efficiency and the privacy interests of those resisting disclosure.

Id. (internal quotations and citations omitted); see Lugosch, 435 F.3d at 119-20.[4]

---

[4] While the discussion in this opinion focuses on the common law right of public access, the Court's
analysis of the First Amendment right of access yields the same conclusions in this case. Under the
First Amendment standard, "[d]ocuments may be sealed if specific, on the record findings are made
demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that
interest." Lugosch, 435 F.3d at 120 (quoting In re N.Y. Times Co., 828 F.2d 110, 116 (2d Cir.
1987)); see Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., 347 F.App'x 615, 616-17
(2d Cir. 2009).

In other words, "[t]he initial issue on a request to unseal a document filed in a court is whether it is a 'judicial document.'"   Trump, 940 F.3d at 150.   The right of public access to a judicial document gives rise to a rebuttable presumption of public availability; the weight of that presumption of access "must be 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'"   Mirlis v. Greer, 952 F.3d 51, 59 (2d Cir. 2020) (quoting Amodeo II, 71 F.3d at 1049).   Thus, "documents used by parties moving for, or opposing," a dispositive motion are subject to the strongest presumption of public access.   Lugosch, 435 F.3d at 123; see Bernstein v. Bernstein Litowitz Berger & Grossman, LLP, 814 F.3d 132, 142 (2d Cir. 2016) (presumption strongest where documents "directly affect an adjudication or are used to determine litigants' substantive legal rights"); Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 (2d Cir. 2004) ("[T]he presumptive right to 'public observation' is at its apogee when asserted with respect to documents relating to 'matters that directly affect an adjudication.'"); Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982) ("[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.").   Because of the value "to those monitoring the federal courts," Amodeo II, 71 F.3d at 1049, even motions concerning evidentiary and discovery matters "are subject to at least some presumption of public access," Brown v. Maxwell, 929 F.3d 41, 50 (2d Cir. 2019).   In contrast, documents that are never filed with the court, but simply "passed between the parties in discovery, lie entirely beyond the presumption's reach."   Amodeo II, 71 F.3d at 1050.

After concluding that a particular record constitutes a judicial document and

determining the weight of the presumption of access, "the court must identify all of the factors that legitimately counsel against disclosure of [that] document, and balance those factors against the weight properly accorded the presumption of access." Mirlis, 952 F.3d at 59. In doing so, the "judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" for sealing. Video Software Dealers Ass'n v. Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994); accord Saint-Jean, 2016 WL 11430775, at *3.

## II.   The Strength of the Presumption of Access to the Judicial Documents at Issue

Alcon does not dispute that the records at issue constitute judicial documents, but instead contends that there is no public interest in the sealed materials filed in this action because this "is a straight-forward trademark dispute" and no "member of the public has expressed an interest in this case or the documents." 12/16/19 Alcon Ltr. at 2. This argument misses the mark. The presumption of public access to judicial records arises from, and the strength of the presumption is determined by, the public's interest in monitoring the judiciary's exercise of its powers under Article III. See Mirlis, 952 F.3d at 59; Amodeo II, 71 F.3d at 1049. Thus, the public has an interest in disclosure of judicial documents even in private business disputes. See Next Caller Inc. v. Martire, 368 F.Supp.3d 663, 667 (S.D.N.Y. 2019) (even though parties had settled the lawsuit and stipulated to seal the case file and docket, court rejects claim that defendant's "concerns about confidentiality and competition" outweighed public's interest in "an internal business dispute between private parties"); see also Bernstein, 814 F.3d at 143 ("value of public disclosure [of complaint] is substantial" in case brought by attorney against former law firm); Lugosch, 435 F.3d at 123

8

(rejecting defendants' argument that the weight of the presumption of public access is weaker "because the Newspapers' true motive is not to monitor the judicial process or promote public confidence in the judicial system but rather to 'dissect[ ] the business practices of one of the defendants in this case'").   In any event, the issues raised in the vast majority of the documents at issue indisputably relate to matters of public concern, including the safety of medical devices and price competition in the contact lens market.   See Bernstein, 814 F.3d at 143 (recognizing that private dispute "would naturally be of legitimate interest to the public" because it related to alleged kickback scheme with public entity).

A.   *Filings in Connection with Alcon's Motion for Preliminary Injunction and this Court's Report & Recommendation*

Alcon argues that because the motion for preliminary injunction is nondispositive, the documents filed in connection with that motion are not subject to "a strong presumption of access."   See 12/16/19 Alcon Ltr. at 2 & n.2.   However, as discussed above, the Second Circuit -- while not yet specifically addressing public access to preliminary injunction filings -- has rejected such a mechanical distinction between public access to dispositive versus nondispositive motions.   Instead, documents submitted to the court exist on a "continuum," where those related to "determining litigants' substantive rights" are afforded "strong weight," even if nondispositive.   Amodeo II, 71 F.3d at 1049–50; see King Pharms., Inc v. Eon Labs, No. 04–CV–5540 (DGT), 2010 WL 3924689, at *5 (E.D.N.Y. Sept. 28, 2010) (holding that documents relevant to party's liability for attorneys' fees "fall on the far end of the continuum, such that they at least are subject to a strong presumption of access"); Nycomed US, Inc. v. Glenmark Generics, Inc., No. 08-CV-5023 (CBA), 2010 WL 889799, at *4 (E.D.N.Y. Mar. 8, 2010) (holding that, at a minimum, motion to amend pleading "fall[s] on the side of the

common law continuum strongly favoring public access").

Although a motion for a preliminary injunction is nondispositive, such motions typically (and in this case) require a court to address the merits of a case.  See N. Am. Soccer League, LLC v. United States Soccer League, 883 F.3d 32, 38-45 (2d Cir. 2018).  Accordingly, the Ninth and Third Circuits have applied a strong presumption of access to documents filed in connection with motions for a preliminary injunction.  See Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1099-1102 (9th Cir. 2016);[5] Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 164 (3d Cir. 1993); accord Under Seal v. Under Seal, 273 F.Supp.3d 460, 469-70 (S.D.N.Y. 2017) (ordering unsealing of preliminary injunction motion papers, pleadings and court decisions); see also United States v. Kravetz, 706 F.3d 47, 56-59 (1st Cir. 2013) (sentencing memoranda and letters are judicial documents subject to a presumption of public access); Romero v. Drummond Co., 480 F.3d 1234, 1245–46 (11th Cir. 2007) (any "substantive pretrial motion, unrelated to discovery, is subject to the common law right of access," "whether or not characterized as dispositive").

Judicial decisions likewise are entitled to a strong presumption of public access.  See, e.g., Under Seal, 273 F.Supp.3d at 470.   "[A] [c]ourt's decisions are adjudications—direct exercises of judicial power the reasoning and substantive effect of which the public has an important interest in scrutinizing."  Id. (quoting Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc., 26 F.Supp.2d 606, 612 (S.D.N.Y. 1998); see Joy, 692 F.2d at 893 (an

---

[5] In reaching its conclusion, the Ninth Circuit quoted the Second Circuit's "continuum" language in Amodeo II, see Ctr. for Auto Safety, 809 F.3d at 1099 (quoting Amodeo II, 71 F.3d at 1049), and observed that "[a] bright line rule that does not afford a presumption of access to a motion for preliminary injunction because it is 'nondispositive' conflicts with the Third and Eleventh Circuits and is, at best, in tension with the First and Second Circuits," id. at 1100.

10

adjudication "should, absent exceptional circumstances, be subject to public scrutiny").

Having reviewed the disputed documents in connection with Alcon's motion for a preliminary injunction, this Court concludes that each is "relevant to the performance of the judicial function and useful in the judicial process" and thus constitutes a judicial document. See Trump, 940 F.3d at 151 (citations and internal quotation marks omitted).   As the judicial function in question is the adjudication of a motion for preliminary injunction, the sealed documents are entitled to a strong presumption of public access.

B. *Lens.com's Second Amended Answer*

Lens.com's Second Amended Answer is unquestionably a judicial document entitled to a strong presumption of public access.   See Bernstein, 814 F.3d at 141-43; Under Seal, 273 F.Supp.3d at 470.   A party's pleading is critical to both the public's understanding of a case and the court's exercise of Article III power.[6]   See Bernstein, 814 F.3d at 140 ("A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision.") (citation and internal quotation marks omitted).   This principle applies with particular force where, as here, the pleading is subject to a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   See Bernstein, 814 F.3d at 140.

---

[6]  Often, the party resisting disclosure argues that unsealing is prejudicial because a complaint contains unproved allegations.   See Bernstein, 814 F.3d at 143 (noting defendants' argument that "the complaint is unreliable and contesting the truth of the allegations in the complaint"); see also Brown, 929 F.3d at 51 (recognizing concern that "court files might be used to 'promote scandal arising out of unproven potentially libelous statements'").   Here, on the other hand, the redacted portions of Lens.com's pleading largely consist of direct quotations from documents produced by Alcon.

### C.  *Lens.com's Opposition to Alcon's and Novartis' Motions to Dismiss (and Exhibits)*

Court filings in connection with a motion to dismiss are likewise judicial documents, see City of Almaty, Kazakhstan v. Ablyazov, No. 15-CV-5345 (AJN), 2019 WL 4747654, at *5 (S.D.N.Y. Sept. 30, 2019), and are generally entitled to a strong presumption of public access, see Bernstein v. O'Reilly, 307 F.Supp.3d 161, 166-69 (S.D.N.Y. 2018); Rafaelle v. City of New York, No. 13–CV–4607 (KAM)(VVP), 2014 WL 2573464, at *1 (E.D.N.Y. June 9, 2014); see also Lugosch, 435 F.3d at 123 (legal briefing "used by parties moving for, or opposing" dispositive motion fall on the far end of the continuum and are subject to the strongest presumption); Joy, 692 F.2d at 893 ("[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny").  Obviously, Lens.com's submissions are central to the District Court's adjudication of those dispositive motions.  Indeed, Alcon acknowledges the strong presumption of access that attaches to documents filed in connection with a dispositive motion.  See 12/16/19 Alcon Ltr. at 2 n.2.

Nevertheless, the documents filed by Lens.com opposing Novartis' motion to dismiss for lack of jurisdiction stand elsewhere on the presumption continuum than those filed in connection with Alcon's motion to dismiss for failure to state a claim.  Although Lens.com's opposition to Novartis' motion, and its exhibits, are important to the Court's exercise of the judicial function, the presumption of access is weak compared to those filed in connection with Alcon's motion.  See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig., MDL No. 1358(SAS), 2013 WL 3531600, at *3-4 (S.D.N.Y. July 12, 2013); accord Nallapati v. Justh Holdings LLC, No. 5:20-CV-47-D, 2020 WL 2616063, at *1 (E.D.N.C. May 22,

2020).   Unlike Alcon's motion to dismiss, which will adjudicate the parties' substantive rights, a motion to dismiss for lack of personal jurisdiction is not an adjudication on the merits, in that even if it were granted, the action could still be brought in a different forum.   See *In re* MTBE Prods. Liability Litig., 2013 WL 3531600, at *4.   Therefore, the public's interest in accessing documents related to Novartis' motion is relatively weak, as such a motion is less integral to the public's interest in monitoring the federal courts.   See Amodeo II, 71 F.3d at 1049 ("strong weight to be accorded the public right of access to judicial documents was largely derived from the role those documents played in determining litigants' substantive rights"); see also Newsday, 730 F.3d at 164 ("Only those documents necessary to understand the merits of a civil contempt proceeding are covered by the First Amendment's presumptive right of access").

## III.   Balancing the Competing Interests

Alcon argues that the documents that it seeks to maintain under seal contain "highly confidential" materials that Alcon regards as "trade secret" information.   12/16/19 Alcon Ltr. at 1, 3.   Specifically, Alcon claims that the documents at issue include "distribution and go-to-market strategies," "internal product development processes," "pricing information" and Alcon's procedures for maintaining the integrity of its supply chain and the quality of Alcon contact lenses.   See id. at 3.   According to Alcon, its interests in confidentiality overcome the presumption of public access.

In initially opposing Lens.com's motions to unseal, Alcon offered only arguments of counsel, unaccompanied by any sworn statements substantiating Alcon's claims of confidentiality and resulting competitive harm.   See 12/16/19 Alcon Ltr.; Response in

Opposition (Mar. 17, 2020), DE #209.   On May 29, 2020, this Court notified the parties that

it was also considering the propriety of maintaining other specified documents under seal

(including Lens.com's Second Amended Answer), and it authorized the parties to "supplement

their letter-briefs . . . with any additional arguments specific to those documents."   5/29/20

Order.   In violation of the limitations referenced in that order, Alcon for the first time

submitted a sworn statement from David Dowd, an Alcon representative, purporting to justify

the sealing of unspecified "documents that have been filed with the Court" and "that reflect

confidential, sensitive business information[.]"   Declaration of David Dowd in Support of

Plaintiff Alcon Vision, LLC's Letter Brief Regarding Sealing (June 5, 2020) ("Dowd Decl.")

¶ 4, DE #244-1.

        Under the circumstances, this Court would be justified in striking Alcon's unauthorized

and belated evidentiary submission.   The Court has opted not to do so.   Suffice it to say, the

Dowd Declaration's vague and conclusory assertions of competitive harm do not even identify

the specific "documents that have been filed with the Court," that purportedly "reflect

confidential, sensitive business information," nor does it proffer any supporting facts, such as

what efforts, if any, Alcon took to maintain the confidentiality of the information at issue.   See

*In re* SunEdison, Inc. Sec. Litig., No. 16-cv-7917, 2019 WL 126069, at *1 (S.D.N.Y. Jan. 7,

2019) (largely rejecting defendants' conclusory argument that the information to be sealed was

"commercially sensitive, non-public information," which failed to explain "why specific

documents or information are sensitive or risk harm to any person or entity"); see also

Bernstein, 814 F.3d at 144–45 ("conclusory" assertions are "insufficient to justify deprivation

14

of public access to the record").[7]

> ### A. Filings in Connection with Alcon's Motion for Preliminary Injunction and this Court's Report & Recommendation

One of Lens.com's applications seeks an order unsealing its opposition to Alcon's motion for a preliminary injunction, 36 exhibits attached to its opposing papers, and this Court's Report and Recommendation.   See 12/13/19 Lens.com Ltr.; 3/13/20 Lens.com Ltr. The exhibits contain internal Alcon emails (Exs. 20, 24, 26, 33, 36, 40, 43, 45, 51-56), emails between Alcon and eye care practicioners (Exs. 22, 23, 32, 35), slide presentations (Exs. 21, 27-29, 37, 39, 41, 42, 44, 46), meeting minutes/notes, marketing plans and reports (Exs. 27, 42, 46, 47, 48), and pricing strategies and product launch plans (Exs. 29, 34, 37, 39, 40, 41, 42, 44, 57); these exhibits discuss competition from the grey market (including from Lens.com) and strategies to combat that competition, such as through the use of unilateral pricing policies and packaging changes.   Lens.com's brief opposing the requested preliminary injunction, and the Report and Recommendation addressing that motion, refer to information contained in those exhibits.

First, Exhibits 24, 32, 35 and 36 to Lens.com's opposition to the motion for a preliminary injunction are already publicly available on the docket of the MDL.   See DE #921-65 (ALCONMDL0150866-68), #920-83 (ABB_00000782-85), #921-88

---

[7] Indeed, some of the documents consist of marketing materials created for distribution to third parties or contain communications between Alcon and third parties that cannot be considered confidential trade secrets.   See Contratto v. Ethicon, Inc., 227 F.R.D. 304, 312 (N.D. Cal. 2005) (denying protection to a letter, the content of which "concerns publicly available information appearing in defendants' promotional materials"), adopted, 2005 U.S. Dist. LEXIS 11443 (N.D. Cal. Mar. 22, 2005).

(ALCONMDL0145003-06), #921-73 (ALCONMDL0542814-18), in the MDL.[8]   Although those Alcon documents were initially docketed under seal in connection with the opposition filed by the plaintiffs in the MDL to the MDL defendants' motion for summary judgment, the documents in question were ordered unsealed after no party, including Alcon, sought to keep those and 100 other Alcon documents under seal.   See 12/13/19 Lens.com Ltr., Ex. F at 2 (DE #158-7) (Alcon's Motion to Maintain Under Seal Exhibits to Plaintiffs' Opposition to Summary Judgment, filed on Nov. 5, 2018) ("Alcon's Motion to Seal in the MDL").   Alcon's position in the MDL (as of November 5, 2018) belies its claim that it "closely guards the information in the sealed documents [and] maintains its confidentiality . . . ."   12/16/19 Alcon Ltr. at 3.   In fact, it is difficult to square Alcon's acquiescence to disclosure in the MDL with its vigorous opposition here as to the same documents.   Alcon cannot defeat the already heavy presumption in favor of public access with respect to materials that are "already in the public domain."   See JetBlue Airways Corp. v. Helferich Patent Licensing, LLC, 960 F.Supp.2d 383, 397 (E.D.N.Y. 2013); see also Gambale, 377 F.3d at 144 ("The genie is out of the bottle . . . .   We have not the means to put the genie back.").

Further, even though Alcon waived confidentiality as to Exhibits 24, 32, 35 and 36 in the MDL, it sought to keep confidential other documents that had been filed under seal by the plaintiffs in opposing the summary judgment motion filed by Alcon and other MDL defendants.   See Alcon's Motion to Seal in the MDL.   Those other documents included "a wide array of confidential commercial information reflecting Alcon's *current* product launch

---

[8]  In addition, Exhibit 18 to Lens.com's opposition is a one-page excerpt from the deposition of Ray Pasko.   See DE #133-19.   Significant portions of the same deposition transcript were unsealed in the MDL.   See DE #922-95 in the MDL.

strategies, competitive research, pricing, and marketing efforts concerning products presently on the market." Id. at 6 (emphasis in original).   In the MDL, Alcon claimed that "disclosure of these documents would cause enduring harm to Alcon by giving its competitors unfair insight into Alcon's confidential current and future strategies, pricing considerations, and competitive positioning." Id.   The MDL court nevertheless rejected Alcon's arguments, concluding that Alcon had not demonstrated sufficient justification to outweigh the public's right of access, and ordering the unsealing of all 28 exhibits over Alcon's objections.   See 12/13/19 Lens.com Ltr., Ex. E (DE #158-6) (Order dated June 10, 2019 denying, *inter alia*, Alcon's Motion to Seal).   Therefore, even to the extent that the identical exhibits filed here have not been disclosed in the MDL, the same categories of documents have been disclosed publicly in that litigation.[9]   See Alcon's Motion to Seal in the MDL at 3-6 (describing 28 exhibits Alcon sought to maintain under seal that the MDL court ordered unsealed, including Alcon Advisory Board minutes, emails with third-party eye care practitioners, marketing plan brochures, sales meeting minutes, business plans, marketing reports).

Notwithstanding the MDL court's rejection of Alcon's arguments regarding the need for sealing, Alcon again argues here that documents of this nature should not be unsealed because they reveal its business strategies and other competitive business information.   But apart from the perfunctory assertions contained in the Dowd Declaration, Alcon has made no

---

[9]  Alcon unpersuasively argues that the circumstances of the MDL litigation are distinguishable because the documents at issue there were submitted with a dispositive motion, and that case involves an "industry-wide pricing conspiracy."  12/16/19 Alcon Ltr. at 2.  First, as discussed above, the nondispositive nature of a motion is not determinative of the presumption of public access.  See supra at pp. 9-10.  Second, in opposing Alcon's motion for a preliminary injunction in the instant case, Lens.com argued that Alcon, in conjunction with its authorized distributors and preferred retailers, was using this litigation to stifle competition, which, if true, would obviously have an effect on consumers.  Finally, as Alcon acknowledges, this Court previously indicated that documents produced in the MDL should "be treated the same here."  See 12/16/19 Alcon Ltr. at 1 n.1.

evidentiary showing that the information that it seeks to maintain under seal is a trade secret. In fact, this purportedly competitive information dates from 2016 or earlier, and concerns unilateral pricing policies that have long since been discontinued, or packaging changes that have already been implemented.  See, e.g., Exs. 19 (2014 slide presentation, "UPP Benefit Update"), 20, 22, 23, 24 (2015 emails), 26 (2012 email), 27, 29 (2013 presentations), 28, 37 (2012 presentations), 32, 35-36 (2014 emails regarding UPP), 33 (2013 email regarding UPP), 34 (2014 sales update, "UPP Talking Points").  Alcon has not explained how the disclosure of information that relates to business strategies that were formulated many years ago would result in any competitive harm.  Alcon's purported concerns over proprietary information are, at this juncture, stale and cannot overcome the public's strong interest in disclosure.  See Saint-Jean, 2016 WL 11430775, at *7 (denying motion to seal, in part, because "supposedly competitive information dates from [years] earlier, and concerns lending practices most of which have long since been discontinued"); In re Parmalat Sec. Litig., 258 F.R.D. 236, 256 (S.D.N.Y. 2009) (party failed to proffer "specific facts showing that disclosure of the specific fees that it charged to Parmalat for this series of transactions would tend to be damaging now, seven to fourteen years after the fact"); Zavala v. Wal-Mart Corp., Civil Action No. 03-5309 (JAG), 2007 WL 2688934, at *9-10 (D.N.J. Sept. 12, 2007) (denying motion to seal where "materials . . . are beyond three years old and relate to . . . a commercial practice which Wal-Mart has since abandoned").  Indeed, even if the "go-to-market and pricing strategies" from past years are still in use by Alcon, its competitors have seen those policies implemented over the ensuing years, rendering the commercial information at issue less than "sensitive."

"[C]ompetitive harm should not be taken to mean simply any injury to competitive

18

position, as might flow . . . from embarrassing publicity attendant upon public revelations."

Nycomed US, 2010 WL 889799, at *6 (internal quotation marks and citation omitted); see

Lugosch, 435 F.3d at 123 n.5 ("[T]he natural desire of parties to shield prejudicial information

contained in judicial records from competitors and the public . . . cannot be accommodated by

the courts without seriously undermining the tradition of an open judicial system.") (citation

and internal quotation marks omitted).   Conclusory assertions like those made by Alcon here

are precisely the kind of "broad allegations of harm unsubstantiated by specific examples or

articulated reasoning [that thus] fail to satisfy the [Rule 26(c)] test" for good cause.   See In re

Parmalat Sec. Litig., 258 F.R.D. at 244, 256 (denying protection of information regarding

marketing strategies where party seeking protection failed to make a "specific showing of the

economic value of [the] information or a specific showing of potential economic harm"); see

also Bernstein, 814 F.3d at 141 (requiring "specific, rigorous findings before sealing [a]

document or otherwise denying public access" to a judicial record); Newsday, 730 F.3d at 165

("[b]road, general, and conclusory [allegations] are insufficient" to justify sealing).   Here,

Alcon is "abusing confidentiality by asserting 'trade secret' status" over virtually every

reference to an Alcon discovery document filed in connection with the motion for preliminary

injunction.   See Saks Inc. v. Attachmate Corp., No. 14 Civ. 4902(CM), 2015 WL 1841136,

at *14 (S.D.N.Y. Apr. 17, 2015).   As was the case in the MDL, Alcon has not made a

particularized showing of a need for secrecy sufficient to overcome the strong presumption of

access that attaches to these documents.

  To the extent that Alcon argues that it relied on this Court's having provisionally

granted sealing of documents filed in this action, the Protective Order expressly provides that

19

materials may be maintained under seal only if the designation of confidentiality comported

with governing legal principles.   See Stip. Prot. Order ¶ 1 ("The parties acknowledge that this

Order does not confer blanket protections on all disclosures or responses to discovery and that

the protection it affords from public disclosure and use extends only to the limited information

or items that are entitled to confidential treatment under the applicable legal principles.").   A

stipulated protective order is a temporary measure that merely postpones the need for the party

resisting disclosure to make a showing of good cause.   See Saks Inc., 2015 WL 1841136, at

*14.   "'Even if material is properly designated as Confidential or Highly Confidential by a

protective order governing discovery, that same material might not overcome the presumption

of public access once it becomes a public document.'"   Brandon v. NPG Records, 1:19-cv-

01923-GHW, 2020 WL 2086008, at *10 (S.D.N.Y. Apr. 30, 2020) (quoting Dodona I, LLC

v. Goldman, Sachs & Co., 119 F.Supp.3d 152, 155 (S.D.N.Y. 2015)).   Moreover, this Court

advised the parties on several occasions that their reflexive sealing of documents may not be

sustained.   See Electronic Order (Mar. 25, 2020) (granting motion to seal discovery motion

"without ruling on the propriety of the parties' confidentiality designations and to facilitate

resolution of the underlying motion"); Electronic Order (Mar. 25, 2020) (warning that "the

sealing process should be used only to protect proprietary information and not as a public

relations tool"); Electronic Order (Mar. 3, 2020) ("provisionally granting" sealing of

Lens.com's Second Amended Answer); Electronic Order (Jan. 31, 2020) (granting the parties'

motions to seal, but "cautioning that, as the litigation progresses, the information being

redacted may ultimately be publicly disclosed").   As a consequence, any reliance on previous

sealing orders is "insufficient to outweigh the strong presumption in favor of public access" to

court records.   King Pharms., 2010 WL 3924689, at *3; see Schiller v. City of New York,

No. 04 Civ. 7922 KMK JCF, 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007); accord

Lugosch, 435 F.3d at 126 (reliance unreasonable where protective order provided that it "shall

not prevent anyone from applying to the Court for relief therefrom"); Gambale, 377 F.3d at

142 n.7 ("[P]rotective orders that are on their face temporary or limited may not justify

reliance by the parties.") (quoting S.E.C. v. TheStreet.com, 273 F.3d 222, 231 (2d Cir.

2001)).   In other words, because the confidentiality designations in this case were made

without a showing of good cause, the Court affords no weight to the previous grant of requests

to seal.

Alcon further argues that it would be inappropriate to unseal documents designated as

confidential by third parties.   Yet, consistent with Alcon's perfunctory approach in seeking to

shield its documents from disclosure, Alcon fails to identify which documents contain

information that was designated confidential by third parties or whether any particular

documents implicate more significant confidentiality concerns than others.   Moreover, Alcon

does not allege that it was contacted by any third party expressing concerns over the disclosure

of the information at issue.   Nor has any third party sought to be heard here.   The interest in

confidentiality by any third party that may have designated unspecified information as

confidential is outweighed by the presumption in favor of public disclosure.

Consequently, with respect to the litigation over Alcon's motion for a preliminary

injunction, the Court orders that the challenged exhibits, and the legal briefs and Report and

Recommendation that reference them, be made publicly available.

B.   *Lens.com's Second Amended Answer and its Opposition to Alcon's Motion to Dismiss Counterclaims*

The Court provisionally granted Lens.com's request to file under seal its Second Amended Answer based on the pleading's references to discovery materials designated by Alcon as "confidential" and "highly confidential."   See Electronic Order (Mar. 3, 2020). That pleading is now subject to Alcon's pending motion to dismiss Lens.com's counterclaims, and, in accordance with the provisions of the Protective Order, Lens.com moves for leave to file under seal its opposition to the motion to dismiss, see 3/17/20 Motion to Seal.

Like the documents filed in connection with the motion for a preliminary injunction,[10] Alcon has not substantiated its assertion that the redacted information in the Second Amended Answer, and in the opposition to Alcon's motion to dismiss, contain "highly sensitive Alcon business information."   In fact, Alcon acknowledges that "much of the sealed, confidential information in the Answer and Opposition [to the Motion to Dismiss] pertains to Lens.com's UPP claims."   6/5/20 Alcon Ltr. at 2.   As discussed above, Alcon has long abandoned those UPP policies and any related information is now stale.

Again, the information Alcon seeks to maintain under seal "comes from documents that were designated confidential under the protective order in the MDL case."   Id.   And, like the sealed portions of the preliminary injunction submissions, virtually the same information has been made publicly available in the MDL action.   For example, Alcon specifically cites paragraph 97 of the Second Amended Answer as containing information that must be kept confidential because it is subject to the protective order governing the MDL.   See id.   In

---

[10]   In fact, much of the information redacted from the Second Amended Answer is also contained in the preliminary injunction filings.

paragraph 97 of its pleading, Lens.com alleges that "[i]n September 2013, Alcon presented Lens.com with a draft agreement" that would have required Lens.com to purchase all of its Alcon lenses directly from Alcon.  See Sec. Am. Ans. ¶ 97.  Redacted from the paragraph is the title of that draft agreement.  Id.  Yet, Lens.com's publicly available opposition to Alcon's motion to dismiss Lens.com's counterclaims in the MDL references the same agreement by name.  See DE #1043 at 3, 4 & n.4 in the MDL.  Similarly, a discussion of emails exchanged between Alcon and Lens.com concerning Alcon's efforts to convince Lens.com to sign such an agreement has been redacted, even though the same emails are discussed in Lens.com's publicly filed opposition in the MDL.  Compare Sec. Am. Ans. ¶ 101 with DE #1043 at 4 n.5 in the MDL.  Also redacted from the Second Amended Answer is a discussion of the implementation of a group boycott following Lens.com's refusal to sign the agreement with Alcon, whereas a similar discussion remains publicly available on the MDL docket.  Compare Sec. Am. Ans. ¶ 113 with DE #1043 at 5 and DE #1151 at 3 (Order Denying Alcon's Motion to Dismiss Lens.com's Counterclaims) in the MDL.

Even more confounding are Alcon's attempts to shield from disclosure information contained in the Second Amended Answer that was disclosed in the publicly filed First Amended Answer.  For example, the discussion of negotiations between Alcon and Lens.com in 2014 is inexplicably redacted from the Second Amended Answer, despite its public disclosure in the First Amended Answer.  Compare Sec. Am. Ans. ¶¶ 99-117 with First Amended Answer (May 17, 2019) ("First Am. Ans.") ¶¶ 190-99, DE #67.  A further review of the documents demonstrates additional examples of information that appears in the publicly filed First Amended Answer but is now redacted from the Second Amended Answer on the

ground that disclosure would damage Alcon competitively.   Compare, e.g., Sec. Am. Ans.

¶ 165 with First Am. Ans. ¶ 244; and Sec. Am. Ans. ¶ 109-117 with First Am. Ans. ¶¶ 191-

99 (regarding group boycott that followed Lens.com's rejection of Alcon's overtures).   This

inconsistency in treatment is repeated in many of the redactions to Lens.com's opposition to

Alcon's motion to dismiss.   Compare, e.g., Lens.com's Memorandum in Opposition (Mar.

17, 2020) at 5-6, DE #208-1 with First Am. Ans. ¶¶ 191-99.

In light of the information that is already publicly available in the MDL and in

Lens.com's First Amended Answer, Alcon cannot be said to be at risk of suffering competitive

harm from disclosure of the same or comparable information here.   See JetBlue Airways, 960

F.Supp.3d at 397 ("Any countervailing privacy interest of [defendant] cannot defeat the strong

presumption of public disclosure where the material it seeks to seal is already in the public

domain."); see also Gambale, 377 F.3d at 144.

Finally, Alcon argues that the most sensitive information designated as confidential is

included in the Second Amended Answer.   Lens.com "expressly references Alcon's specific,

internal dollar valuations of its business arrangements," the disclosure of which "would create

a serious risk of substantial harm to Alcon."   6/5/20 Alcon Ltr. at 2.   The information to

which Alcon refers is contained in paragraph 96 of the Second Amended Answer, which

alleges that "in August 2013, [Alcon] recogniz[ed] that reaching a 'business agreement' with

Lens.com may be worth as much as" a specified monthly amount to Alcon.   Sec. Am. Ans.

¶ 96.   First, the vague statement that the consummation of a deal with Lens.com "may be

worth as much as" a specific dollar amount does not constitute a trade secret.   Alcon does not

explain the origin of the statement, whether that number is grounded in actual data or the

24

specific terms of a "business agreement" that would be worth that amount to Alcon.   Without

any context, it is difficult to discern how disclosure of that statement would help Alcon's

competitors.   Moreover, Alcon fails to explain why a seven-year-old valuation would be

relevant to Alcon's competitors today.   Therefore, Alcon has not sustained its burden of

establishing the need for sealing.

### C. *Lens.com's Opposition to Novartis' Motion to Dismiss and Exhibits*

Lens.com's Opposition to Novartis' Motion to Dismiss for Lack of Jurisdiction, and the

attached exhibits sought to be sealed, also contain information designated as confidential in the

MDL.   See 9/6/19 Motion to Seal.   In contrast to Alcon's motion to dismiss for failure to

state a claim, the documents filed in connection with Novartis' jurisdictional motion are

entitled to a weak presumption of public access.   See *supra* at pp. 12-13.   Alcon has

overcome that presumption as to some, but not all, of the exhibits at issue.

First, Exhibits A, C, E and F consist of documents that are the same as or very similar

to documents contained in certain exhibits filed in connection with Lens.com's opposition to

the preliminary injunction motion that will be unsealed pursuant to this Order.   Compare Ex.

A with Ex. 42; Ex. C with Ex. 50; Exs. E and F with Ex. 28.   Accordingly, those exhibits

should be unsealed.

Exhibit L consists of an email communication from 2016, which does not reveal any

information that could be characterized as a trade secret.   That exhibit should likewise be

unsealed.

In contrast, the public has no overriding interest in disclosure of Exhibits B, G, H, I,

M, N, O and P, which were submitted only for purposes of demonstrating that this Court has

personal jurisdiction over Novartis.[11]   See Brandon, 2020 WL 2086008, at *11 (granting

motion to seal "jurisdictional discovery documents").   These exhibits consist overwhelmingly

of information that has little bearing on Novartis' contacts with this forum.   In its

memorandum of law in opposition to Novartis' motion, Lens.com briefly cites each exhibit

with a short quotation or two from an otherwise lengthy document.   Often, that is the only

portion of the exhibit that pertains to Novartis' motion.   See, e.g., Lens.com's Memorandum

in Opposition (Sept. 6, 2019) ("Opp. to Novartis' Motion") at 3, 7, 8, 9, DE #111-1.   For

example, Exhibit B consists of a 22-page document discussing Alcon's pricing, profit margins,

gross sales, and other proprietary information.   In its opposition to Novartis' motion to

dismiss, Lens.com cites the exhibit for a single, two-word quotation from the document:

attributing to Alcon a statement that Lens.com is a "pricing disrupt[or]."   Opp. to Novartis'

Motion at 3.   Therefore, those exhibits may remain under seal as they are unrelated to

determining the parties' substantive rights.

On the other hand, publicly available passing references to limited information of this

nature, in Lens.com's memorandum of law, cannot be said to cause Alcon to suffer

competitive harm.   Given the limited portions of the exhibits quoted in Lens.com's

memorandum of law, disclosure "could not provide a competitor with meaningful insight into

the organizations' proprietary processes."   Alexander v. Azar, 396 F.Supp.3d 242, 253-54

(D. Conn. 2019) (granting sealing of documents but denying sealing of summary judgment

brief quoting those exhibits).

---

[11]  While some of the information in these exhibits may already have been publicly disclosed in the MDL, Lens.com has not advanced that argument, and the Court declines to further sift through the thousands of exhibits publicly filed in that action.

Accordingly, taking into account the relatively weak presumption in favor of public disclosure, this Court concludes that Lens.com's memorandum of law in opposition to Novartis' motion to dismiss should be unsealed, as well as Exhibits A,C, E, F and L, but that the remaining exhibits may remain under seal.

<u>CONCLUSION</u>

For the foregoing reasons, defendant's motions to unseal (DE #158, #205) are granted, defendant's motion for leave to file under seal submissions in connection with Alcon's motion to dismiss (DE #208) is denied, defendant's motion for leave to file under seal submissions in connection with Novartis' motion to dismiss (DE #111) is granted in part and denied in part, and the Court *sua sponte* orders the unsealing of Lens.com's Second Amended Answer (DE #202).   Any objection to this Memorandum and Order must be filed by July 21, 2020, or will be deemed waived.

**SO ORDERED.**

**Dated:   Brooklyn, New York**
**July 7, 2020**

/s/   *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

## APPENDIX

## <u>Documents Ordered to be Unsealed</u>

| DOCUMENT | SEALED DOCKET ENTRY No. |
|---|---|
| Lens.com's Memorandum of Law in Opposition to Alcon's Motion for a Preliminary Injunction | DE #133 |
| Exhibits Filed in Connection with Lens.com's Opposition to Alcon's Motion for a Preliminary Injunction | DE #133-19 to #133-30 (Exs. 18 to 29), DE #133-32 to #133-45 (Exs. 32 to 44), DE #133-47 (Ex. 48), DE #133-49 to #133-57 (Exs. 50 to 58) |
| Report and Recommendation | DE #201 |
| Second Amended Answer | DE #174-1 |
| Lens.com's Memorandum of Law in Opposition to Alcon's Motion to Dismiss | DE #208-1 |
| Lens.com's Memorandum of Law in Opposition to Novartis' Motion to Dismiss | DE #111-1 |
| Exhibits Filed in Connection with Lens.com's Opposition to Novartis' Motion | DE #111-2 (Exs. A,C, E, F and L) |