UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALCON VISION, LLC,

                                        Plaintiff,

                                                                    MEMORANDUM
                                                                    AND ORDER

                        -against-                                   18-CV-407 (NG)

LENS.COM, INC.,

                                        Defendant.
------------------------------------------------------------x

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

        The wave of discovery disputes flooding the docket in recent months includes, among

other things, an application filed by plaintiff Alcon Vision, LLC ("plaintiff" or "Alcon") why

defendant Lens.com, Inc. ("defendant" or "Lens.com") should not be held in contempt, see

Letter Motion for Order to Show Cause (Aug. 28, 2020) ("8/28/20 Pl. Motion"), Electronic

Case Filing ("ECF") Docket Entry ("DE") #277, a motion that triggered Lens.com's cross-

motion titled "Motion for Clarification," see Letter Motion for Discovery/Motion for

Clarification (Aug. 31, 2020) ("8/31/20 Def. Clarif. Motion"), DE #282.  For the reasons that

follow, each of the two motions is granted in limited part only, to the extent described in this

opinion.

## BACKGROUND

        During a more than five-hour discovery hearing held on July 6, 2020 to address a series

of then-pending motions to compel filed by the parties, this Court resolved various discovery

disputes and directed counsel to confer further on other issues for which the Court had been

provided with insufficient information.  See Minute Entry (July 6, 2020) ("7/6/20 Minute

Entry"), DE #246.  Specifically, regarding Alcon's previously filed motions to compel, the

Court ordered defendant Lens.com to produce all Alcon-related purchase orders, sales records,

and supplier invoices, since 2014, as well as Lens.com's communications with its suppliers of

Alcon lenses since 2012, and certain communications with its customers.  See Transcript of

Hearing held on July 6, 2020 (filed on July 9, 2020) ("Hearing Tr.") at 42-50, 83-85, DE

#248.  Lens.com had argued at the hearing that it should not be required to produce a broad

range of confidential supplier and customer information because it had narrowed the scope of

its antitrust counterclaims.  Compare [First] Amended Answer (May 17, 2019), DE #67, with

[Second] Amended Answer (Mar. 3, 2020), DE #203.[1]  After extensive discussion, this Court

found that notwithstanding the amendments to its counterclaims, Lens.com had not "materially

narrow[ed] the scope of discoverable information[,]" Hearing Tr. at 34; see id. at 35, 36, and

that the spreadsheets that Lens.com had produced contained only limited data and were no

substitute for Lens.com's far more detailed purchase orders and sales records.  See id. at 35-

37.  The Court therefore ordered Lens.com to produce, on a rolling basis, by August 6, 2020,

purchase orders, sales records and supplier invoices starting from January 2014, and a variety

of communications going back to 2012.  See id. at 42-43, 45-46, 83-85, 163-64; 7/6/20

Minute Entry at 2.

On August 5, 2020, the day before the court-ordered deadline for Lens.com to

complete its production, Lens.com filed a notice of voluntary dismissal of its antitrust

counterclaims (DE #258), along with a motion to vacate the Court's discovery rulings.  See

Letter Motion to Vacate Order (Aug. 5, 2020) ("Motion to Vacate"), DE #259.  In its motion

---

[1] An unredacted version of the latter is publicly available at docket entry number 254.

to vacate, Lens.com argued that the withdrawal of its antitrust counterclaims rendered irrelevant the discovery previously ordered to be produced. By Memorandum and Order dated August 18, 2020, this Court denied Lens.com's motion for reconsideration, finding that even after the dismissal of Lens.com's antitrust counterclaims, Lens.com's affirmative defenses alleged anticompetitive conduct by Alcon in attempting to cut off Lens.com's supply of Alcon lenses. See Memorandum and Order (Aug. 18, 2020) ("8/18/20 M&O") at 2, DE #268 (citing affirmative defenses of unclean hands, trademark misuse and bad faith). The Court admonished Lens.com for failing to comply with the August 6, 2020 court-ordered deadline and directed Lens.com to complete its production, on pain of sanctions, by August 21, 2020. See id. at 3. The Court expressly warned Lens.com that it would "countenance no further delays in this case." Id.

It is against this backdrop that Alcon now seeks an order to show cause why Lens.com should not be held in contempt for failing to comply with the Court's July 6th rulings and August 18th Memorandum and Order. Alcon complains that Lens.com failed to produce, *inter alia*, purchase orders, sales records and invoices, see 8/28/20 Pl. Motion, and that Lens.com's production of customer communications is "clearly incomplete," id. at 3.

On August 31, 2020, Lens.com responded to the motion, protesting that, with "diligent efforts," it had "produced the first set of documents on August 21, 2020 and completed this production by August 25, 2020." Response to Motion (Aug. 31, 2020) ("8/31/20 Def. Response") at 1-2, DE #280. And, while claiming that it now "had complied with the Court's July 6 and August 18, 2020 Orders," Lens.com protested that "Alcon has a much broader view of the Court's Order." Id. at 1-2. On the same day, Lens.com filed its own motion, this

time requesting "clarification" of the Court's orders that Alcon was seeking to enforce by way of contempt sanctions.  See 8/31/20 Def. Clarif. Motion.

On September 15, 2020, Lens.com supplemented its motion for clarification, citing its recent production (on September 10, 2020) of "additional financial information," including "two large spreadsheets detailing Lens.com's total sales and quantity sold for each Alcon product from 2014-2019" and sales transaction data.  See Notice by Lens.com (Sept. 15, 2020), DE #295.

## DISCUSSION

I.    Lens.com's Inadequate Production of Sales Records, Purchase Orders, Supplier Invoices, and Related Communications

   *A.    Transactional Records*

This Court's rulings at the July 6th hearing clearly required Lens.com to produce, by August 6, 2020, all purchase orders and customer sales records of Alcon products, as well as supplier invoices relating to Alcon products, from 2014 to the present.  In the August 18th M&O, the Court specifically rejected Lens.com's request for reconsideration of that directive on account of Lens.com's voluntary dismissal of its antitrust counterclaims, and reluctantly extended the deadline to August 21, 2020.  The Court expressly found that the aforesaid records were "relevant to various affirmative defenses that remain in the case."  8/18/20 M&O at 2.

Nevertheless, instead of complying with the Court's directive by producing all purchase orders and customer sales records for any Alcon products from 2014 to present, Lens.com disclosed only a spreadsheet purporting to show orders, costs, and revenue for the four allegedly infringing products, and approximately 64 (purportedly randomly selected)

4

exemplary invoices.  See Declaration of Neal F. Burstyn (Aug. 28, 2020) ("8/28/20 Burstyn

Decl.") ¶¶ 8-9, 16-17, DE #278.  Similarly, although this Court ordered Lens.com to produce

all documents and communications regarding Lens.com's purchase of and offers to purchase

Alcon contact lenses, concerning *all* of its suppliers of Alcon lenses, see Hearing Tr. at 42, 45-

46; see also RFP No. 4, DE #152-2, Lens.com concedes that it unilaterally limited its

production of sales and purchase orders to "gray market" goods at issue in this case, and did

not include "its suppliers in the U.S. who only source goods in the U.S.," see Declaration of

Mark Bettilyon (Aug. 31, 2020) ("Bettilyon Decl.") ¶¶ 6, 7, 10, DE #280-1.

In order to justify its deficient production, Lens.com has now sought to voluntarily

dismiss or modify the affirmative defenses on which this Court relied in its August 18th M&O.

Specifically, Lens.com seeks to withdraw its affirmative defenses pertaining to Alcon's

trademark misuse and recoupment/setoff and to eliminate, from its unclean hands and bad faith

defenses, any reference to its allegations of anticompetitive conduct.  See Stipulation

Dismissing and/or Amending Lens.com's Affirmative Defenses Nos. 4, 13, 20 and 22 (Aug.

31, 2020), DE #282-7.

Notwithstanding its frustration over Lens.com's persistent failure to comply with court-

ordered deadlines, this Court concludes that Lens.com's proposed amendments to its Answer,

disclaiming reliance on "anticompetitive conduct as the basis for any of its affirmative

defenses," see 8/31/20 Def. Clarif. Motion at 2, eliminate the basis for requiring Lens.com to

produce information regarding its purchases and sales of *all* Alcon products, beyond the four

allegedly infringing products.  Prior to Lens.com's most recent concessions, it had claimed

that Alcon's anticompetitive conduct prevented Lens.com from offering for sale a full line of

Alcon products.  The documents sought by Alcon concerning Lens.com's acquisition and sales of non-infringing Alcon products bear no relevance to Alcon's trademark infringement claims, and are no longer relevant to Lens.com's affirmative defenses and counterclaims. Accordingly, while the Court's prior orders were unambiguous and require no "clarification," the Court nevertheless concludes that, given Lens.com's abandonment of its sprawling antitrust counterclaims and affirmative defenses, the prior judicial orders should be modified, consistent with the objective of "secur[ing] the just, speedy, and inexpensive determination" of this proceeding.  Fed. R. Civ. P. 1.  Specifically, the Court now modifies its previous orders and limits the records that Lens.com must produce to those documents concerning the four allegedly infringing products – i.e., Dailies Aquacomfort Plus ("DACP"), Air Optix Colors ("AOC"), Air Optix Hydraglyde ("AOHG") and O2 Optix sphere lenses.

Similarly, the relevant time frame for transactional records must be narrowed to correspond to the period of infringement, rather than the time period relevant to the withdrawn antitrust allegations, which arose out of Alcon's alleged conduct starting in 2014.  The relevant periods regarding Alcon's trademark infringement claims are:  for DACP lenses, from May 2017 (when Alcon released its U.S.-specific packaging); for AOC lenses, from 2016 (when Lens.com first sold that product); for AOHG lenses, from January 2018 (when Alcon released its U.S.-specific packaging for AOHG sphere products); and for O2 Optix lenses, from 2014 (when Alcon stopped selling the product in the U.S.).  See Hearing Tr. at 96, 151, 152; Report and Recommendation (Feb. 28, 2020) at 4-6, DE #201.

That said, Lens.com's production nevertheless remains deficient.  Its production of a "'random' selection of exemplary customer sales records for the four lenses at issue in Alcon's

trademark claims" (see Burstyn Decl. ¶ 19) is patently inconsistent with this Court's prior

rulings and insufficient to meet Lens.com's discovery obligations regarding Alcon's trademark

claims.  Lens.com explains that it has "produced multiple spreadsheets that contain all the

necessary information for damage calculations for Alcon's affirmative claims[,] which are

limited to four products: DACP, AOC, AOHG and O2 Optix."  Bettilyon Decl. ¶ 20.

However, as this Court made clear at the July 6th hearing, see Hearing Tr. at 36-37, Lens.com

does not have the unilateral right to withhold records kept in the ordinary course of business

and instead substitute its own compilation of what it deems to be relevant information.  The

spreadsheets related to costs, if not all the spreadsheets on which Lens.com relies on, were

created for purposes of this litigation.  See Letter Response (Sept. 18, 2020) ("9/18/20 Pl.

Response") at 2 n.2, DE #298.  The last time Lens.com sought to withhold its responsive

business records, the Court expressly rejected Lens.com's production of summary spreadsheets

in lieu of the demanded sales records.  See Hearing Tr. at 36-37.  As the Court observed,

"[t]he information captured in the purchase orders is far more detailed than the spreadsheets

that have been produced by Lens.com."  Id.

Even after multiple bites at the same proverbial apple, Lens.com has not substantiated

its claim that the production of the requisite sales information would impose an "extreme

burden."  8/31/20 Def. Clarif. Motion at 2.  Lens.com has submitted the declaration of Ian

Morrison, its Chief Marketing and Operating Officer, appending, as a sample, seven pages of

sales records relating to a single transaction, and attesting to the fact that he is "unaware of any

way to easily extract" the records encompassed within the Court's ruling.  See Declaration of

Ian Morrison (Aug. 31, 2020) ¶¶ 2-3, DE #282-8; id., Ex. 1 (DE #281-1 at ECF pp. 35-41).

This vague and grossly belated statement does nothing to advance Lens.com's argument that production would constitute an undue burden. More importantly, the Court has now substantially narrowed the scope of the production required from Lens.com, and thus reduced any resulting burden. Lens.com must produce these documents by November 18, 2020.

Lens.com claims that it "understood the Court's order to require the production of [only] information related to overseas vendors." 8/31/20 Def. Response at 1. Although Lens.com acknowledges having produced communications from its suppliers "who are located inside the U.S. but who source their Alcon contact lenses from outside the U.S," Bettilyon Decl. ¶ 9, it has not made the same representation with respect to transactional records. Lens.com points to nothing in the Court's rulings that would justify such a distinction. Lens.com's production of information concerning suppliers cannot be unilaterally limited to accord with its unfounded interpretations of the Court's unambiguous directives. Therefore, Lens.com must produce transactional documents irrespective of whether the supplier is located inside the United States.

>    B.    *Custodians, Search Terms and Chats with Respect to Customer Communications*

Alcon further complains that Lens.com's search for emails with suppliers was artificially limited to communications with Lens.com's president, Cary Samourkachian, "and no one else." Response in Opposition (Sept. 4, 2020) ("9/4/20 Pl. Response") at 3, DE #292. Although Lens.com admits "that there are other communications with these suppliers from other [L]ens.com custodians," it claims that it understood that Alcon only sought communications with Mr. Samourkachian. See Bettilyon Decl. ¶ 9. Clearly, there was no such limitation in this Court's order, nor in Alcon's request for production of documents. See

8

Hearing Tr. at 37; RFP No. 4.  Nor does Lens.com claim that Mr. Samourkachian is its

exclusive contact with these suppliers.  Therefore, Lens.com must produce communications

with its suppliers of the allegedly infringing products from any Lens.com custodian likely to

have communicated with Lens.com's suppliers of the allegedly infringing lenses.  However,

since Alcon's alleged antitrust activity is no longer an issue here, the Court's previous order

that communications must be produced is limited to communications extending back to 2014.

Alcon additionally claims that Lens.com's production of chats and customer

communications is incomplete and that Lens.com failed to meet and confer with Alcon

regarding search terms that Lens.com used for customer communications or to provide a list of

custodians.  See 8/28/20 Pl. Motion at 3.  However, as reflected in Alcon's previously filed

declaration, the parties conferred extensively regarding customer chat logs and exchanged

proposed search terms between July 24, 2020 and August 6, 2020.  See Declaration of Neal F.

Burstyn (Aug. 10, 2020) ¶¶ 7, 9, DE #264; id., Ex. 5 (DE #264-5); see also Bettilyon Decl.

¶¶ 34-39.   Alcon filed the instant motion on August 28, even though Lens.com "promised on

August 27 to provide the terms it used to search customer communications[,]" see 8/28/20 Pl.

Motion at 3, and did so on August 28, along with a list of custodians from whom it collected

customer communication documents, see 8/31/20 Def. Response at 3; Bettilyon Decl. ¶¶ 42-

43; id., Ex. 3 (DE #279-1 at ECF pp. 26-28).  Further, Lens.com confirms that third-party

Speed Commerce produced chat logs to Alcon using search terms similar to those Lens.com

used to search its own documents and communications, without objection from Alcon.  See

Bettilyon Decl. ¶¶ 48-49; Declaration of J. Malcolm DeVoy (Aug. 31, 2020) ¶¶ 3-7, DE

#280-8.  Finally, Lens.com asserts that it had earlier produced additional customer

communications after the July 6th hearing, contrary to Alcon's claim.  See 8/31/20 Def.

Response at 3; Bettilyon Decl. ¶¶ 44-45; 8/28/20 Pl. Motion at 3 (claiming that Lens.com

"confirmed that it had produced *no* customer communications after the July 6 Order"); 8/28/20

Burstyn Decl. ¶ 23 (same).

Lens.com's further production of customer communications, after the July 6th hearing,

as well as the production by Speed Commerce, and Lens.com's disclosure of search terms and

a list of custodians on August 28, 2020, would appear to resolve the dispute between the

parties.  To the extent that Alcon seeks "*all* communications relating to Lens.com's sales,"

9/18/20 Pl. Response at 3, the Court did not order such a wide-ranging production based on

overbroad requests, see Hearing Tr. at 83-84, the purported need for which is even further

undermined by Lens.com's narrowing of its affirmative defenses, see RFP No. 12, DE #152-2

("*All* documents and communications referencing or regarding Lens.com's distribution,

shipment, and/or sale of Alcon contact lenses since January 1, 2013.") (emphasis added); see

also RFP Nos. 9-11, DE #152-2.

C.   *Redactions*

Alcon complains that Lens.com redacted information from certain documents it

produced, including customer names.  See 8/28/20 Pl. Motion at 2-3.  Lens.com has agreed to

produce unredacted versions of the documents.  See 8/31/20 Def. Response at 2-3.

Accordingly, the Court finds this issue moot.  If not yet disclosed, the unredacted documents

must be produced by November 18, 2020.

II.     Remedy

Alcon's request for an order to show cause cites no authority to support its request for a contempt finding against Lens.com.  See 8/28/20 Pl. Motion.  The apparent basis for the relief sought, Rule 37 of the Federal Rules of Civil Procedure, includes civil contempt as one of several sanctions available for failure to obey a court order to provide discovery.  See Fed. R. Civ. P. 37(b)(2)(A); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, 16-CV-1318 (GBD) (BCM), 2018 WL 4760345, at *6–8 (S.D.N.Y. Sept. 28, 2018).   "[A] district court has broad discretion in fashioning an appropriate sanction" for "non-production of evidence[.]"  Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002); see S.E.C. v. Razmilovic, 738 F.3d 14, 25 (2d Cir. 2013) (court has "wide discretion in imposing sanctions under Rule 37").  Rule 37 requires that sanctions be "just" and "the severity of sanction must be commensurate with the non-compliance."  Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007).  The sanction imposed should "restore the prejudiced party, as nearly as possible, to the position it would have occupied had the discovery been produced and the evidence disclosed."  Chevron Corp v. Donziger, 296 F.R.D. 168, 220 (S.D.N.Y. 2013).  In deciding which, if any, sanctions are appropriate, courts should consider several factors, including: "'(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'"  Antonmarchi v. Consol. Edison Co. of N.Y., 514

F.App'x 33, 35 (2d Cir. 2013) (quoting <u>Agiwal v. Mid Island Mortg. Corp.</u>, 555 F.3d 298, 302 (2d Cir. 2009)).[2]

It is undisputed that Lens.com failed to comply with the Court's order that Lens.com complete its production by August 21, 2020, upon pain of sanctions.[3]  Lens.com delayed production of some of its documents until August 25, 2020, and then advised Alcon that it had no additional documents to produce.  In its response to Alcon's motion for an order to show cause, Lens.com claims that it "gathered and processed its purchase orders to, and invoices from, its suppliers from 2014 forward, as well as its communications with these same entities from 2012 forward."  8/31/20 Def. Response at 1.   But without judicial authorization, Lens.com limited the purchase order and invoice documents to certain suppliers and limited its search for communications to one Lens.com custodian.  <u>See</u> Bettilyon Decl. ¶¶ 9, 10.  Similarly, even before withdrawing its wide-ranging affirmative defenses alleging Alcon's anticompetitive conduct, Lens.com unilaterally opted to withhold documents reflecting its sales of Alcon lenses, other than the four allegedly infringing products.  <u>See id.</u> ¶ 15.

Indeed, Lens.com waited until August 31, 2020 to seek "clarification" of this Court's July 6th rulings, which Lens.com had previously urged the Court to reconsider via a (belated)

---

[2] Apart from the contempt remedy authorized by Rule 37, a court has inherent power to hold a party in civil contempt, with such power to be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner.  <u>See</u> <u>King v. Allied Vision, Ltd.</u>, 65 F.3d 1051, 1058 (2d Cir. 1995); <u>Monsanto Co. v. Haskel Trading, Inc.</u>, 13 F.Supp.2d 349, 363 (E.D.N.Y. 1998).  The purpose of a civil contempt sanction is to coerce compliance with a court order.  <u>See</u> <u>N.Y. State Nat'l Org. for Women v. Terry</u>, 886 F.2d 1339, 1351 (2d Cir. 1989).  Any doubts as to whether the requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt.  <u>See</u> 7 James W. Moore, et al., <u>Moore's Federal Practice</u> § 37.51[7][b] (2020).

[3] Lens.com did not even commence its collection of documents until August 18, 2020.  <u>See</u> 9/18/20 Pl. Response at 1 n.1.

motion denied on August 18th.  In response to Lens.com's request for "clarification," Alcon correctly characterizes Lens.com's motion as "a second attempt to vacate the Court's clear July 6 Order."  See 9/4/20 Pl. Response at 1.  Lens.com's August 31st request for "clarification" relies on its withdrawal and narrowing of affirmative defenses on August 27th, a strategic about-face that could not retroactively justify its insufficient production of documents in connection with a judicially imposed (and already extended) deadline that had expired six days earlier.  See 8/31/20 Def. Clarif. Motion at 2.  If, as Lens.com claimed as of August 31st, it "ha[d] only just recently been able to determine [that compliance] would impose an extraordinary and disproportionate discovery burden," see id., then it apparently had been ignoring this Court's orders since July.  Lens.com has been on notice of its obligation to produce purchase orders and invoices since the July 6th hearing but did not begin to produce any documents until August 21st.  See Bettilyon Decl. ¶ 6.

Although Lens.com's long delayed, last-minute decision to narrow the scope of its claims and defenses has rendered irrelevant much of the information it had been directed to produce, Lens.com's failure to comply with this Court's orders cannot be ignored.  "[A]ll orders and judgments of courts must be complied with promptly."  Chevron, 296 F.R.D. at 209.  If a party views an order as incorrectly decided, the remedy is to lodge an appeal (or objection); absent a stay, the objecting party must comply promptly with the order pending decision by a higher court.  See id.; see also GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 386 (1980) ("persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order").

Lens.com moved for reconsideration of this Court's July 6th rulings on August 5, 2020, long after the expiration of its time to file such a motion under Local Civil Rule 6.3. See E.D.N.Y. Local Civil Rule 6.3 (requiring motion for reconsideration to be filed within 14 days of the order). Even then, the Court characterized Lens.com's withdrawal of its antitrust counterclaims as "too little, too late." 8/18/20 M&O at 2. After the denial of its motion for reconsideration, Lens.com continued to flout the Court's rulings, rewriting them to suit its own purposes. In short, Lens.com has unreasonably multiplied the proceedings in this case, wasting not only its own resources, but those of Alcon and this Court.

On the other hand, given Lens.com's eventual narrowing of its affirmative defenses and thus the elimination of the predicate for some of the discovery rulings, this Court hesitates to characterize as contempt of court Lens.com's noncompliance with aspects of an order that have now been withdrawn. That said, Lens.com's conduct was wrongful and will not be countenanced. Under Rule 37(b)(2)(C), in lieu of any of the sanctions authorized in Rule 37(b)(2)(A), a court may require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. See Fed. R. Civ. P. 37(b). While this Court, exercising its discretion, declines to treat Lens.com's discovery failures as contempt of court, Lens.com is directed to reimburse Alcon in the amount of the reasonable fees and costs expended in litigating Lens.com's Motion to Vacate (DE #259), Alcon's Motion for an Order to Show Cause (DE #277), and Lens.com's Cross-motion for Clarification (DE #292) and Supplemental Notice (DE #298). See E.L.A. v. Abbott House, Inc., 16-CV-1688 (RMB) (JLC), 2020 WL 5682019, at *5 (S.D.N.Y. 2020) (awarding

fees and costs as a lesser sanction for failure to produce documents and comply with discovery order); Mugavero v. Arms Acres, Inc., 680 F.Supp.2d 544, 574-75 (S.D.N.Y. 2010) (imposing fees in lieu of more drastic sanctions for failure to produce documents in discovery); see also Chevron, 296 F.R.D. at 220 (sanctions should put party in same position it would have been in if discovery had been produced originally).

### CONCLUSION

For the foregoing reasons, Alcon's August 28th motion (DE #277) and Lens.com's August 31st cross-motion (DE #282) are granted in limited part only.  Lens.com is directed, on pain of further sanctions, to complete its production of documents by November 18, 2020, and to reimburse Alcon for the fees and costs incurred in addressing those and the other motions listed above.

**SO ORDERED.**

Dated:    **Brooklyn, New York**
          **November 10, 2020**


/s/    *Roanne L. Mann*
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**