**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
**ALCON VISION, LLC,**

                     **Plaintiff,**

-against-                                                            **OPINION & ORDER**

**LENS.COM, INC.,**                                          **18-cv-407 (NG) (RLM)**

                    **Defendant.**
-------------------------------------------------------- x
**GERSHON, United States District Judge:**

## I.   Introduction

Presently before me is Alcon's motion for sanctions against Lens.com and its counsel. Alcon seeks sanctions under 28 U.S.C. § 1927, the court's inherent power, and Federal Rule of Civil Procedure 37.  It argues that sanctions are warranted on the ground that Lens.com filed and maintained certain antitrust counterclaims in bad faith, only to then drop them to avoid providing ordered discovery, and that it also violated court orders.

For the reasons, and to the extent, discussed below, Alcon's motion for sanctions is granted.

## II.   Background

### A.  The Antitrust Counterclaims

Alcon, an entity that manufacturers contact lenses, initiated this action against Lens.com, alleging violations of Section 32 of the Lanham Act, § 15 U.S.C. 1114, Section 43(a) of the Lanham Act, § 15 U.S.C. 1125(a), deceptive trade practices under New York General Business Law ("GBL") § 349, false advertising under GBL § 350, and trademark infringement and unfair competition under New York common law.  On May 10, 2018, Alcon filed a First Amended Complaint.  Broadly speaking, Alcon's claims are based on Lens.com's sale, in the United States, at a discount, of Alcon-manufactured lenses, which Len.com purchases from overseas suppliers.

1

On February 14, 2019, Lens.com filed an Answer and Counterclaims (the "AC"), asserting affirmative defenses, and counterclaims, including seven antitrust counterclaims. Lens.com's counterclaims were wide-ranging. They incorporated by reference the factual allegations of other complaints filed in three different lawsuits, comprised more than 300 paragraphs, and involved anticompetitive conduct dating back decades.

In substance, Lens.com alleged that Alcon violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2, by engaging in a group boycott of Lens.com, under which Alcon and certain manufacturers and distributors conspired to refuse to sell Alcon-manufactured lenses to Lens.com. Lens.com also alleged violations of Section 2 of the Sherman Act based on Alcon's use of exclusive-dealing agreements, which required Alcon's buyers to buy Alcon lenses only from Alcon or its authorized distributors, and tying arrangements, which conditioned the purchase of certain Alcon lenses on the purchase of other Alcon-manufactured lenses from Alcon. As a result of Alcon's anticompetitive conduct, Lens.com alleged that it was forced to purchase lenses from alternative suppliers, it could not "maintain a full product line," "channels of distribution" were foreclosed, and it suffered "lost sales." AC ¶¶ 94, 199, 208, 249, 255.

Lens.com also asserted affirmative defenses that incorporated the counterclaims' allegations of anticompetitive conduct. For example, its fourth affirmative defense for Unclean Hands was "based upon, at least, Alcon's anticompetitive and unlawful restraint of trade activities fully set forth in Lens.com's counterclaims," *id.* 24; its thirteenth defense for Trademark Misuse alleged that "Alcon has used its trademarks to violate the antitrust laws of the United States…as fully detailed in Lens.com's counterclaims," *id.* 27; and its twenty-second defense for Bad Faith alleged that "Alcon's claims…are an inexcusable attempt to control competition." *Id.* 30.

Two weeks after filing the AC, Lens.com made an application to transfer this action, including Alcon's claims and its own counterclaims, to a multidistrict litigation pending in the Middle District of Florida.

On April 17, 2019, I held a pre-motion conference in anticipation of Alcon bringing a motion to dismiss the counterclaims. I noted that I had serious questions about whether the counterclaims complied with Rules 8, 10 and 11 of the Federal Rules of Civil Procedure, particularly considering their incorporation of the factual allegations of three other complaints. Lens.com agreed to amend its counterclaims.

On May 17, 2019, Lens.com filed its First Amended Answer and Counterclaims (the "FAAC"). The FAAC was 98 pages long. Though no longer incorporating by reference the complaints in three other actions, Lens.com added more than 100 paragraphs of additional allegations.

It maintained broad allegations of anticompetitive conduct. Lens.com pleaded Sherman Act violations based on Alcon engaging in a group boycott of Lens.com, exclusive-dealing agreements, and tying arrangements. Lens.com alleged that, as a result of Alcon's anticompetitive conduct, it was forced to purchase lenses from alternative suppliers, it could not "maintain a full product line," "channels of distribution" were foreclosed, and it suffered "lost sales." FAAC ¶¶ 187, 318, 327, 369, 375. Lens.com did not amend its Unclean Hands, Trademark Misuse, and Bad Faith affirmative defenses.

On June 6, 2019, the Judicial Panel on Multidistrict Litigation transferred only two of Lens.com's counterclaims to the MDL. Those counterclaims were based on allegations that Alcon required retailers to not sell lenses below minimum Uniform Price Policies ("UPPs") (the "UPP

counterclaims").   Alcon's claims and Lens.com's counterclaims—other than the UPP counterclaims—remained before this court.

On July 25, 2019, Alcon moved to dismiss Lens.com's counterclaims and to strike certain affirmative defenses.  Discovery was not stayed pending this motion.  The parties could not agree on a stipulated protective order, and Lens.com sought, and Judge Mann ordered, that information identifying "the identities of Lens.com's customers and suppliers" would be designated as "Outside-Attorneys'-Eyes-Only."  Order on Parties' Cross-Mots. for a Protective Order, at 6–7, Aug. 22, 2019, ECF No. 105.  On August 30, 2019, Judge Mann so-ordered the parties' stipulated protective order, providing that any "information identifying Defendants' customers or suppliers" would be designated "outside attorneys' eyes only."  Order Granting Joint Mot. for Protective Order, at 3, Aug. 30, 2019.

Alcon issued Requests for Production ("RFPs") to Lens.com.  Alcon sought Lens.com's purchase orders and sales records for Alcon-manufactured lenses, and communications relating to Lens.com's negotiation for the purchase or sale of Alcon lenses.  Alcon also sought the identity of Lens.com's suppliers.  Lens.com did not produce any of these four categories of requested documents, and, in its June 2019 responses to Alcon's RFPs, objected that they were largely irrelevant.  After further efforts to seek production of these documents, Alcon filed a motion to compel.

At a January 3, 2020 hearing on pending discovery issues before Judge Mann, Lens.com reiterated its concern that Alcon could use the identity of its suppliers to shut down the sources of its supply.  Lens.com also argued that its purchase orders, sales records, supplier identities, and related communications were not relevant.  It argued that what was in dispute was "how much money [Lens.com] lost because [it was] unable to acquire products."  Hearing Tr. 61:8–9, Jan. 3,

4

2020. Lens.com stated that it would produce spreadsheets, with certain sales data for each of the four products at issue in Alcon's claims, and a spreadsheet, identifying all sales lost due to Alcon's anticompetitive conduct. It represented that those spreadsheets were "the parameters of what really is going to be relevant for discovery." *Id.* 54:11–12.

While deferring ruling on Alcon's motion to compel, Judge Mann made clear to Lens.com that its counterclaims were inviting broader discovery. Judge Mann explained that "the question [is] whether [the documents sought are] relevant. And you have a very broad pleading." *Id.* 62:23–24. To avoid broader discovery, Judge Mann advised Lens.com that "the claims really need to be narrowed so that the broad language is not part of the counterclaim and is not part of the theory whether pled or not." *Id.* 63:10–12. Lens.com agreed to narrow its counterclaims. Judge Mann also ordered Lens.com to produce purchase orders with certain suppliers that could serve as a "touchstone for determining what information is contained in a purchase order that is not available in the spreadsheet." *Id.* 88:21–23.

On January 3, 2020, Judge Mann issued an order consistent with the hearing. The order largely reserved decision on Alcon's motion to compel, stating that, if "Lens.com narrows its counterclaims, it may be able to avoid the broader discovery sought by Alcon regarding suppliers. Lens.com must identify those entities from which it could not buy Alcon contact lenses and must produce documents concerning those lost opportunities." Order, at 2, Jan. 3, 2020, ECF No. 173 ("Jan. 3, 2020 Order"). The order also directed Lens.com to produce purchase orders from certain suppliers that could serve as a touchstone for relevance. On January 13, 2020, Judge Mann entered an order, noting that I approved of the suggestion that Lens.com "narrow its counterclaims" if it wanted to narrow its discovery obligations. Electronic Order, Jan. 13, 2020. The order also stated

that, after Lens.com filed its amended pleading, Alcon's motion to dismiss the FAAC would be terminated as moot. *Id.*

On January 21, 2020, Lens.com filed a Second Amended Answer and Counterclaims (the "SAAC"). The SAAC now named ten specific U.S. distributors that participated with Alcon in the group boycott of Lens.com, and it continued to make other broad allegations of Alcon's anticompetitive conduct, including Alcon's use of exclusive-dealing agreements and tying arrangements. Lens.com alleged that, as a result, it "lost sales," including from an "inability to maintain a full product line" and from an "unreliable and unpredictable supply of lenses;" it also alleged that "entire distribution channels" were foreclosed. SAAC ¶¶ 122, 222, 243. Lens.com did not amend its Unclean Hands, Trademark Misuse, and Bad Faith affirmative defenses.

After Lens.com filed the SAAC, Alcon's motion to dismiss with respect to the FAAC was terminated as moot. Electronic Order, Jan. 24, 2020. Alcon then filed a second motion to dismiss the counterclaims and to strike certain affirmative defenses in the SAAC.

On January 30, 2020, the parties filed a joint status report on pending discovery issues. The parties agreed that Lens.com had produced the four spreadsheets, which contained sales data for four Alcon products. The sales data included the product name, customer order date, quantity, and the price paid. The parties also agreed that Lens.com had produced a fifth spreadsheet that contained information on orders that Lens.com customers had cancelled since 2004.

Lens.com represented that the five spreadsheets identified every transaction "which Lens.com believes will be the subject of this dispute," but stated that it would need expert assistance to fully understand the scope of financial data that would be necessary to produce. Joint Status Report, at 12, Jan. 30, 2020, ECF No. 178 ("Jan. 30, 2020 Joint Status Report"). It also argued that it had sufficiently narrowed its pleading to avoid broader discovery into its purchase

orders, supplier identities, and related communications.  Lens.com claimed that, because it had

now alleged that Alcon engaged in a group boycott with ten specific U.S. distributors, the identities

of Lens.com's suppliers or communications with those suppliers were not relevant.  Lens.com also

continued to argue that Alcon only sought the identities of its suppliers to "misuse" discovery to

shut down the sources of its supply.  *Id.* at 15.

On February 20, 2020, Alcon filed a supplemental submission in further support of its

motion to compel.  Alcon explained that Lens.com had now produced, in accordance with the

court's Jan. 3, 2020 Order, 11 purchase orders from one supplier, which confirmed the relevance

of Lens.com's purchase orders.  The purchase orders displayed information such as the product

name, the quantity of lenses that Lens.com received, the price Lens.com paid per unit, and shipping

and insurance costs.

Lens.com filed a response on February 27, 2020.  Lens.com argued that its purchase orders,

supplier identities, and communications with suppliers, other than U.S. distributors that

participated in the group boycott with Alcon, were not relevant.  It maintained that it had alleged

that it was unable to purchase lenses from Alcon and ten specific U.S. distributors, and, because

of its inability to purchase lenses from Alcon and these distributors, it has "not been able to keep

enough stock, at all times, of each of Alcon's products and has been forced to cancel orders when

it has been unable to fulfill a customer request."  Lens.com's Supplemental Response, at 3, Feb.

27, 2020, ECF No. 200.  What was relevant to the SAAC, according to Lens.com, was its

communications with Alcon and Alcon's U.S. distributors, not its own sources.

On July 6, 2020, Judge Mann held another hearing on pending discovery issues, including

Alcon's motion to compel.  Judge Mann found that Lens.com had not narrowed its counterclaims.

Judge Mann explained, "I encouraged Lens.com to go back and narrow its counterclaims, so that

the discovery production could correspondingly be narrower." Hearing Tr. 34:20–22, July 6, 2020.

Lens.com had not done so.  Judge Mann further stated:

> The amendments in this Court's view do not materially narrow the scope of discoverable information.  Lens.com continues to charge Alcon with antitrust and related violations in connection with all of Alcon's products.  Lens.com alleges that Alcon's anticompetitive activities prevented defendants from being able to access and market a full line of Alcon's products.  So these counterclaims continue to be very, very broad, and for that reason, Lens.com will not be heard to complain that Alcon's demands for information relating to all Alcon products are overbroad.

*Id*. 34:23–35:8.  Judge Mann ordered Lens.com to produce its purchase orders, sales records, and related communications responsive to Alcon's document demands.  On the same date, Judge Mann issued an order consistent with the hearing, granting Alcon's motion to compel, and ordering Lens.com to complete its supplemental production, on a rolling basis, by August 6, 2020.

Lens.com did not comply with Judge Mann's order.  Instead, on August 5, 2020, the eve of the court-ordered production deadline, Lens.com filed a notice of voluntary dismissal with the court, dropping its remaining antitrust counterclaims that had not been transferred to the MDL (the "non-UPP antitrust counterclaims").

Later that night, Lens.com filed a motion to vacate the portion of Judge Mann's order granting Alcon's motion to compel production of the purchase orders, sales records, and related communications.  Lens.com called Judge Mann's order "unanticipated."  Lens.com's Letter Mot. to Vacate, at 1, Aug. 5, 2020, ECF No. 259 ("Lens.com's Mot. to Vacate").  It reiterated its "significant concern over the production of this information to Alcon in any form because it would disclose the identity of Lens.com's suppliers of product," which Alcon could use "to shut down every source of supply of every Alcon product to Lens.com."  *Id*.  Lens.com explained that, "faced with the decision of maintaining its antitrust counterclaims, requiring unanticipated disclosure of highly sensitive information that could severely undermine its competitive position, Lens.com has

now withdrawn those counterclaims that made such documents relevant." *Id*. Alcon opposed Lens.com's motion.

On August 18, 2020, Judge Mann denied Lens.com's motion to vacate and ordered Lens.com to complete its production by August 21, 2020. Order Denying Mot. to Vacate, Aug. 18, 2020, ECF No. 268 ("Aug. 18, 2020 Order"). Judge Mann found that the documents remained relevant to Lens.com's affirmative defenses, which incorporated the antitrust counterclaims' allegations, even though the non-UPP antitrust counterclaims had been dropped.[1] Judge Mann further stated:

> Lens.com opted to wait until August 5 to drop some of its counterclaims…more than seven months after the Court urged it to do so or risk correspondingly broad discovery obligations…Lens.com's delay in announcing its decision to drop those claims is particularly galling, in that its announcement came on the night before the one-month deadline for completing the document production that the Court had ordered on July 6…without seeking a stay of the Court's directive and deadline, on the literal eve of that deadline, Lens.com delivered only its surprise announcement and none of the outstanding purchase orders, invoices and communications with suppliers.

Aug. 18, 2020 Order, at 1–3.[2]

---

[1] Lens.com eventually also dropped the antitrust basis for its affirmative defenses on August 31, 2020, so that they no longer incorporated by reference its antitrust allegations. It did so only after failing to comply with Judge Mann's Aug. 18, 2020 Order to complete its production by August 21, 2020, as discussed in more detail in later footnotes, and in a further effort to avoid producing the ordered discovery.

[2] Alcon, in this motion, does not seek sanctions for Lens.com's discovery misconduct occurring after Judge Mann's Aug. 18, 2020 Order. I note, however, that Judge Mann found, in a separate order, that Lens.com failed to comply with her Aug. 18, 2020 Order—Lens.com did not produce the ordered documents by August 21, 2020 and when it did finally make a production, it was significantly deficient—and sanctioned Lens.com for certain costs and fees under Rule 37. Order Granting in Limited Part Mot. for Order to Show Cause and Mot. for Disc., at 15, Nov. 10, 2020, ECF No. 311 ("Nov. 10, 2020 Sanctions Order"). Because, in this motion, Alcon does not seek sanctions for Lens.com's discovery misconduct occurring after the Aug. 18, 2020 Order, which Judge Mann considered separately, I consider sanctions only for Lens.com's conduct from the filing of its counterclaims until the Aug. 18, 2020 Order.

### B. Third Party Subpoenas

Lens.com served third-party subpoenas on Dr. S. Barry Eiden and Dr. Alan Glazier for documents relevant to Lens.com's UPP counterclaims that had been transferred to the MDL.  For example, Request No. 1(a) sought "[a]ll documents concerning communications with one or more Defendants regarding UPPs or the consideration thereof," and Request No. 1(b) sought "[a]ll documents concerning communications with one or more Defendants regarding retail pricing of or on margins on contact lenses."  Alcon's Mot. to Quash Eiden Subpoena, Ex. 1, at 9, Nov. 27, 2019, ECF Nos. 142–43; Alcon's Mot. to Quash Glazier Subpoena, Ex. 1, at 11, Dec. 10, 2019, ECF Nos. 154–55.  Alcon moved for protective orders on the ground that Lens.com was improperly attempting to obtain discovery relevant only to Lens.com's UPP counterclaims in the MDL.

Judge Mann granted Alcon's motions for protective orders.  Judge Mann explained, "The subpoenas are grossly overbroad as written and seek MDL-related documents that Lens.com is going to pursue before the MDL court, where those issues should be litigated.  Lens.com may narrow the scope of its requests and seek the doctors' communications with Alcon, from Alcon in this action."  Jan. 3, 2020 Order, at 1.

Lens.com did not comply with Judge Mann's order.  Lens.com re-issued the subpoenas to Dr. Glazier and Dr. Eiden, seeking discovery relevant to its UPP-claims that, at its own request, had been transferred to the MDL.  The requests sought, for example, all documents regarding "retail pricing" of contact lenses, excluding direct communications with Alcon.  Alcon moved for a protective order and to enforce the Jan. 3, 2020 Order.

At the July 6 hearing before Judge Mann, Judge Mann granted Alcon's motion for a protective order regarding the re-issued subpoenas to Dr. Glazier and Dr. Eiden.  Judge Mann

found that "the Court had previously ruled on an almost identical issue…and these latest subpoenas run afoul of the Court's January 3rd, 2020 ruling."  Hearing Tr. 8:15–18, July 6, 2020.  Judge Mann further stated that "this is the kind of motion where if Alcon had sought sanctions against Lens.com, I would've been very tempted to grant that application." *Id*. 9:12–15.

## III.   Discussion

### A.  Inherent Power Sanctions and 28 U.S.C. § 1927

Federal courts have the inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021).  Under its inherent power, a court may assess attorney's fees as a sanction for the "willful disobedience of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). It also may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *id*. at 45–46, including for "misconduct in discovery." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

"Because of the potency of the court's inherent power, courts must take pains to exercise restraint and discretion when wielding it." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998).  A court generally must find that: "the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *see Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).  "Conduct is entirely without color when it lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue." *Wolters Kluwer*, 564 F.3d at 114; *see Enmon*, 675 F.3d at 143.  Both "findings must be supported by a high degree of specificity in the factual findings," but the latter may be inferred when actions are "so completely without merit as to require the

11

conclusion that they must have been undertaken for some improper purpose." *Enmon*, 675 F.3d at 143.

28 U.S.C. § 1927 provides that "[a]ny attorney…in any court of the United States…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "This statute 'imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics,' and provides courts with a cudgel to use, in their discretion, 'to deter unnecessary delays in litigation.'" *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991)). "Bad faith is the touchstone of an award," *Int'l Bhd. of Teamsters*, 948 F.2d at 1345, and the "showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is similar to that necessary to invoke the court's inherent power." *Enmon*, 675 F.3d at 143 (internal quotation marks omitted). Accordingly, courts have assessed whether to impose 28 U.S.C. § 1927 sanctions under the same standard as inherent power sanctions, and they may be considered together. *See Huebner*, 897 F.3d at 55; *Enmon*, 675 F.3d at 144.

On February 14, 2019, Lens.com filed wide-ranging antitrust counterclaims against Alcon, alleging, as its principal injuries, that it was unable to maintain a full product line of Alcon-manufactured contact lenses, and its distribution channels were foreclosed; as a result, it lost sales. Given these claims, it is obvious—and Lens.com offers not a single colorable argument, much less authority, to suggest otherwise—that discovery into its purchase orders, sales records, supplier identities and related communications was relevant to Alcon's liability for the alleged anticompetitive conduct. As Alcon appropriately frames the issue: "Any litigant—and any

12

lawyer—would know that if Lens.com claimed not to have access to Alcon lenses as a result of a years-long conspiracy, it would need to produce documents that might show the opposite: that it *can* and *does* obtain them with ease."  Alcon's Reply 5.

But, instead of participating in good faith in the discovery process, Lens.com spent nearly a year and a half attempting to evade it.  In doing so, it disregarded the Federal Rules of Civil Procedure, violated court orders, and required Alcon and this court to give attention to claims that it abruptly dropped, without warning to the court or Alcon, eighteen months later, on the eve of a court-ordered discovery deadline.  Considering Lens.com's conduct as a whole—from the time of its filing of its counterclaims to the time it dropped them and moved to vacate Judge Mann's discovery order—and the lack of colorable basis for Lens.com's arguments to not produce essential, relevant discovery, I can reach no conclusion other than that Lens.com acted in bad faith in filing and pursuing its counterclaims, and they served no legitimate purpose.  They were, instead, filed and maintained with intent to harass, and cause delay, expense, and vexation to Alcon.

Lens.com's counterclaims were problematic from the start.  The counterclaims incorporated by reference the factual allegations of other complaints filed in three different lawsuits and comprised more than 300 paragraphs.  At a pre-motion conference, I took the unusual step of advising Lens.com that I had serious questions about whether its counterclaims complied with Rules 8, 10 and 11 of the Federal Rules of Civil Procedure.

After filing its FAAC, which now contained more than 400 paragraphs of counterclaim allegations, Lens.com refused to produce obviously relevant discovery into its purchase orders, sales records, supplier identities, and related communications.  It made two arguments to avoid the

contested discovery: that Alcon was attempting to misuse discovery to shut down its sources of supply and that such discovery was not relevant.

The distinguished and highly experienced Judge Mann gave each of Lens.com's arguments close attention. She entered an "outside attorneys' eyes only" protective order for any "information identifying Defendants' customers or suppliers" to address Lens.com's concern that Alcon might use information obtained during discovery to shut down its supply. At the January 3, 2020 conference, while deferring ruling on Alcon's motion to compel, Judge Mann counseled Lens.com that the discovery that Alcon sought was likely relevant because it had filed a broad pleading. Judge Mann advised Lens.com that, to avoid broader discovery, its claims needed to be narrowed "so that the broad language is not part of the counterclaim and is not part of the theory whether pled or not." Hearing Tr. 63:10–12, Jan. 3, 2020. Subsequent orders entered on January 3, 2020 and January 13, 2020 directed Lens.com to "narrow its counterclaims" if it wanted to avoid broad discovery. *E.g.*, Electronic Order, Jan. 13, 2020. Lens.com agreed to do so.

But, following the January 3, 2020 conference, Lens.com acted with astonishing disregard of Judge Mann's directions and made disingenuous repetitions of the same arguments she had already rejected. In subsequent filings, such as in the Jan. 30, 2020 Joint Status Report and response to Alcon's supplemental submission, Lens.com made the baseless argument that, by amending its counterclaims to now name ten specific U.S. distributors that had participated in the group boycott of Lens.com, it had sufficiently narrowed the SAAC to avoid the contested discovery. Lens.com sought, instead, to engage in discovery on its own terms, producing four spreadsheets with certain sales data and a fifth spreadsheet with information about cancelled orders, and representing that those spreadsheets were "the parameters of what really is going to be relevant for discovery." Hearing Tr. 54:11–12, Jan. 3, 2020. It maintained the same broad

14

allegations of injury to its business, including an inability to "maintain a full product line" and foreclosure of "channels of distribution," which made discovery into its purchase orders, sales records, supplier identities, and related communications relevant.

After Alcon's motion to compel was granted at the July 6, 2020 hearing, Lens.com refused to produce the ordered discovery, violating Judge Mann's production order. Instead, on the eve of the court-ordered production deadline, Lens.com dropped its counterclaims, without warning, after eighteen months. Remarkably, Lens.com claimed, in a motion to vacate Judge Mann's order filed that same evening, that the compelled production was "unanticipated." Lens.com's Mot. to Vacate, at 1. The justification that it gave for dropping its counterclaims was the identical concern that it had raised before, namely, that Alcon would misuse the identities of its suppliers to shut down the sources of its supply.

Of course, the order granting the motion to compel was not "unanticipated." *Id*. It was obvious that the discovery was relevant given the nature of its claims. And, if Lens.com still had any doubt, that doubt should have been eliminated at the January 3, 2020 conference, and in subsequent orders, when Lens.com was advised that its counterclaims needed to be narrowed to avoid broader discovery. Lens.com, instead, made a pretense of compliance with Judge Mann's guidance that kept the litigation over its counterclaims alive for nearly another seven months, and caused further delay and expense to Alcon. As to Lens.com's argument that the discovery into its suppliers could be misused, there was a highly protective "outside attorneys' eyes only" order, which was entered to address Lens.com's concern. If Lens.com had thought that such a restrictive protective order would not be sufficient, it should have considered that *before* it filed and twice amended its counterclaims.

Lens.com never appealed the July 6, 2020 production order to me, despite its insistence for more than a year that such discovery was not relevant.  It also engaged in a pattern of neglect of court orders.  In addition to failing to comply with the July 6, 2020 production order and disregarding guidance and court orders to narrow its counterclaims to avoid broader discovery, it re-issued broad subpoenas to Dr. Glazier and Dr. Eiden, violating Judge Mann's Jan. 3, 2020 Order to not seek such discovery from those doctors.

In sum, I find that Lens.com engaged in a course of bad faith and vexatious conduct.  It filed sprawling counterclaims and refused to produce plainly relevant discovery.  It did not heed Judge Mann's direction at the January 3, 2020 conference, and two subsequent orders, providing that it must narrow its counterclaims to avoid broader discovery.  It violated the Jan. 3, 2020 Order when it re-issued broad subpoenas to Dr. Glazier and Dr. Eiden.  It failed to comply with Judge Mann's July 6, 2020 production order; instead, it dropped its counterclaims, without warning, at the last possible moment, in an effort to avoid producing discovery that obviously was relevant from the moment it first filed its counterclaims.

As for the appropriate sanction, I find that Lens.com and its counsel, other than Cadwalader, Wickersham & Taft LLP ("Cadwalader"), are jointly and severally liable to pay Alcon's costs and attorneys' fees caused by its bad faith and vexatious filing and maintaining of its non-UPP antitrust counterclaims, and its failure to comply with the court order not to re-issue subpoenas to Dr. Glazier and Dr. Eiden.[3]  These costs and attorneys' fees comprise: (1) Alcon's

---

[3] I accept the representation of Lens.com's principal counsel that Cadwalader, as Lens.com's local counsel, was not involved "in discussions with Lens.com regarding discovery," "the ultimate decision to voluntarily dismiss Lens.com's antitrust counterclaims," or "substantive review of the antitrust counterclaims." Bettilyon Dec. ¶¶ 92, 94–95.  Because Cadwalader was not involved in the conduct that I have found sanctionable, I decline to impose sanctions on Cadwalader.  *See Gallop v. Cheney*, 667 F.3d 226, 230–31 (2d Cir. 2012).  No similar argument has been made that any other counsel, apart from Cadwalader, did not participate in the sanctionable conduct.

briefing and arguing the motions to dismiss Lens.com's antitrust counterclaims, including the pre-motion letters and hearings, to the extent related to the non-UPP antitrust counterclaims; (2) Alcon's briefing and arguing its motion to compel, Alcon's portion of the Jan. 30, 2020 Joint Status Report, Alcon's February 20, 2020 supplemental filing, and Alcon's meet and confer efforts up until July 6, 2020, to the extent related to Lens.com's failure to narrow its non-UPP antitrust counterclaims and produce its purchase orders, sales records, supplier identities and related communications; and (3) Alcon's briefing and arguing its motion for a protective order regarding the subpoenas that Lens.com re-issued to Dr. Glazier and Dr. Eiden.

Such a sanction is necessary to make Alcon whole for "costs it should not have had to bear," resulting from its efforts to secure Lens.com's compliance with its discovery obligations. *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 631, 634 (2d Cir. 2018). Alcon should also be made whole for costs it expended defending—including by filing motions to dismiss—

---

As for Lens.com, it is clear from the record that it was closely involved in the discovery process. Lens.com conducted its own searches for responsive documents and represented that its counsel "has previously and continues to hold ongoing communications, including in-person, with Lens.com regarding searching for and producing documents responsive to Alcon's discovery requests." Jan. 30, 2020 Joint Status Report, at 10. Considering Lens.com's close involvement in the discovery process, and its refusal to produce the contested discovery out of a business concern, I can readily conclude that Lens.com participated in the sanctionable conduct.

As, however, it is not possible to determine the respective culpabilities of Lens.com and its counsel, other than Cadwalader, on the present record, I hold them jointly and severally liable, declining to apportion liability between them and allowing them to settle the issue among themselves without further motion practice. *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537, at *30 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 2020 WL 1479018 (S.D.N.Y. Mar. 26, 2020); *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 574–75 (S.D.N.Y. 2010). Should Lens.com or any counsel be unable to agree on an apportionment of the sanction, "they may ask the Court to intercede." *Joint Stock Co.*, 2019 WL 4727537, at *30 n.37.

Lens.com's bad faith and vexatious counterclaims.  *See, e.g.*, *Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 362–67 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007).[4]

### B.  Rule 37 Sanctions

Federal Rule of Civil Procedure 37(b)(2)(A) permits a court to issue "just orders" if a party "fails to obey an order to provide or permit discovery."[5]   Courts possess "wide discretion in imposing sanctions, including severe sanctions," for such a violation.  *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).  The Rule contains a non-exclusive list of seven sanctions that may be imposed on a disobedient party.  *See Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986); Fed. R. Civ. P. 37(b)(2)(A).  In addition to or in lieu of these listed sanctions, Rule 37(b)(2)(C) provides that "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).  With respect to an award of costs, then, Rule 37(b)(2)(C) places "the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of

---

[4] To be clear, such sanctions are warranted against Lens.com, under the court's inherent power, and against its counsel, under the court's inherent power and 28 U.S.C. § 1927.  An "award made under the court's inherent power may be made against an attorney, a party, or both," while awards made under 28 U.S.C. § 1927 "are made only against attorneys or other persons authorized to practice before the courts."  *Enmon*, 675 F.3d at 144.  It is permissible to sanction Lens.com's counsel under both the court's inherent power and 28 U.S.C. § 1927.  *Id*. at 143, 149; *see also Chambers*, 501 U.S. at 50 ("[N]either is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.")

[5] "Rules 26(g) and 37 represent the principal enforcement power to punish discovery abuse" and should generally be relied upon as authority for sanctions for discovery misconduct that clearly violates those Rules.  *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) (internal quotation marks omitted).

expenses unjust." *See Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (quoting Fed. R. Civ. P. 37(b) advisory committee's note to 1970 amendment).

Lens.com failed to obey an order to provide discovery when it failed to comply with Judge Mann's July 6, 2020 production order. This failure to comply with Judge Mann's order was not justified, but was part of a bad faith and vexatious course of conduct, as discussed above. Accordingly, I find that Lens.com and its counsel, other than Cadwalader, are jointly and severally liable to pay Alcon's costs and attorneys' fees caused by its failure to comply with the July 6, 2020 production order.[6] These costs and attorneys' fees comprise: (1) Alcon's briefing its response to Lens.com's Mot. to Vacate; and (2) Alcon's meet and confer efforts following the July 6, 2020 order and until Lens.com dropped its non-UPP antitrust counterclaims, to the extent those efforts were related to Lens.com's failure to produce its purchase orders, sales records, supplier identities and related communications.

I now turn to whether a sanction of dismissal with prejudice of Lens.com's non-UPP antitrust counterclaims, which Alcon also urges, is justified. Such a sanction is a "harsh remedy" that should be ordered only after a finding of "willfulness, bad faith, or any fault," but it is among the sanctions that may be imposed for a Rule 37(b)(2)(A) violation. *Bhagwanani v. Brown*, 665 F. App'x 41, 42–43 (2d Cir. 2016). Four factors must be considered in determining whether the sanction of dismissal with prejudice is warranted: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Id.* (alteration in original). "[T]hese factors are not exclusive,

---

[6] As above, I decline to impose Rule 37 sanctions on Cadwalader, but otherwise hold Lens.com and its counsel, other than Cadwalader, jointly and severally liable. *See Joint Stock Co.*, 2019 WL 4727537, at *30; *Mugavero*, 680 F. Supp. 2d at 574–75.

and they need not each be resolved against the [disobedient] party." *Shcherbakovskiy v. Seitz*, 450 F. App'x 87, 88 (2d Cir. 2011) (first alteration in original).

Considering the four factors, the first factor favors dismissal with prejudice.  As discussed above, Lens.com failed to comply with Judge Mann's production order willfully and in bad faith.

The second factor also favors dismissal with prejudice.  In assessing the efficacy of lesser sanctions, courts consider the extent to which a lesser sanction would serve the purposes behind Rule 37 sanctions.  *E.g.*, *Lewis v. Marlow*, 2021 WL 2269553, at *6 (S.D.N.Y. June 3, 2021). Among other purposes, Rule 37 sanctions serve a "general deterrent effect…on the instant case and on other litigation."  *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979); *see Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

Dismissal under Rule 37 can be warranted, and advances the deterrent function of Rule 37 sanctions, "where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault."  *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988); *see Nat'l Hockey League*, 427 U.S. at 643; *Cine*, 602 F.2d at 1068.  Even failure to comply with a single discovery order may warrant the sanction of dismissal with prejudice where it is a part of a bad faith "continuing saga of dilatory conduct."  *U.S. Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954, 955 (2d Cir. 1983); *see Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852–54 (2d Cir. 1995), *abrogated on other grounds by 4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202 (2d Cir. 2019).  Indeed, such a sanction may even be appropriate where a party eventually (but belatedly) complies with the discovery order.  *Cine*, 602 F.2d at 1068 (explaining that "[a]ny other conclusion would encourage dilatory tactics, and compliance with

discovery orders would come only when the backs of counsel and the litigants were against the wall").

Here, considering the totality of Lens.com's conduct relating to its non-UPP antitrust counterclaims, no lesser sanction would serve Rule 37's purposes and deter other parties from engaging in such bad faith and vexatious conduct. Moreover, Lens.com should not be allowed to retain the ability to bring such counterclaims in another jurisdiction and cause further expense and vexation to Alcon.[7]

The third factor also favors dismissal with prejudice. Periods of noncompliance as brief as three months may merit dispositive sanctions, while periods that are "greater than five months favor such sanctions even more heavily." *Ramgoolie v. Ramgoolie*, 333 F.R.D. 30, 37 (S.D.N.Y. 2019). Courts have considered the date to begin to run from the time that parties were not in compliance with their discovery obligations, rather than the first date that they violated a court order. *See, e.g.*, *Pelgrift v. 355 W. 51st Tavern Inc.*, 2016 WL 817470, at *3 (S.D.N.Y. Feb. 23, 2016). When Lens.com dropped its non-UPP antitrust counterclaims, it had been noncompliant with its discovery obligations for nearly a year after the protective order was entered, and

---

[7] I am further persuaded that no lesser sanction would be appropriate, in light of representations that Lens.com makes in its opposition to Alcon's motion for sanctions, which was filed on September 3, 2020, and its continued failure to comply with court orders. In its opposition, Lens.com repeatedly represents that it complied with Judge Mann's Aug. 18, 2020 Order. *See, e.g.*, Lens.com's Opp. 1–2, 5, 13, 23–24. For example, in disputing that dismissal with prejudice is appropriate, Lens.com requests that I consider that it "immediately took steps to comply" with Judge Mann's Aug. 18, 2020 Order and "did so diligently and fully," producing "the documents ordered by Judge Mann and requested by Alcon." *Id.* 23–24. But Judge Mann found that it was "undisputed that Lens.com failed to comply" with her Aug. 18, 2020 Order. Nov. 10, 2020 Sanctions Order, at 12. Lens.com missed the August 21, 2020 deadline to complete its production, and, as Judge Mann found, "without judicial authorization" made a narrow, insufficient production. *Id.* The continued failure of Lens.com to comply with court orders, and its misleading representations in its opposition concerning its compliance with the Aug. 18, 2020 Order, are further evidence that no lesser sanction than dismissal with prejudice is warranted.

approximately seven months after it was advised, at the court conference and in subsequent court orders, to narrow its counterclaims to avoid broader discovery.

As to the fourth factor, Lens.com was not explicitly warned that its discovery misconduct risked dismissal with prejudice. However, while "warnings often precede the imposition of serious sanctions," "[p]arties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril." *Daval Steel*, 951 F.2d at 1366. And, of course, Lens.com *was* warned at the January 3, 2020 conference (and in subsequent orders) that, if it wanted to avoid broader discovery, it was required to narrow its counterclaims. Having engaged experienced counsel to represent it, Lens.com would have been aware that, if it *both* failed to narrow its counterclaims *and* continued to not produce essential, relevant discovery, it risked dismissal of its claims. *See Davidson v. Dean*, 204 F.R.D. 251, 257–58 (S.D.N.Y. 2001). Accordingly, while this factor does not weigh as heavily in favor of dismissal with prejudice as it would if Lens.com were explicitly warned, it still tilts in favor of such a sanction.

Last, I find inapposite *Wolters Kluwer Financial Services, Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009), relied upon by Lens.com for the proposition that parties have an "unfettered right voluntarily and unilaterally to dismiss an action." *Id*. at 114. In *Wolters*, the Second Circuit reversed the imposition of sanctions on a law firm, because the district court made no findings that, in voluntarily dismissing its client's claims, the law firm's conduct was entirely without color or undertaken in bad faith. *Id*. The sanctions imposed here are not for Lens.com's voluntary dismissal of its counterclaims; rather, they are for Lens.com engaging in a course of bad faith and vexatious conduct from the time it filed its counterclaims, through the time it dropped them and moved to vacate Judge Mann's production order.

In sum, each of the factors weighs in favor of dismissal with prejudice, and three of the four factors weigh strongly in favor of such a sanction.[8]   Accordingly, Lens.com's non-UPP antitrust counterclaims are dismissed with prejudice.

## IV.   Conclusion

For the reasons stated above, Alcon's motion for sanctions is granted.   Within 45 days, Alcon is directed to file an affidavit setting forth the costs and attorneys' fees for which I have found Lens.com and its counsel jointly and severally liable.[9]   Should Lens.com or its counsel dispute the reasonableness of Alcon's affidavit, they may respond within 45 days from the date that it is filed.   Lens.com's non-UPP antitrust counterclaims—Counts 1, 2, 5, 6, and 7 in the SAAC—are dismissed with prejudice.

**SO ORDERED.**

_____/S/_____

**NINA GERSHON**
**United States District Judge**

July 7, 2022
Brooklyn, New York

---

[8] In the alternative, I also find that dismissal with prejudice is warranted under the court's inherent powers.

[9] To the extent that Lens.com has already reimbursed Alcon for any costs and fees that were awarded in the Nov. 10, 2020 Sanctions Order, such as for Alcon's briefing its response to Lens.com's Mot. to Vacate, Alcon is directed not to include such costs and fees in its affidavit.