**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------ x

**ALCON VISION, LLC,**

                              **Plaintiff,**

              -against-

**LENS.COM, INC.,**

                             **Defendants.**

------------------------------------------------------------ x

**OPINION & ORDER**

**18-cv-407 (NG) (SJB)**

**GERSHON, United States District Judge:**

**I.**       **Introduction**

This opinion follows my opinion and order granting the motion of Alcon Vision, LLC ("Alcon") for sanctions against Lens.com and Lens.com's counsel under 28 U.S.C. § 1927, the court's inherent power, and Federal Rule of Civil Procedure 37 (the "Sanctions Order"). *Alcon Vision, LLC v. Lens.com, Inc.*, 2022 WL 17685501 (E.D.N.Y. July 7, 2022). Familiarity with that decision is presumed. At the conclusion of the Sanctions Order, I directed Alcon "to file an affidavit setting forth the costs and attorneys' fees for which I have found Lens.com and its counsel jointly and severally liable" and Lens.com and its counsel to respond should they "dispute the reasonableness of Alcon's affidavit." *Id.* at *12. Now before me is Alcon's fee application, Lens.com's response, and Alcon's reply. For the reasons set forth below, I award Alcon $227,065.10 in reasonable fees.

**II.**      **Alcon's Fee Application and Lens.com's Response**

         **a.**   **Alcon's Fee Application**

Following the Sanctions Order, Alcon's lead counsel of Morrison & Foerster LLP filed a 7-page declaration seeking $1,167,086 in attorneys' fees for approximately 1700.6 hours of work

with no supporting documentation and little detail. The declaration describes the attorneys' fees that are sought as those that Alcon "has already paid Morrison & Foerster LLP in connection with the items identified in the Sanctions Order. They are not theoretical." Decl. of Jennifer Lee Taylor Setting Forth Alcon's Att'ys Fees Per Court Order ("Taylor Decl.") ¶ 8.

The declaration sets forth the names of fourteen Morrison & Foerster LLP attorneys, including five partners and nine associates, and four Morrison & Foerster LLP paralegals, who "billed time in connection with" the work for which Alcon seeks fees. *Id.* ¶ 4–5, 7. It also describes that Morrison & Foerster LLP billed Alcon using "a single hourly rate of $740 for all of the attorneys working on this matter" and unidentified "standard hourly rates" for all paralegals. *Id.* ¶ 6–7.

The remainder of the declaration divides Morrison & Foerster LLP's work into categories. The declaration identifies six categories: 1) "Motions to Dismiss Lens.com's Antitrust Counterclaims;" 2) "Discovery and Discovery Disputes Relating to the Antitrust Claims;" 3) "Motion for Protective Order Regarding Re-Issued Subpoenas;" 4) "Opposition to and Motion to Vacate Conditional Transfer Order;" 5) "Motion for Protective Order Regarding Subpoena to Drs. Eiden, Gerber, and Glazier on UPP Issues;" and 6) "Motion for Sanctions." *Id.* ¶¶ 9, 11, 14, 16, 18, 20. The first three categories are those that were "identified in the Sanctions Order as recoverable by Alcon." *Id.* ¶ 8. The second three categories are "additional categories of fees" that were not awarded in the Sanctions Order but that the declaration states are "necessary to make Alcon whole." *Id.* ¶ 15.

For each category, the declaration provides the total number of hours that Morrison & Foerster LLP attorneys and paralegals worked and a "summary of the tasks performed." *Id.* ¶¶ 8, 15. It also states the total fees that Morrison & Foerster LLP billed Alcon for that category. As

for the "summary of the tasks performed," the declaration lists a limited number of generalized tasks for each category. For example, the "Motions to Dismiss Lens.com's Antitrust Counterclaims" category includes, among a few other tasks, "researching and preparing the briefs in support of the motions to dismiss the first and second amended counterclaims." *Id.* ¶ 9. The declaration does not identify which attorneys or paralegals worked, or the number of hours that were spent, on any given task. (The declaration provides a "further" fee breakdown for some, but not all, categories, which, when provided, adds little additional detail).

### b. Lens.com's Response

Lens.com responds to Alcon's fee application with a 25-page brief that makes several legal arguments as to why Alcon's declaration is lacking. Because these arguments are addressed in the discussion section, *infra*, I do not recite them in depth here. In short, Lens.com argues that the fee application is legally insufficient because: 1) Alcon fails to support its declaration with time records or invoices; 2) seeks a single blended rate for its attorneys and an unidentified "standard hourly rate" for its paralegals, rather than the prevailing rate in the Eastern District of New York; 3) fails to include any information concerning the qualifications of Morrison & Foerster LLP's attorneys or paralegals; 4) seeks fees for an excessive and unsupported number of hours worked; and 5) seeks fees for work that was outside the scope of the fees requested in Alcon's sanctions motion and ordered in the Sanctions Order.

In addition to arguing that Alcon's fee application is legally deficient, Lens.com undertakes a detailed analysis and calculation as to Morrison & Foerster LLP's reasonable fees. Lens.com concludes that, while Alcon's inadequate fee application should not entitle it to any fee award, it "believes that Alcon would only be entitled to $227,065.10," using a reasonable hourly rate and number of hours worked. Lens.com's Responsive Statement Regarding Reasonableness

of Alcon's Requested Att'ys Fees ("Lens.com's Response") 24. Lens.com's analysis and calculation will be discussed in greater detail as relevant in the discussion section, *infra*.

### c. Alcon's Reply

Alcon's request for permission to file a reply was granted. The reply is a short 2-page statement that does not address most of Lens.com's legal arguments or any of Lens.com's analysis or calculation regarding Alcon's reasonable attorneys' fees. Alcon responds only to Lens.com's contention that Morrison & Foerster LLP was required to produce "time records or invoices" in support of the fee application. Alcon makes two arguments as to why this was not required. First, it distinguishes the cases that Lens.com cites. Thirteen of the fifteen cases Lens.com cites for this argument, Alcon contends, involved "prevailing party attorneys' fees, not sanctions." It distinguishes the other two cases on the ground that they involved only Rule 37 sanctions and not Rule 37, § 1927, and inherent power sanctions. However, Alcon cites no legal authority in support of its own position that time records or invoices are not required. Second, Alcon claims that my "instruction to 'file an affidavit setting forth the costs and attorneys' fees'" did not require it to attach time records or invoices. Alcon Responsive Statement ("Alcon's Reply") 1 (quoting *Alcon*, 2022 WL 17685501, at *12). In a footnote, Alcon states that it can address the remainder of Lens.com's arguments at a hearing, if the court requests one.

### III. Discussion

Attorneys' fees awards are calculated using the "presumptively reasonable fee," or lodestar, approach. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The starting point for this analysis is to arrive at the presumptively reasonable fee which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Id.* The "reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind

that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly v. City of N.Y.*, 934 F.3d 222, 231 (2d Cir. 2019) (alterations in original). According to the "forum rule," this is generally the "hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). In the "unusual case," a reasonable hourly rate may be higher. *Id.* at 175. However, there is a "presumption" in favor of the application of the forum rule, which may be overcome only if the party seeking the fee award makes a "particularized showing" that it should not apply. *Id.* at 175–76.[1] In setting a reasonable hourly rate, a district court should also "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant." *Lilly*, 934 F.3d at 230. These case-specific considerations include, among others, the "*Johnson* factors."[2] *Id.* In short, a "district court should attempt to approximate 'the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Konits v. Karahalis*, 409 F. App'x 418, 422 (2d Cir. 2011) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).

As for the reasonable number of hours worked, a district court examines "the particular hours expended by counsel," "and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours' from the fee calculation." *Chaparro v. John*

---

[1] Specifically, the party seeking to overcome the presumption in favor of the forum rule must show "that the selection of out-of-district counsel was predicated on experience-based, objective factors," and "use of in-district counsel would produce a substantially inferior result." *Id.* at 176.
[2] The *Johnson* factors were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). They are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly*, 934 F.3d at 228.

*Varvatos Enters., Inc.*, 2021 WL 5121140, at *2 (2d Cir. Nov. 4, 2021) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)). Hours that are unreasonable include those that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Thus, in "dealing with hours that are 'excessive, redundant, or otherwise unnecessary'" "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Chaparro*, 2021 WL 5121140, at *2 (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).

Once determined, the presumptively reasonable fee may be adjusted, but only in "rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Lilly*, 934 F.3d at 231. "Factors that are already subsumed in the lodestar calculation cannot be used to enhance or cut the lodestar amount." *Id.*

I take Alcon to be arguing that, when it comes to an award of attorneys' fees under § 1927, the court's inherent power and Rule 37 sanctions authority, I need not use the presumptively reasonable fee approach. In effect, Alcon contends that it is entitled to any fees that it already paid to Morrison & Foerster LLP in connection with the sanctioned conduct, regardless of whether the fees incurred are determined to be reasonable. *See* Taylor Decl. ¶ 8 (explaining that the requested fees are those that Alcon "has already paid Morrison & Foerster LLP in connection with the items identified in the Sanctions Order"); Alcon's Reply

(distinguishing Lens.com's authority on the ground that the cases cited did not involve § 1927 and inherent power sanctions). Alcon cites no authority for this proposition, and I reject it.

In determining the appropriate amount of attorneys' fees under § 1927, the court's inherent power, and Rule 37, a district court must ensure that the fees incurred by the party seeking the fee award were reasonable. In *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021), while affirming an attorney's fees award based on the work of *pro bono* counsel, the Second Circuit explained that an award under § 1927 must be for the "reasonable value of the work reasonably performed by opposing counsel because of the sanctioned conduct, rather than the fee billed to the client." *Id.* at 287. Under the other relevant sanctions authority, too, the award of attorneys' fees must be reasonable. *Id.* at 286 (explaining that, under a court's inherent powers, "precedent dictates that a district court awarding attorney's fees must ensure the fee is reasonable"); Fed. R. Civ. P. 37(b)(2)(C) (stating that an award must be for "the reasonable expenses, including attorney's fees").

Courts routinely use the presumptively reasonable fee, or lodestar, approach in evaluating an application for attorneys' fees under such sanctions authority. For example, in *Usherson v. Bandshell Artist Management*, 2020 WL 3483661 (S.D.N.Y. June 26, 2020), which was the district court decision that the Second Circuit affirmed in *Liebowitz*, the court applied this method in calculating attorneys' fees as a sanction under the court's inherent powers and § 1927. *Id.* at *20; *see also Doe 1 v. E. Side Club, LLC*, 2023 WL 4174141, at *3–5 (S.D.N.Y. June 23, 2023) (using presumptively reasonable fee approach to determine attorneys' fees sanctions under

the court's inherent powers, § 1927 and Rule 37).³  I will review Alcon's application using this approach.

The fee applicant bears the burden of establishing its entitlement to the requested hourly rate and documenting the hours expended and hourly rates sought.  *E. Side Club*, 2023 WL 4174141, at *5; *see also Hensley*, 461 U.S. at 437.  However, here, Alcon has not even attempted to justify, let alone sufficiently justified, as reasonable the hours or rates sought.

### a.  Reasonable Hours Worked

Alcon's application presents glaring deficiencies with respect to the number of hours worked.  First, the fee application contains vague entries and block billing.  As to the former issue, billing records can be "too vague to sufficiently document the hours claimed."  *Kirsch*, 148 F.3d at 172.  Vague entries are those that lack sufficient specificity to enable a court "to assess what tasks were completed."  *Riley v. City of N.Y.*, 2015 WL 9592518, at *4 (E.D.N.Y. Dec. 31, 2015).  Such entries can prevent courts from determining "whether that work was a reasonable expenditure of the attorneys' time," *id.*, or, rather, unreasonable because the claimed hours are excessive, redundant of earlier work, or, in a sanctions fee application, outside the scope of a sanctions order.  *E.g.*, *id.*; *Mawere v. Citco Fund Servs., (USA) Inc.*, 2011 WL 6779319, at *8 (S.D.N.Y. Sept. 16, 2011), *R&R adopted*, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011).

As to the latter issue, block billing is "the practice of lumping multiple distinct tasks into a single billing entry" and "is generally disfavored."  *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022).  Like vague entries, block billing is problematic because it can "meaningfully cloud[] a

---

³ In *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532 (2d Cir. 2023), which involved an award of attorneys' fees resulting from sanctions under Rule 11 and Rule 37, the party opposing the fee award contended that the district court erred by applying the forum rule because the attorneys' fees were awarded as sanctions.  The Second Circuit rejected this argument, explaining that it saw "no reason why the [forum] rule should not presumptively apply" in the sanctions context.  *Id.* at 548.

reviewer's ability to determine the projects on which significant legal hours were spent" and make it difficult or impossible "for a court to determine the reasonableness of the hours expended." *Chrysafis v. Marks*, 2023 WL 6158537, at *8 (E.D.N.Y. Sept. 21, 2023). While block billing can "be permissible as long as the district court is still able to conduct a meaningful review of the hours," *Raja*, 43 F.4th at 87 (internal quotation marks omitted), at least three issues may warrant across-the-board percentage reductions for block billing. They are: "when (1) there is reason to believe that the hours billed were independently unreasonable; (2) the block billing involved aggregating tasks that were not all compensable; or (3) the number of hours block billed together was so high (such as five hours or more) [] as to create an unacceptable risk that the aggregated total exceeded the reasonable hours worked on compensable tasks." *Top Jet Enters., Ltd. v. Kulowiec*, 2022 WL 1184245, at *5 (S.D.N.Y. Apr. 21, 2022).

The Second Circuit has upheld across-the-board percentage cuts of 50% for vague billing entries, *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64–65 (2d Cir. 2014), and 30% for fee applications that included block billing issues. *Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. 2015); *see also Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 619–620 (E.D.N.Y. 2017) (collecting district court cases applying 30% to 40% percentage reductions for such billing issues).

Morrison & Foerster LLP's declaration contains vague billing entries. Entries such as those that "refer vaguely to legal research regarding the 'motion,'" *Mawere*, 2011 WL 6779319, at *8, "work[ing] on memo of law in opposition to defendants' motions to dismiss," *Mary Jo C. v. Dinapoli*, 2014 WL 7334863, at *10 (E.D.N.Y. Dec. 18, 2014), or "[d]rafting & legal research on motion for summary judgment," *Calvo v. City of N.Y.*, 2017 WL 4119280, at *7 (S.D.N.Y. Sept. 15, 2017), are too vague to meaningfully review. They do not allow a court to assess what

legal "issues, in particular, the attorneys were researching," *Mawere*, 2011 WL 6779319, at *8, or which sections of a legal brief they were drafting, and whether the time spent was excessive or duplicative. In Alcon's case, many of the claimed hours are for vaguely described tasks like "researching and preparing the briefs in support of the motions to dismiss the first and second amended counterclaims," "researching and briefing the opposition and motion to vacate the Conditional Transfer Order," and "researching and briefing the motion for sanctions." Taylor Decl. ¶¶ 9, 17, 21.

The declaration also contains block billing. Far greater than the five hour entries that the Second Circuit has held can be unproblematic, *see Raja*, 43 F.4th at 89–90, the declaration contains hundreds of block billed hours. For example, the court is unable to determine how many of the 580.9 hours expended on the tasks in "Motions to Dismiss Lens.com's Antitrust Counterclaims" were spent on each task. The "further" fee breakdown does not help these issues. The "further" fee breakdown is provided only for certain categories, does not list the number of hours expended on each task (but only the total fees incurred for each task) and is also block billed.

Were these the only problems, I would next consider the appropriate across-the-board percentage reduction for these billing issues; however, Alcon's fee application contains even more significant deficiencies. It is not substantiated with billing records or sufficiently detailed. In *NYSARC, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983), the Second Circuit held that "[a]ll applications for attorney's fees" must be "accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1154. In lieu of submitting contemporaneous time records themselves, the Second Circuit explained, in *Cruz v. Local Union No. 3 of International Brotherhood of Electrical Workers*, 34

F.3d 1148 (2d Cir. 1994), that an attorney declaration summarizing time records may suffice, but it still must "set forth all charges with the required specificity." *Id.* at 1160.

Alcon has cited no case in which the level of specificity contained in Morrison & Foerster LLP's lead counsel's declaration satisfied the specificity requirement for fee applications in the Second Circuit. The declaration does not satisfy *Carey* or *Cruz*. *See China Shipping Container Lines Co. v. Big Port Serv. DMCC*, 2019 WL 9362548, at *1 (S.D.N.Y. Mar. 29, 2019). The fee application does not state the number of hours that each attorney or paralegal worked in total, much less the number of hours that each attorney or paralegal spent on any particular task. It also does not state the dates that any of the work was performed. Instead, it lumps together the work of all fourteen attorneys and four paralegals, and provides, for each of the six categories of work identified, the total number of claimed hours worked, total sum of fees requested, and a generalized list of tasks performed.

In its reply, citing no authority in its support, Alcon implies that it was not required to comply with *Carey*'s specificity requirement because the fee application resulted from a sanctions award not only under Rule 37, but also § 1927 and the court's inherent powers. I disagree. *Carey* stated that the requirements it set out applied to "[a]ll applications for attorney's fees." 711 F.2d at 1154. Additionally, the level of detail that *Carey* requires enables a court to assess the fee application resulting from such sanctions for reasonableness, *see Liebowitz*, 6 F.4th at 286–87, and ensure that the award is limited to only those legal fees that the fee applicant "would not have paid but for the misconduct." *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 & n.5, 109 (2017) (internal quotation marks omitted). Furthermore, courts have explained that the *Carey* requirement does, indeed, apply to fee awards resulting from such sanctions authority. *See, e.g.*, *E. Side Club*, 2023 WL 4174141, at *5, 10 (calculating attorneys'

fees under inherent power and § 1927 sanctions authority, noting *Carey* requirement and reviewing attorneys' fees "substantiation," including "detailed invoices, records of payment, third-party invoices, and explanations of billing"); *Ctr. Cadillac, Inc. v. Bank Leumi Tr. Co. of N.Y.*, 878 F. Supp. 626, 629–630 (S.D.N.Y. 1995) (awarding attorneys' fees under the court's inherent power and § 1927, citing *Carey* requirement and stating that it was satisfied), *aff'd*, 99 F.3d 401 (2d Cir. 1995); *see also N.S.N. Int'l Indus. N.V. v. E.I. Du Pont De Nemours & Co.*, 1995 WL 571333, at *1 (S.D.N.Y. Sept. 27, 1995) ("The Carey rule applies to the award of attorneys' fees as a discovery sanction pursuant to Rule 37, Fed. R. Civ. P., and/or the Court's inherent power.") Finally, even in a fee application resulting from a sanction for a party's bad faith misconduct in an arbitration proceeding, in *Szczepanek v. Dabek*, 465 F. App'x 74 (2d Cir. 2012), the Second Circuit affirmed a 40% reduction to the requested hours, in part, because of "attorneys' records [that] were inadequate." *Id.* at 75.

Alcon also contends, in its reply, that documentation (and apparently, greater detail in its fee application) was not required because it was merely complying with my Sanctions Order. But directing Alcon "to file an affidavit setting forth the costs and attorneys' fees for which I have found Lens.com and its counsel jointly and severally liable," *Alcon*, 2022 WL 17685501, at *12, does not mean a declaration lacking supporting documentation or detail, and that is inconsistent with the practice in the Second Circuit for fee applications. *See N.S.N. Int'l*, 1995 WL 571333, at *1 n.1 (rejecting similar argument regarding a judge's order because *Carey* requirements are "essentially mandatory in the Second Circuit").

Considering the glaring lack of detail in the declaration, there are three options. First, Alcon's fee application can be denied. The failure to comply with *Carey*'s requirements is a ground for denial of the fee application. *E.g.*, *China Shipping*, 2019 WL 9362548, at *1.

However, courts are reluctant to deny fee applications entirely when they result from sanctions. *E.g.*, *Fund Comm'n Serv., II, Inc. v. Westpac Banking Co.*, 1996 WL 469660, at *6 (S.D.N.Y. Aug. 16, 1996). Denying the fee award would not serve the purposes of imposing sanctions, especially where, as here, the sanctions were for bad-faith litigation misconduct. *See Szczepanek v. Dabek*, 2011 WL 846193 (E.D.N.Y. Mar. 7, 2011), *aff'd*, 465 F. App'x 74 (2d Cir. 2012).

A second option would be to direct Alcon to submit supplemental documentation or a more detailed declaration that would remedy the deficiencies. However, Alcon did not request the opportunity to do so, and the Supreme Court has emphasized "that the determination of fees should not result in a second major litigation." *Fox*, 563 U.S. at 838 (internal quotation marks omitted). Were Alcon to file additional materials, it would require a new round of briefing. And Lens.com has already filed a 25-page brief, which made legal arguments as to why Morrison & Foerster LLP's declaration was insufficient and undertook its own analysis and calculation as to the reasonableness of Alcon's attorneys' fees. If Alcon had not been aware of these requirements when it filed its declaration — a proposition unlikely to be true — it had an opportunity, after reviewing Lens.com's response, to request permission to supplement its fee application but chose not to do so.

The third option is to significantly reduce Alcon's requested hours. Here, Lens.com undertakes its own analysis and calculation and proposes a percentage reduction in the requested number of hours.[4] Lens.com's proposed 639.62 reasonable hours amounts to an approximate 62.4% reduction in Alcon's requested number of hours. The proposal is adopted.

---

[4] The following is a brief summary of Lens.com's analysis leading to its calculation of Alcon's reasonable hours.

First, Lens.com excludes Alcon's requested hours for the three categories of fees that Alcon states are "additional categories of fees" not awarded in the Sanctions Order. Lens.com argues

- 13 -

Where a fee application is not sufficiently substantiated with supporting documentation or detail, courts have adopted a defendant's suggested across-the-board percentage reduction to the fee award. *See Stratakos v. Nassau Cnty.*, 574 F. Supp. 3d 154, 161 & n.2 (E.D.N.Y. 2021) (adopting defendants' suggested percentage reduction to the fee award, though "record here could, arguably, support a larger reduction"); *cf. Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 214 n.7 (E.D.N.Y. 2019) (applying defendant's proposed reasonable hourly rate for an attorney and paralegal though fee application was so deficient the court could have denied fees altogether for their work).

Lens.com's proposal is well within the range of percentage reductions other courts have applied to requested hours for similar fee application deficiencies. *See Williamsburg Climbing Gym Co. v. Ronit Realty LLC*, 2023 WL 1072952, at *6 (E.D.N.Y. Jan. 9, 2023) (holding that "heavily redacted billing records, which contain literally no description of any of the work done by the attorneys," justified 80% reduction to requested hours), *R&R adopted*, 2023 WL 1070615

---

that the Sanctions Order "was careful to limit" the award "to the relief requested by Alcon" and it is improper for Alcon to seek fees for work that was neither requested in its motion for sanctions nor awarded in the Sanctions Order. Lens.com's Response 20.

Next, Lens.com contends that, even with respect to the other three categories, Alcon requests fees for work that is outside the Sanction Order's scope. While noting that the lack of time sheets and detail in Morrison & Foerster LLP's declaration renders it impossible to verify the reasonableness of Alcon's requested hours, Lens.com estimates, based on its own analysis, the number of hours that fall within the scope of the Sanctions Order for these three categories. Taking its analysis of the "Motions to Dismiss Lens.com's Antitrust Counterclaims" category as an example, Lens.com explains that the Morrison & Foerster LLP declaration does not distinguish between work relating to the "the non-UPP antitrust counterclaims" and other counterclaims or affirmative defenses, though the Sanctions Order limited the fee award to motions to dismiss work relating only to the "non-UPP antitrust counterclaims." *Alcon*, 2022 WL 17685501, at *9. Lens.com estimates that 80% of Alcon's work on its motions to dismiss was spent on the non-UPP antitrust counterclaims. Accordingly, it proposes a 20% reduction in hours for this category. Lens.com undertakes a similar analysis of the "Discovery and Discovery Disputes Relating to the Antitrust Claims" and "Motion for Protective Order Regarding Re-Issued Subpoenas" categories to arrive at its proposed reasonable number of hours.

- 14 -

(E.D.N.Y. Jan. 27, 2023); *Top Jet Enters., Ltd. v. Kulowiec*, 2022 WL 1184245, at *5–6 (S.D.N.Y. Apr. 21, 2022) (concluding that 75% reduction to requested hours was appropriate, including because of "how poorly" the fee application was supported); *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 2021 WL 1549916, at *6 (S.D.N.Y. Apr. 20, 2021) (reducing two attorneys' requested hours by 50% for failing to submit contemporaneous time records and applying additional percentage reductions for redundant hours and hours outside the scope of a sanctions order); *Szczepanek*, 465 F. App'x at 75 (affirming 40% reduction to requested hours, in part, for "attorneys' records [that] were inadequate").

Accordingly, I adopt Lens.com's proposal of 639.62 for the reasonable number of hours worked.[5]

### b. Reasonable Hourly Rate

According to the forum rule, I identify the "hourly rates employed in the district in which the reviewing court sits." *Simmons*, 575 F.3d at 174.[6] I also "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the

---

[5] I note that I do not agree with every aspect of Lens.com's analysis. For example, Lens.com argues that all hours in Alcon's "Motion for Sanctions" category, which encompasses those fees that Alcon incurred in litigating the sanctions motion, should be excluded because Alcon did not request those fees in its motion for sanctions and they were not awarded in the Sanctions Order. *See supra* note 3. However, it is generally permissible for this category of fees to be included in a sanctions fee award. *See Liebowitz*, 6 F.4th at 287–88. Nevertheless, I do not find it necessary to go line-by-line through Lens.com's analysis. As discussed, Lens.com proposes an across-the-board percentage reduction to the requested hours that is well within the range of percentage cuts that courts have applied for similar inadequacies in fee applications. Considering the deficiencies in Alcon's fee application — including in the "Motion for Sanctions" category, in which Alcon requests $162,894 in fees for "228.3 hours of work by Morrison & Foerster LLP's attorneys and paralegals" for the listed tasks of "researching and briefing the motion for sanctions," Taylor Decl. ¶ 21 — adopting Lens.com's proposal provides a reasonable basis for determining a reasonable number of hours worked.

[6] Alcon does not attempt to make the "particularized showing" necessary to warrant considering rates higher than those applied in this district. *Id.*

reasonableness" of the hourly rate. *Lilly*, 934 F.3d at 230. In the Eastern District of New York, in complex matters, courts have awarded rates that have ranged from approximately $375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals. *See Aptive Env't, LLC v. Vill. of E. Rockaway, N.Y.*, 2022 WL 5434178, at *5 (E.D.N.Y. July 8, 2022), *R & R adopted*, 2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022); *Ctr. for Popular Democracy v. Bd. of Governors of Fed. Rsrv. Sys.*, 2021 WL 4452202, at *11 (E.D.N.Y. Sept. 29, 2021); *Allied 100, LLC v. Chadha*, 2021 WL 7184241, at *11–12 (E.D.N.Y. July 26, 2021). The rates awarded in complex matters are higher than the typical "prevailing rates for attorneys in the E.D.N.Y., which are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*, 373 F. Supp. 3d 398, 404 (E.D.N.Y. 2019).

In setting the reasonable hourly rate, the case-specific variables that should also be considered include the qualifications and experience of each attorney and paralegal whose work the fee applicant claims entitles it to fees. The fee applicant must make an adequate showing as to the qualifications and experience of each attorney and paralegal. Otherwise, the court lacks a basis to determine each attorney and paralegal's reasonable hourly rate. Where the fee applicant fails to make such a showing, courts have denied fees for those attorneys or paralegals whose information regarding their qualifications and experience it lacks, *Custodio v. Am. Chain Link & Constr., Inc.*, 2014 WL 116147, at *2 (S.D.N.Y. Jan. 13, 2014), or "engage[d] in a downward adjustment of the hourly rates sought," *Div. 1181 Amalgamated Transit*, 270 F. Supp. 3d at 622, 624 (collecting cases).

Here, Morrison & Foerster LLP's declaration states only the names of the attorneys and paralegals who billed time in connection with the work for which Alcon seeks a fee award. Save

for describing these individuals as partners, associates, and paralegals, the declaration provides no information about the attorneys' and paralegals' years of practice, specialized experience in these types of cases, or other relevant credentials or background. It also does not state how many hours each named attorney or paralegal contributed.

That the declaration seeks a single blended rate of $740 per hour for all fourteen attorneys and an unidentified "standard hourly rate" for all four paralegals does not render these deficiencies any less problematic. Indeed, if anything, it makes them more so. Generally speaking, blended rates are disfavored in attorneys' fee applications. *See Tr. of Leather Goods, Handbags, & Novelty Workers' Union Loc. 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, 2019 WL 3937132, at *11 (E.D.N.Y. Aug. 2, 2019) (noting "use of a 'blended rate' is at odds with the 'presumptively reasonable fee' framework" and explaining different reasons why), *R&R adopted*, 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019). Under a blended rate, more junior attorneys may be billed at much higher rates than would otherwise be appropriate for such attorneys' experience under the prevailing rates in this district. *See id.*

Courts, in some cases, have approved blended rates after assessing them for reasonableness and making any necessary adjustments. For example, in *United Realty Advisors, LP v. Verschleiser*, 2023 WL 4141545 (S.D.N.Y. June 23, 2023), the court approved a blended rate of $450 for the work of eight partners, one senior attorney, and three associates, where the "available time records show[ed] that partners performed a clear majority of the legal work" and the rate was lower than the reasonable rate "many of these experienced partners otherwise could have charged." *Id.* at *12. Similarly, in *Akman v. Pep Boys Manny Moe & Jack of Delaware, Inc.*, 2013 WL 4039370 (E.D.N.Y. Aug. 7, 2013), the court approved a blended rate of $200, rather than the requested blended rate of $360, after determining that only a fraction of the work

was performed by a partner and the majority by two associates. *See also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 2013 WL 950573, at *7 (E.D.N.Y. Mar. 12, 2013) (collecting cases approving fee applications involving blended rates after "tailoring them to the prevailing rates of their respective districts").

However, there is no basis here from which it would be possible to assess the reasonableness of Alcon's proposed blended rate or appropriately adjust it. Alcon's requested blended rate for all fourteen attorneys is higher than the highest rates partners have been awarded for complex litigation matters in this district. But the fee application does not identify the attorneys' experience, relevant credentials, or the number of hours that each attorney contributed.[7]

In light of these deficiencies, as discussed above in connection with the reasonable number of hours worked, there are three options. For the reasons discussed above, I decline to deny the fee award entirely or give Alcon a do-over and invite a new round of briefing. The third option is to significantly reduce the requested hourly rate to conform with this district's prevailing rates. Attempting to set a reasonable hourly rate runs into substantial challenges because of the lack of detail in the fee application. However, here, Lens.com proposes using a blended hourly rate of $355 for all attorney and paralegal work for which Alcon seeks fees. Lens.com describes this rate as "generous." Lens.com's Response 9.

---

[7] The rate Alcon actually paid Morrison & Foerster LLP can be a "significant factor in determining what fee is reasonable, but it is not necessarily controlling." *Kyros*, 78 F.4th at 549 (internal quotation marks omitted). "It does not, therefore, create a presumption of reasonableness, nor displace the initial application of the forum rule." *Id.*; *see also Tatum v. City of N.Y.*, 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010) ("Although the actual rate an attorney charges paying clients is persuasive evidence of reasonableness, compensable attorneys' fees must ultimately conform to market rates.") Instead, the burden remains with the fee applicant to make a "particularized showing" as to why the rate should be higher than those within the forum. *Simmons*, 575 F.3d at 174; *Kyros*, 78 F.4th at 549. As noted, Alcon does not attempt to make such a showing.

Lens.com's proposed reasonable hourly rate is adopted. Where a fee applicant does not adequately support the hourly rate requested, courts have adopted rates that the party opposing a fee application has proposed. *See Feltzin*, 393 F. Supp. 3d at 214 n.7; *cf. Stratakos*, 574 F. Supp. 3d at 161 & n.2.

Furthermore, while Lens.com's proposed hourly rate is slightly below the range of rates that have been awarded to partners in complex matters, it is within the typical "prevailing rates" that partners have been awarded in the Eastern District of New York. *Cleanup N. Brooklyn*, 373 F. Supp. 3d at 404. I agree with Lens.com that the proposed hourly rate is otherwise "generous" in light of the deficiencies in the fee application. It is on the higher side of rates that courts in this district have awarded associates and far above what they have awarded paralegals in complex matters.

Accordingly, I adopt Lens.com's proposal of $355 for the reasonable hourly rate.

### c. Presumptively Reasonable Fee and Consideration of an Adjustment

Taking Lens.com's proposal of 639.62 hours and $355 hourly rate, the presumptively reasonable fee is $227,065.10. I see no factor that warrants an upward or downward adjustment that was not already considered in calculating the presumptively reasonable fee.

Accordingly, Alcon is awarded $227,065.10 in reasonable attorneys' fees.

## IV.  Conclusion

Alcon is awarded $227,065.10 in reasonable attorneys' fees.  Within 60 days, Lens.com is directed to confirm by letter to the court that this sum has been paid to Alcon.

**SO ORDERED.**

_____/S/_____
**NINA GERSHON**
**United States District Judge**

November 21, 2023
Brooklyn, New York